UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT GILBERT,<br>　　*Plaintiff*,<br>　　v.<br>DEPARTMENT OF CORRECTION, CHARLES LEE, PATRICIA SILVA,<br>　　*Defendants*. | Civil No. 3:10cv1877 (JBA)<br><br>November 18, 2014 |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

On December 1, 2010, Defendants removed this case from Connecticut Superior Court for the Judicial District of Waterbury. Shortly thereafter, on March 15, 2011, Plaintiff Robert Gilbert filed an Amended Complaint. Defendants moved [Doc. # 24] to dismiss Count One (alleging violations of Conn. Gen. Stat. § 31-51q) of that complaint on March 29, 2011, but on May 25, 2011, the Court ordered a stay of the motion until the Connecticut Supreme Court issued rulings in *Perez-Dickson v. City of Bridgeport*, 304 Conn. 482 (2012) and *Schumann v. Dianon Systems, Inc.*, 304 Conn. 585 (2012). In July 2011, having heard nothing from the Connecticut Supreme Court on *Perez-Dickson* and *Schumann*, Defendants agreed to a dismissal [Doc. # 41] of their motion without prejudice to renew.

Plaintiff then filed a Second Amended Complaint [Doc. # 43], in which he revised the allegations in Counts Two and Three only (alleging violations of 42 U.S.C. §§ 1981 and 1983 as to Defendants Lee and Silva, respectively). Defendants moved to strike[1] [Doc. # 44] or to dismiss [Doc. # 45] the Second and Third Counts of the Second Amended Complaint. On March 26, 2012, the parties, still awaiting the Connecticut Supreme Court decisions in *Perez-Dickson* and

---

[1] This motion is denied as moot because it is duplicative of Defendants' motion to dismiss Counts Two and Three.

*Schumann*, agreed to administratively close [Doc. # 73] the case until the Connecticut Supreme Court issued its rulings.  These cases were decided on May 1, 2012[2] and this case was reopened in June 2012.

On August 31, 2014, Mr. Gilbert filed a motion for a ruling on Defendants' motion to dismiss.  Thereafter, Defendants notified the Court of their desire to renew their Motion [Doc. # 24] to Dismiss Count One, their Motion [Doc. # 44] to Strike, and their Motion [Doc. # 45] to Dismiss Counts Two and Three.  The Court requested additional briefing on Count One to be filed by October 10, 2014.  Accordingly, Defendants filed a Supplemental Memorandum [Doc. # 85] in support of their two motions to dismiss.  Plaintiff did not file any supplemental memoranda or a response to Defendants' memorandum.  Oral argument on all pending motions was held on October 31, 2014.  For the reasons that follow, Defendants' Motion to dismiss Counts Two and Three is granted, and Count One is remanded to the Judicial District of Waterbury at Waterbury.

## I.   Factual Allegations

Plaintiff alleges as follows in his Second Amended Complaint.

### A. Count One

Mr. Gilbert began his employment with the Connecticut Department of Corrections ("DOC") in March 2007 as a correctional officer.  (2d Am. Compl. ¶ 7.)  On August 14, 2007, Mr. Gilbert was arrested by the Waterbury Police—"[t]he charges against [him] were not job related

---

[2] The issue in both cases was whether the Connecticut Constitution provides broader free speech rights than does the federal constitution, such that it would be inappropriate to analyze a claim of violation of the Connecticut Constitution under *Garcetti v. Ceballos*, 547 U.S. 410, 427 (2006) (in which the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes.").  However, the Connecticut Supreme Court did not reach this issue in either case.

and were later dropped"—and as a result of the arrest he "was interrogated by DOC." (*Id.* ¶¶ 8–9.)  By letter dated October 29, 2007, the DOC terminated Mr. Gilbert for "engaging in 'unprofessional or illegal behavior.'" (*Id.* ¶ 10.)

According to Plaintiff, "the DOC initially contended that [he] was subject to termination because of his alleged arrest and alleged gang affiliation," but later "contended that [he] was subject to termination for allegedly engaging in gang related speech and hand signals by way of his MySpace, a social networking website." (*Id.* ¶¶ 11–12.)  Plaintiff argues that in attending "a public, memorial vigil for [a] deceased young man who had been tragically killed in a motorcycle/vehicle accident," and in using his MySpace webpage to solicit support and fundraise for a memorial marker for the young man, he was engaging in protected expressive conduct regarding a matter of public concern.  (*Id.* ¶ 13.)  Plaintiff additionally contends that his protected speech and associations with individuals via MySpace "did not substantially or materially interfere with his bona fide job performance or working relationship with [the DOC]." (*Id.* ¶ 14.)

B. **Counts Two and Three**

In Counts Two and Three of his Second Amended Complaint, Mr. Gilbert alleges that "Defendant[s] [Lee and Silva] maintained a policy and practice of subjecting African–American employees to harsher investigation of and/or discipline than accorded non–African–American employees for the same or comparable alleged misconduct." (*Id.* Count Two ¶ 18, Count Three ¶ 18.)  He further alleges that "Defendant[s] maintained, acquiesced in the maintaining of, or failed to take appropriate required action to eliminate the consistent pattern and practice of racial discrimination against African–American employees," and that "[a]s a consequence of the policy and practice maintained by Defendant[s], Plaintiff was terminated from his employment when

3

similarly situated Caucasian males were not so terminated." (*Id.* Count Two ¶¶ 19–20, Count Three ¶¶ 19–20.) Mr. Gilbert continues that both Defendant Lee and Silva were "directly involved" in his race–based discharge and that as a result, he was deprived of "equal employment opportunities," "the same right to make and enforce contracts as is enjoyed by white citizens," and "income in the form of wages, prospective retirement benefits, and other fringe benefits due him solely because of his race." (*Id.* Count Two ¶¶ 21–23, Count Three ¶¶ 21–25.) Mr. Gilbert alleges that Defendants "acted with malice . . . and with a conscious disregard of [his] constitutional rights," and that as a result of their conduct, he "suffered emotional distress, humiliation, embarrassment and mental anguish." (*Id.* Count Two ¶¶ 24–25, Count Three ¶¶ 26–27.)

## II.   Discussion[3]

### A.  Counts Two and Three

Defendants move to dismiss the Second and Third Counts of the Second Amended Complaint on the grounds that 1) "Counts two and three <u>add</u> new allegations without the Defendants' written consent or the Court's leave"; 2) "The exclusive remedy against a state actor for a violation of 42 U.S.C. § 1981 is via 42 U.S.C. § 1983, not as an independent cause of action"; 3) "Plaintiff's § 1981 claim . . . is barred by the statute of limitations"; 4) "Plaintiff's method of service did not comply with Federal Rule of Civil Procedure 4(e) and is insufficient as a matter of

---

[3] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

law for service on an individual"; and 5) "Plaintiff failed to effectuate upon Lee and Silva timely service of his Amended Complaint dated March 15, 2011." (Defs.' Mot. to Dismiss Counts 2 & 3 [Doc. # 45] at 1–2.)  Each of these arguments is addressed below.

**1. New Allegations**

Defendants object to Plaintiff's Second and Third Counts because these counts add new allegations without Defendants' written consent or the Court's leave as required by Federal Rule of Civil Procedure 15(a)(2).  A comparison of the Second Amended Complaint and Plaintiff's March 15, 2011 Amended Complaint [Doc. # 21] reveals that the allegations in Paragraphs 18 and 19 (of Counts Two and Three) of the Second Amended Complaint are absent entirely from the Amended Complaint.  Paragraphs 18 and 19 read:

> 18. Defendant maintained a policy and practice of subjecting African–American employees to harsher investigation of and/or discipline than accorded non–African–American employees for the same or comparable alleged misconduct.
>
> 19. Defendant maintained, acquiesced in the maintaining of, or failed to take appropriate required action to eliminate the consistent pattern and practice of racial discrimination against African–American employees.

(2d Am. Compl. Count Two ¶¶ 18–19, Count Three ¶¶ 18–19.)  In addition, where Paragraph 19 of the Amended Complaint states only "Plaintiff was terminated from his employment when similarly situated Caucasian males were not so terminated," Paragraph 20 of the Second Amended Complaint states: "As a consequence of the policy and practice maintained by Defendant, Plaintiff was terminated from his employment when similarly situated Caucasian males were not so terminated." (*Id.* Count Two ¶ 20, Count Three ¶ 20.)  Finally, Paragraphs 22 and 24 of Count Three of the Second Amended Complaint are identical.  (*Id.* Count Three ¶¶ 22, 24.)

5

Defendants argue that the Court should dismiss Counts Two and Three because Plaintiff added these new allegations without their consent or the Court's leave. (Defs.' Mot. to Dismiss Counts 2 & 3 at 1.) They claim that during the July 26, 2011 pre–filing conference, the Court gave Plaintiff leave to further amend his Amended Complaint but limited him to "clarifying the allegations to reflect the fact that the exclusive federal remedy against a state actor for a violation of 42 U.S.C. § 1981 is via 42 U.S.C. § 1983." (*Id.* at 4.) Plaintiff's counsel responds that it is not her recollection that the Court so limited the permission to amend, and that the new allegations "merely reflect the kind of factual allegations that are required to support a Section 1983 claim of a violation under Section 1981." (Pl.'s Opp'n Mot. to Dismiss Counts 2 & 3 [Doc. # 55] ¶¶ 5–7.)

Federal Rule of Civil Procedure 15(a)(2) states that other than the single amendment to which a party is entitled as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." In this case, the Court did grant leave for Plaintiff to amend the complaint, and without demonstration by Defendants that further limitation was intended by the Court in its order at a pre-filing conference held more than two years ago, of which no transcript was ordered, Plaintiff's amendment of his complaint is not a ground for dismissing his claims.

**2. Section 1983 as the Federal Remedy for a Section 1981 Claim**

Defendants next argue that the exclusive federal remedy for § 1981 claims against a state actor is through a § 1983 claim, and that despite the Court's leave to clarify that Plaintiff's § 1981 claim is made via § 1983, "the Second Amended Complaint still does not reflect such changes." (Defs.' Mem. Supp. Mot. to Dismiss Counts 2 & 3 at 9–10.) Plaintiff responds that the Second Amended Complaint "does not allege Section 1981 as a separate . . . stand alone cause of action,"

and that "[u]se of the 1981/1983 in pleadings involving state actors is not uncommon." (Pl.'s Opp'n Mot. to Dismiss Counts 2 & 3 ¶ 7.)

"[T]he express cause of action for damages created by § 1983 constitutes the *exclusive* federal remedy for violation of the rights guaranteed by § 1981 by state governmental units." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (emphasis in original) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)). "[W]hen a state employee seeks to hold an individual fellow state employee liable in damages for violation of § 1981 rights, such claim must also be pursued under the remedial provisions of § 1983." *Burbank v. Office of Attorney Gen. of Conn.*, 240 F. Supp. 2d 167, 174–75 (D. Conn. 2003) (quoting *Felton v. Polles*, 315 F.3d 470, 481–82 (5th Cir. 2002)).

Thus, Defendants are correct that Plaintiff must bring his § 1981 claim through the remedial mechanism of § 1983, but it is unclear what precise verbiage they would expect to see in Plaintiff's Second Amended Complaint to adequately clarify his claim. Plaintiff alleges that Defendants "discriminated against [him] because of his race in violation of 42 U.S.C. § 1983 and 1981." (2d Am. Compl. Count Two ¶ 26, Count Three ¶ 28.) From this allegation, it can be seen that Plaintiff does not put forth a stand-alone § 1981 claim, but a § 1981 claim in connection with § 1983. Defendant appears to object to the use of "§ 1983 and 1981" instead of "§ 1981 via § 1983," but a reasonable reading of the Second Amended Complaint, with the holdings of *Patterson* and *Jett* in mind and considering that Plaintiff refers to both § 1981 and § 1983, demonstrates that Plaintiff is pursuing his claim for violation of § 1981 rights under the remedial provisions of § 1983.

**3. Statute of Limitations**

Defendants argue that Counts Two and Three are barred by the three-year statute of limitations for claims under 42 U.S.C. §§ 1981 and 1983, as Plaintiff commenced this suit in Waterbury Superior Court by serving the DOC on November 4, 2010, more than three years after his October 29, 2007 discharge. (Defs.' Mem. Supp. Mot. to Dismiss Counts 2 & 3 at 10–12.) Plaintiff responds that the action was "deemed commenced as of October 27, 2010 when placed in the hands of a state marshal." (Pl.'s Opp'n Mot. to Dismiss Counts 2 & 3 ¶ 8.)

Although in their briefs, the parties agree that the statute of limitations for Plaintiff's claims under §§ 1981 and 1983 is three years from the date of the act or omission complained of (his termination), at oral argument, Plaintiff asserted that pursuant to the Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), the statute of limitations for actions under § 1981 is four years. In *Jones*, the Supreme Court contemplated the effect of 28 U.S.C. § 1658, which creates a catchall statute of limitations of four years for any "civil action arising under an Act of Congress enacted after [December 1, 1990]," on claims under § 1981. *Id.* The Supreme Court concluded that the catchall statute of limitations is applicable "if the plaintiff's claim against the defendant was made possible by a post–1990 enactment." *Id.* at 382.

As explained in *Jones*, § 1981 was originally "enacted as § 1 of the Civil Rights Act of 1866, 14 Stat. 27. It was amended in minor respects in 1870 and recodified in 1874, but its basic coverage did not change prior to 1991." *Id.* at 372 (internal citations omitted). In 1991, Congress "added two subsections to § 1981." *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 404 (E.D.N.Y. 2010).

> Section 1981(b) now defines contractual formation and enforcement, protected by subsection (a), to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Congress passed this provision to

8

>   invalidate *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). . . .

*Id.* Thus, "the critical question following *Jones* for determining the applicability of § 1658(a) is whether a § 1981 claim for discrimination was viable under the old *Patterson* regime. Under *Patterson,* claims failed if they alleged discrimination that occurred after the formation of a contract and did not involve interference with enforcement of established contractual obligations." (*Id.* at 405.)

Here, Plaintiff's claim, that his termination was motivated by racial discrimination, alleges discrimination that occurred after the formation of the contract. Under *Jones*, it should therefore be governed by a four-year statute of limitations. However, there is an additional consideration here not present in *Jones. Jones* involved a claim against a private actor; Plaintiff's claims are against state actors and are thus brought via § 1983. The question then is whether § 1658(a)'s four-year statute of limitations should apply because this is an action to enforce Plaintiff's § 1981 rights, or whether § 1983's three-year statute of limitations, *see* Conn. Gen. Stat. § 52-577; *Patterson*, 375 F.3d at 225, should apply because in some sense this case "arises under" § 1983. The Second Circuit has not addressed this question,[4] but several district courts in this circuit as well as the Eleventh Circuit have held that, where a claim is brought under § 1981 via § 1983, the four-year statute of limitations should apply. *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338 (11th Cir. 2008); *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 408

---

[4] In *Patterson*, 375 F.3d at 225, decided two and a half months after *Jones*, the Second Circuit applied a three-year statute of limitations to a claim under § 1981 brought pursuant to § 1983. However, the court's lack of discussion of or citation to *Jones* indicates that *Jones* was not under consideration as a basis for its decision. A footnote in a 2005 unpublished Second Circuit decision notes "that *Patterson* was superseded in part by the Civil Rights Act of 1991," citing to *Jones. Iuorno v. DuPont Pharm. Co.*, 129 F. App'x 637, 640 n.4 (2d Cir. 2005).

(E.D.N.Y. 2010); *Thomas v. New York City Health & Hospitals Corp.*, No. 02 CIV. 5159 (RJH), 2004 WL 1962074, at *7 (S.D.N.Y. Sept. 2, 2004). The Court is persuaded by the Eleventh Circuit's holding that *Jones* compels the conclusion that a § 1981 claim that is "made possible by" a post-1990 Act of Congress "arises under" that Act and not under § 1983 for purposes of § 1658(a) because "[w]ere it not for the 1991 Act, [the plaintiff's] complaint would fail to state a claim under § 1983." *Baker*, 531 F.3d at 1338.

Therefore, the applicable statute of limitations here is four years. Plaintiff alleges that the DOC terminated him on October 29, 2007. (2d Am. Compl. ¶ 10.) Thus, in order for the §§ 1981 and 1983 claims against Defendants Lee and Silva to be timely, Plaintiff would have had to commence his suit on or before October 29, 2011. Because Plaintiff filed suit in state court on November 4, 2010 (Notice of Removal [Doc. # 1]) and the case was removed to federal court on December 1, 2010 (*id.*), the statute of limitations does not bar his claims.

4. **Method of Service**

Defendant Warden Lee argues that the Court should dismiss Count Two against him because Plaintiff failed to effectuate proper service of process by mailing the summons and Amended Complaint to the Office of the Attorney General on April 1, 2011, rather than hand–delivering those documents.[5] (Defs.' Mem. Supp. Mot. to Dismiss Counts 2 & 3 at 12–15.) Plaintiff responds that Defendant Lee agreed to have the Attorney General accept service on his behalf rather than disclose Defendant Lee's home address, that "[o]rdinarily when counsel agree to accept service on behalf of a client, simple mailing of the document is acceptable," and that

---

[5] There is no dispute that Defendant Silva was properly served.

"Defendants gave no indication that it would hold [Plaintiff] to a requirement of service by marshal."[6] (Pl.'s Opp'n Mot. to Dismiss Counts 2 & 3 ¶¶ 1–3.)

Federal Rule of Civil Procedure 4(e) provides that an individual may be served with a summons by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>     (A) delivering a copy of the summons and of the complaint to the individual personally;
>     (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>     (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Conn. Gen. Stat. § 52-57(a) provides: "process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state."[7] Between Rule 4(e) and § 52-57(a), the available means by which Plaintiff could properly serve a summons on the Attorney General, authorized to accept on

---

[6] In Defendants' email to Plaintiff regarding the Attorney General's decision to accept service on behalf of Defendant Lee, Defendants write: "[T]his is to inform you that former DOC Warden Charles Lee has authorized the Office of the Attorney General to accept service for him in his individual capacity in this case only. This E-mail should not be construed to say that service was made in a timely fashion or as a waiver of any defense, including a statute of limitations defense." (Ex. 1 to Defs.' Mem. Supp. Mot. to Dismiss Counts 2 & 3.)

[7] Unlike C.G.S. Section 52-57, Section 52-64, which applies to suits against the state or state officials in their official capacity, permits service of process to the Attorney General by certified mail. The applicability of that statute here, where Defendant Lee is sued in his individual capacity but the Attorney General has consented to accept service on his behalf, need not be decided by the Court because Plaintiff admits that service was effectuated through regular, not certified mail.

11

Warden Lee's behalf, included delivering a copy of the summons to the Attorney General personally or leaving a copy at the Attorney General's usual place of abode.

Plaintiff does not dispute that rather than serving the Attorney General personally, he mailed the summons and Amended Complaint to the Attorney General's office by regular mail, nor does he argue that he requested a waiver of service under Rule 4(d).[8] From Plaintiff's Opposition and statements at oral argument, it appears that he was simply confused as to what method of service was required. However, without requesting a waiver of service in writing as required by Rule 4(d), such that no waiver was forthcoming, effecting proper service on the Attorney General was required, Plaintiff's mailing of service to the Attorney General was insufficient.

### 5. Timing of Service

Lastly, Defendants Lee and Silva argue that Counts Two and Three should be dismissed because Plaintiff failed to serve them within 120 days of removal to this Court. (Defs.' Mem. Supp. Mot. to Dismiss Counts 2 & 3 at 15–17.) Plaintiff responds that the 120–day period "is not a hard and fast rule and may be extended by the court" and that he "has shown that the confusion caused by Defendant is good cause for the delay in service and the complaint should not be dismissed on this basis." (Pl.'s Opp'n Mot. to Dismiss Counts 2 & 3 ¶ 4.)

Federal Rule of Civil Procedure 4(m) provides:

If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made

---

[8] An individual . . . that is subject to service under Rule 4(e) . . . has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of summons." Fed. R. Civ. P. 4(d)(1).

within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Defendant removed this action on December 1, 2010. Mr. Gilbert's summons and Amended Complaint were received by the Attorney General on Warden Lee's behalf on April 1, 2011 (*see* Lee Summons [Doc. # 26]) and were served on Patricia Silva on April 8, 2011 (*see* Silva Summons [Doc. # 25])—which is 121 days and 128 days, respectively, after the case was removed.

Rule 4(m) allows for an extension of the time for service if Plaintiff shows good cause, but other than vaguely referring to "the confusion caused by Defendant," Plaintiff does not point to any reason for the delay in service. Because Plaintiff has failed to serve Defendants Lee and Silva within the 120–day window or show "good cause" for the delay, Rule 4(m) provides that the Court "must dismiss the action without prejudice . . . or order that service be made within a specified time." Accordingly, Counts Two and Three are dismissed.

**B. Count One**

Plaintiff contends that Defendant DOC violated Conn. Gen. Stat. § 31-51q by terminating him for exercising his free speech and free association rights under the Connecticut Constitution. However, having now dismissed Plaintiff's federal claims, and because Plaintiff's Count One claims likely implicate undecided issues of state law regarding whether the Connecticut Constitution provides for greater free speech rights than does the U.S. Constitution, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367[9] over Plaintiff's state law claims in Count One.

---

[9] Section 1367 explicitly gives district courts discretion to decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction.

**III.     Conclusion**

For the aforementioned reasons, Defendants' Motion [Doc. # 45] to Dismiss Counts Two and Three is GRANTED.  The Amended Complaint consisting of only Count One and Defendants' Motion to Dismiss Count One are remanded to the Judicial District of Waterbury at Waterbury.

IT IS SO ORDERED.

　　　　/s/ 　　　　　　　　　　　　　
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 18th day of November, 2014.