UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NABIL GHAWI,<br>    *Plaintiff,*<br>    *v.*<br>LAW OFFICES HOWARD LEE SCHIFF, P.C.,<br>JEANINE M. DUMONT, HEATH A. TIBERIO,<br>REBECCA JADACH, QUANESHIA DAILEY-<br>THOMPSON, and CITIBANK, N.A.,<br>    *Defendants.* | Civil No. 3:13-cv-115 (JBA)<br><br>December 1, 2014 |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

This is an action by pro se Plaintiff Nabil Ghawi for damages arising out of alleged violations of federal law (the Federal Debt Collection Practice Act (FDCPA), the Telephone Communications Protection Act (TCPA), the Racketeer Influenced and Corrupt Organizations Act (RICO), the Truth in Lending Act (TILA), and the U.S. Mail Fraud Statute), Connecticut law (the Creditors' Collection Practices Act (CCPA), the Truth in Lending Act (Connecticut TILA), laws restricting telemarketing, laws governing telegraph, telephone, illuminating, power, and water companies, and the Connecticut Unfair Trade Practices Act (CUTPA)), and common law (unconscionability and misconduct) by Defendant the Law Offices of Howard Lee Schiff, P.C. ("HLS"), HLS employees Jeanine M. Dumont, Heath A. Tiberio, Rebecca Jadach, and Quaneshia Dailey-Thompson (collectively "Employees"), and alleged creditor Citibank, N.A. Mr. Ghawi filed his Amended Complaint [Doc. # 59] on March 13, 2014. Defendants now move [Doc. # 60], pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss this action for failure to state a claim upon which relief can be granted. For the following reasons, Defendants' motion is granted in part and denied in part.

## I.      Background

Plaintiff alleges the following facts.  On July 9, 2011, Mr. Ghawi received a letter in the mail from Defendant HLS notifying him that he owed Defendant Citibank $14,773.19.  (Am. Compl. ¶ 10.)   Mr. Ghawi responded by letter on July 15, 2011, requesting that HLS validate the alleged debt.  (*Id.* ¶ 14.)  He received no reply.  (*See id.*)  Over the course of September 2011 and January 2012, Mr. Ghawi received three more letters from HLS requesting settlement of the alleged debt.  (*See id.* ¶ 10.)  By letters dated May 16, 2012, July 16 2012, August 28, 2012, September 3, 2012, September 8, 2012, September 14, 2012, and September 17, 2012, Mr. Ghawi repeatedly and unsuccessfully reiterated his request for validation of the debt.  (*Id.* ¶ 14.)

Although Mr. Ghawi requested several times that HLS cease communications with him until it provided documentation validating the alleged debt, between July 2011 and June 2012, HLS called Mr. Ghawi repeatedly regarding the debt, leaving at least 29 automated voicemail messages for Mr. Ghawi.  (*Id.* ¶¶ 15, 22; Exs. 1A–E to Am. Compl.)  Mr. Ghawi's Citibank account lists his phone numbers as: 203-930-6063 and 203-532-9459, but HLS's calls were made to: 203-531-5122, a number that Mr. Ghawi set up to connect to both his cell phone and business phone, and which he never gave HLS or Citibank permission to use.  (Am. Compl. ¶¶ 37–39; Ex. 2 to Am. Compl.)  Mr. Ghawi alleges that when he received calls from HLS regarding the alleged debt, his caller ID indicated that the caller was a "telemarketer."  (Am. Compl. ¶ 21.)  Mr. Ghawi informed

Defendant Ms. Dailey-Thompson of this fact on at least two occasions.  (*Id.*)[1]

## II.      Discussion[2]

Plaintiff claims that Defendants violated a plethora of federal and state, statutory

---

[1] Mr. Ghawi also makes several allegations regarding Defendants' use of affidavits and unsigned documents in the course of their debt collection activities.  Plaintiff alleges, for instance that "Defendants used other third-party's [sic] to help them create the false affidavits and procedures alleged herein, drafting language that Defendants knew would be interpreted incorrectly by consumers and courts around the country" (*id.* ¶ 46); that Defendants "creat[ed] fraudulent affidavits for use in collection lawsuits and corresponding with unsigned documentation" (*id.* ¶ 51); and that "Defendant and/or other unknown third-parties mailed through the U.S. Mail System a multitude of deceptive unsigned letters, disguising the identity of the 'true' author and executor of the document," for the purpose of "mislead[ing] the Plaintiff and prevent[ing] him from having the ability to communicate with the maker/sender, and/or to include such person(s) in litigation, and/or examine such person(s) under oath by way of depositions and other methods by subpoena" (*id.* ¶ 70).  These allegations lack comprehensible factual context and thus cannot be considered in the Court's analysis.

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* Conclusory allegations are not sufficient.  *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

and common laws[3] by engaging in the following forms of misconduct: (1) refusing to validate Plaintiff's debt; (2) causing or allowing "telemarketer" to appear on Mr. Ghawi's phone when Defendants called him; and (3) repeatedly calling Mr. Ghawi's cell phone number, which he did not consent to be called on, and which he repeatedly informed Defendants was used for his business.

## A. Claims for Which Mr. Ghawi Has Set Forth Sufficient Factual Allegations as to at Least Some Defendants

Mr. Ghawi's factual allegations plausibly state claims against at least some Defendants under: (1) the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692c(a)(1), 1692d(5) & (6), 1692e(10), and 1692g(b)[4]; (2) the Telephone Communications Protection Act (TCPA), 47 U.S.C. § 227(b); and (3) the Connecticut

---

[3] The Court does not address Mr. Ghawi's claims under C.G.S. § 36a-671 as these claims are not present in the Amended Complaint and appear for the first time in Plaintiff's Response to Defendants' Motion to Dismiss. (*See* Opp'n [Doc. # 61] at 2, 12.) Plaintiff may not use his response to assert new claims without converting Defendants' motion to dismiss into a motion for summary judgment. *See Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 379 (S.D.N.Y. 2013) ("When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment . . . and afford all parties the opportunity to present supporting material." (quoting *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (alterations omitted)).

[4] Although Mr. Ghawi does not explicitly list § 1692g(b), he alleges violations of § 1692 generally and specifically alleges that Defendants proceeded with collection efforts after being informed that the validation of alleged debt was demanded, a clear reference to § 1692g. (Am. Compl. ¶ 71.) As such, and in acknowledgment of the fact that Mr. Ghawi is pro se, the Court will construe Mr. Ghawi's complaint as alleging a violation of § 1692g. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.").

Unfair Trade Practices Act (CUTPA), C.G.S. § 42-110 *et seq*.

**1. FDCPA Claims, 15 U.S.C. §§ 1692c(a)(1), 1692d(5) & (6), 1692e(10), 1692g(b)**

Although Mr. Ghawi claims plausible violations of the FDCPA as set forth in more detail below, he does not state a claim against Citibank because the FDCPA applies only to debt collectors[5] and Citibank is not alleged to be a debt collector.[6]   Accordingly, Plaintiff's FDCPA claims are dismissed as to Citibank.

Section 1692c(a)(1) prohibits a debt collector from "communicat[ing] with a consumer in connection with the collection of any debt—(1) at any unusual time or place or at a time or place known or which should be known to be inconvenient to the consumer" without "the prior consent of the consumer or the express permission of a court of competent jurisdiction." 15 U.S.C. § 1692c(a)(1).  Mr. Ghawi does not allege that he received calls late at night or at any other unusual time, but he does allege that

---

[5] "For purposes of the FDCPA, a 'debt collector' is 'any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due." *Walsh v. Law Offices of Howard Lee Schiff, P.C.*, No. 3:11cv1111 (SRU), 2012 WL 4372251, at *3 (D. Conn. Sept. 24, 2012) (quoting 15 U.S.C. § 1692a(6)). "Attorneys who regularly engage in debt collection activities, such as [HLS and HLS employees], are regarded as debt collectors, and their conduct as such is regulated by the FDCPA." *Id.*

[6] Nor does vicarious liability apply here.  Although "general principles of agency [law] . . . form the basis of vicarious liability under the FDCPA," *Rogers v. Capital One Servs., LLC*, No. 10-CV-398 (VLB), 2011 WL 873312, at *6 (D. Conn. Feb. 19, 2011) *aff'd*, 447 F. App'x 246 (2d Cir. 2011) (quoting *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006)), and although under agency law, "the principal . . . is liable for[] the acts in which his agent engages with authority from the principal and within the scope of the agent's employment," *Sheltry v. Unum Life Ins. Co. of Am.*, 247 F. Supp. 2d 169, 181 (D. Conn. 2003), Plaintiff here has not alleged any facts from which it can be reasonably inferred that HLS or its employees had authorization (either actual or apparent) from Citibank to engage in the allegedly harassing behavior claimed.

although he informed HLS employees that they were calling a number that connected to his business phone and that calls to that number were inconvenient, they continued to call the number.  (*See* Am. Compl. ¶¶ 22, 37, 39, 40.)

Section 1692d(5) proscribes debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," specifically, by "(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with *intent to* annoy, abuse, or harass any person at the called number."  15 U.S.C. § 1692d(5) (emphasis added).

Although Mr. Ghawi does not specifically allege that HLS intended to annoy, abuse, or harass him, the statute explicitly permits the inference of such intent if the debt collectors' behavior is such that it would naturally tend to annoy, abuse, or harass another.  In support of such an inference, Mr. Ghawi contends that he requested HLS to validate the alleged debt and to stop calling his cell phone, but in spite of these requests, it continued to call and refused to validate the debt.  Mr. Ghawi attaches to his Amended Complaint a list of 29 voicemails left by HLS between July 2011 and June 2012.  (Exs. 1–1E to Am. Compl.)   Though, as Mr. Ghawi acknowledges, the list of voicemails is over-inclusive because some of the calls fall outside the one-year statute of limitations for claims under the FDCPA, it is also under-inclusive because, according to Mr. Ghawi, he received "countless other calls" from Defendants in which a voicemail was not left.  (Am. Compl. ¶ 22.)   Depending on the number and frequency of calls, such conduct may constitute harassment.  *See Conover v. BYL Collection Servs., LLC,* 11-CV-6244P, 2012 WL 4363740, at *6 (W.D.N.Y. Sept. 21, 2012) ("Whether there is actionable harassment

or annoyance under Section 1692d(5) turns not only on the volume of calls made, but also on the pattern of calls." (internal quotation marks and brackets omitted)).   Mr. Ghawi did not plead the specific dates of the phone calls or the number of phone calls alleged, but at this stage in the litigation, such "detailed allegations are not required." *Iqbal*, 556 U.S. at 678.  Mr. Ghawi has presented sufficient factual content at this early procedural stage to allow the court to draw a reasonable inference that Defendants HLS and HLS employees may be liable for violations of § 1692d(5).

They may also be liable for violating § 1692d(6) and § 1692e(10).   Section 1692d(6) prohibits debt collectors from placing "telephone calls without meaningful disclosure of the caller's identity" and § 1692e(10) forbids debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  Mr. Ghawi alleges that his caller ID read "telemarketer" when he received calls from HLS, that he notified an HLS employee about this fact, and that nothing was done to remedy the situation.  The allegations state a plausible claim that HLS and HLS employees violated subsection d(6) by placing "telephone calls without meaningful disclosure of the caller's identity" and e(10) by using false representation to attempt to collect a debt.

Finally, § 1692g(b) provides that "If the consumer notifies the debt collector in writing within [thirty days of receiving a notice of debt from the debt collector] that the debt, or any portion thereof, is disputed . . .the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment . . . and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."  15

U.S.C. § 1692g(b).  Plaintiff maintains that he sent HLS such a notification on July 15, 2011, just six days after receiving the first written notice HLS sent him.  (*See* Am. Compl. ¶ 10, 14.)  Mr. Ghawi further alleges that in spite of his request for verification, HLS never verified his debt.  (*Id.* ¶ 14.)  Such allegations are sufficient to state a claim for relief against HLS and HLS employees.

### 2.   TCPA Claim, 47 U.S.C. § 227(b)

Section 227(b) of the TCPA[7] prohibits (in relevant part) "any person within the United States" from making "any call (other than . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any other radio common carrier service, or any service for which the called party is charged for the call."  47 U.S.C. § 227(b)(1)(A)(iii).  Mr. Ghawi alleges that Defendants repeatedly utilized an automatic telephone dialing system to call his cell phone without his consent, in violation of the TCPA.

Defendants respond by producing, as evidence of consent, Mr. Ghawi's notice of appearance in Superior Court in which he lists his cell phone number as his contact number.  (*See* Defs.' Mem. Supp. Mot. to Dismiss [Doc. # 60] at 3, n.3.)  This is, however, no response to Mr. Ghawi's claim.  First, the fact that Mr. Ghawi gave the Superior Court

---

[7] The TCPA provides for a private right of action for any individual to "bring in an appropriate court of [her] State – (A) an action based on a violation of [§ 227(b)] to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violations, whichever is greater, or (C) both such actions."  In addition, "[i]f the court finds that the defendant willfully or knowingly violated [§ 227(b)] . . . the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."  47 U.S.C. § 227(b)(3).

and opposing counsel his contact information for communications regarding litigation matters does not translate to consent for HLS to contact him on his cell phone regarding debt collection matters, nor does it constitute "prior" consent since the notice of appearance was entered nearly a year after the calls at issue here were made.  Second, in asserting that Mr. Ghawi's claim is "completely false" (*id.*), Defendants misunderstand the purpose of a motion to dismiss.  Whereas "on a motion for summary judgment . . . the parties test the substantive merits of the claim or claims and their evidentiary support," on a motion to dismiss, a court assesses only "the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits."  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011).  The truth or falsity of Mr. Ghawi's allegations is not properly presented as a basis for Defendants' motion to dismiss.

Defendants additionally contend that as debt collectors they are exempt from the TCPA's statutory prohibition against prerecorded calls.  (Defs.' Mem. Supp. Mot. to Dismiss at 12.)  Perplexingly, in so arguing, Defendants cite to the very FCC Ruling in which the FCC clarified that "the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of . . . the prior express consent of the called party . . . regardless of the content of the call."  *In the Matter of Rules and Regulations Implementing the TCPA*, 23 FCC Rcd. 559, 565, ¶ 11 (Jan. 4, 2008) (emphases added) ("FCC Ruling 2008").  The FCC added that although debt collectors are not subject to the TCPA's separate restrictions on "telephone solicitations," the prohibition in 227(b)(1)(A)(iii) "is not limited only to calls that constitute 'telephone solicitations.'"  *Id.*  In accordance with the FCC's guidance, several courts both within and

9

outside this circuit have held that debt collection activities can give rise to a cause of action under the TCPA. *See Osorio v. State Farm Bank*, F.S.B., 746 F.3d 1242, 1254 (11th Cir. 2014); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 273 (3d Cir. 2013); *Levy v. Receivables Performance Mgmt, LLC*, 972 F. Supp. 2d 409, 418 (E.D.N.Y. 2013).

Further, the FCC has been clear that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." FCC Ruling 2008 at 565, ⁋ 10. Because Mr. Ghawi asserted sufficient facts to state a claim under § 227(b) against all of the defendants, Defendants' motion to dismiss this claim is denied.

### 3. CUTPA Claim, C.G.S. § 42-110 *et seq.*

CUTPA bars any person from "engag[ing] in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." C.G.S. § 42-110b(a). A practice is considered to be "unfair or deceptive" if it: offends public policy; is immoral, unethical, oppressive, or unscrupulous; and/or causes substantial injury to consumers. *Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 119–20 (2d Cir. 2004). A "plaintiff need not establish all three criteria to demonstrate unfairness." *Id.* However, the plaintiff must demonstrate that he has "suffer[ed] an[] ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act

or practice prohibited by section 42-110b."[8]  C.G.S. § 42-110g.

Plaintiff contends that Defendants offended public policy, behaved immorally, oppressively, unlawfully and unfairly, and caused Plaintiff substantial injury by engaging in conduct that violated the CCPA and was otherwise harassing and deceptive.  (Am. Compl. ¶¶ 72, 78.)  Plaintiff further alleges that he satisfies the requirement of having sustained an ascertainable injury because he "has suffered lost opportunities, time . . . and . . . reputation," as well as monetary damages (because he had to pay for incoming calls to his phone).  (*Id.* ¶ 80; Opp'n at 5.)  Although Plaintiff's allegations of lost reputation, lost time, and lost opportunities are too vague and conclusory to survive this motion to dismiss, his claim regarding monetary damages (he had to pay for incoming calls to his phone) is sufficient to state a claim under CUTPA, and this claim is therefore not dismissed.

Defendants claim that CUTPA does not authorize suits against attorneys (Defs.' Mem. Supp. Mot. to Dismiss at 18), but the Connecticut Supreme Court and the Second Circuit have held to the contrary.  *See Haynes v. Yale-New Haven Hosp.*, 243 Conn. 17, 35 (1997) ("CUTPA covers . . . aspects of the profession of law"); *Gabriele v. Am. Home Mortg. Serv. Inc.*, 503 Fed. App'x 89, 96 (2d Cir. 2012) (same).  Although Defendants are correct that CUTPA does not cover attorneys' liability for their *legal representation* of a client, it does cover "the entrepreneurial or commercial aspects of the profession."

---

[8] The Connecticut Supreme Court has explained: "Ascertainable means capable of being discovered, observed or established" and "'loss' necessarily encompasses a broader meaning than the term 'damage'. . . . [A] loss is ascertainable if it is measurable even though the precise amount of the loss is not known." (internal quotation marks and citations omitted).  *Hinchliffe v. Am. Motors Corp.*, 184 Conn. 607, 613–14 (1981)).

*Haynes*, 243 Conn. at 35.  Courts have not clearly defined the scope of lawyering activities deemed noncommercial, but the Connecticut Supreme Court has cabined the meaning of "noncommercial" to "the representation of the client *in a legal capacity*."  *Id.* (emphasis added) (concluding that professional malpractice claims do not fall under CUTPA because only the entrepreneurial or commercial aspects of the profession are covered).

Although courts have cited "bill collection" as an example of a commercial activity, s*ee Gabriele*, 503 Fed. App'x at 96 ("Croog's alleged misconduct, consisting of the filing of court documents, was performed as part of its legal representation of Deutsche Bank in the state debt collection action, and did not consist of entrepreneurial work such as advertising and bill collection."); *see also Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Investors, L.P.*, 260 Conn. 766, 782 ("The 'entrepreneurial' exception is just that, a specific exception from CUTPA immunity for a well-defined set of activities-advertising and bill collection, for example."), no court appears to have clarified whether this refers to bill collection for one's own work or bill collection as a service provided to a client.  However, Connecticut caselaw on the related question of what constitutes "practice of law" is informative.

In *Persels & Assoc., LLC v. State Dep't of Banking*, No. HHBCV126017849S, 2014 WL 1717246, at *5 (Conn. Super. Ct. Mar. 28, 2014), the plaintiff challenged a law

requiring debt negotiation[9] service providers to obtain a license which exempted from this requirement "any attorney admitted to the practice of law" in Connecticut "who engages or offers to engage in debt negotiation as an ancillary matter to such attorney's representation of a client."  The plaintiff argued that the law unconstitutionally violated separation of powers by regulating the practice of law, an area he maintained was under the exclusive control of the judiciary.  *Id.* at *17.  The court rejected this argument, holding:

> Debt negotiation . . .  is not the practice of law.  There is no dispute that debt negotiation may be performed by both attorneys and nonattorneys. . . .  Moreover, even if a legal skillset might be helpful in providing a particular service, that service is not transformed into the practice of law merely because it is performed by an attorney.

> In *Bysiewicz v. Dinardo,* 298 Conn. 748, 6 A.3d 726 (2010), our Supreme Court considered whether an attorney who had served as secretary of state had been engaged in the "active practice at the bar of this state."  The court rejected the argument the that candidate's activities as Secretary of State constituted the practice of law and explained: "although the plaintiff's formal training as an attorney occasionally may have been useful . . . the evidence does not support a conclusion that the performance of those duties is commonly understood to be the practice of law . . . or that it *requires* the high degree of legal skill and great capacity for adaptation to difficult and complex situations that characterizes the practice of law. . . ."  *Id.* at 781–82.

> Similarly, debt negotiation services do not become the practice of law merely because an attorney or law firm provides the service.  There is

---

[9] Under the statute, "debt negotiation" is defined as: "for or with the expectation of a fee, commission or other valuable consideration, assisting a debtor in negotiating or attempting to negotiate on behalf of a debtor the terms of a debtor's obligations with one or more mortgagees or creditors of the debtor, including the negotiation of short sales of residential property or foreclosure rescue services."  *Persels*, 2014 WL 1717246, at *2 (quoting C.G.S. § 36a–671).

> nothing in the record that indicates debt negotiation itself requires the "high degree of legal skill and great capacity for adaptation to difficult and complex situations that characterizes the practice of law."

*Id.* at *17–18.   Likewise, here, HLS and HLS employees' pre-suit conduct in contacting Mr. Ghawi regarding the claimed debt to Citibank—activities which are routinely performed by non-attorneys and are not at "the heart of an attorney's representation of a client," *Suffield*, 260 Conn. at 782—may not constitute the "practice of law" or "legal representation" within the meaning of CUTPA.   Defendants HLS and HLS employees may therefore be subject to CUTPA and Plaintiff's CUTPA claims against them will not be dismissed.

However, Plaintiff's CUTPA claims are dismissed as to Citibank.   Although "the principal in an agency relationship is bound by, and liable for, the acts in which his agent engages with authority from the principal and within the scope of the agent's employment," *Sheltry*, 247 F. Supp. 2d at 176 (quoting *Maharishi Sch. Vedic Scis. Inc. v. Conn. Constitution Assocs. Ltd. P'ship*, 260 Conn. 598, 606 (2002)),[10] Plaintiff does not allege that HLS or its employees had authority from Citibank, either actual or apparent, to engage in the allegedly harassing behavior of which they are accused.   Absent such allegations, Plaintiff cannot state a plausible CUTPA claim against Citibank.

**B.  Dismissed Claims**

The following claims are dismissed as to all Defendants.

---

[10] "Connecticut courts have applied general principles of agency law to determine whether to hold a principal liable for the acts of its agent under CUTPA."  *Sheltry*, 247 F. Supp. at 181.

14

### 1.   No Private Right of Action

Mr. Ghawi alleges violations of several statutes which do not provide for private rights of action.   These claims, under—47 U.S.C. § 227(e)[11] (*see* Am. Compl. ¶ 66); 15 U.S.C. § 1643(b)[12] (*see id.* ¶ 68); 18 U.S.C. § 1341[13] (*see id.* ¶¶ 70–71); "Unconscionability"

---

[11]   Section 227(e) prohibits "any person . . . in connection with any telecommunications service or IP-enabled voice service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value."

[12]   Plaintiff claims that Defendants violated 15 U.S.C. § 1643(b) by failing to provide him with an original copy of his credit card agreement.   However, § 1643 pertains to the liability of a credit card holder, not to the liability of a creditor.   Section 1643(b), to which Plaintiff points, states that "In any action by a card issuer to enforce liability for the use of a credit card, the burden of proof is upon the card issuer to show that the use was authorized or, if the use was unauthorized, then the burden of proof is upon the card issuer to show that the conditions of liability for the unauthorized use of a credit card, as set forth in subsection (a) of this section, have been met."   This section thus creates a defense for debtors in actions by creditors to collect from the debtor.

[13]   Section 1341 provides for the fining or imprisonment of any individual found guilty of "devis[ing] or intending to devise any scheme or artifice" to use the U.S. mails to commit fraud or theft.   18 U.S.C. § 1341.   As Defendants note, this statute provides for criminal penalties for violations and does not create a private right of action.

2c3716b6327eed16

(*see id.* ¶ 81); "Misconduct"[14] (*see id.* ¶¶ 82–88); and C.G.S. § 16-256e (*see id.* ¶ 58)[15]—are therefore dismissed.

### 2.   Insufficient Factual Allegations

The following claims are dismissed for failure to state sufficient factual content to support a claim: (1) RICO, 18 U.S.C. § 1961 et seq.; (2) FDCPA, 15 U.S.C. §§ 1692b(1) & (3), 1692e(2), and 1692f(1); (3) C.G.S. § 36a-681; and (4) C.G.S. § 42-288a.

---

[14] Mr. Ghawi asserts that:

> Howard L. Schiff P.C., in concert with Citibank, N.A., filed a sham complaint in Stamford, CV 126013516 S, making a series of materially false allegations that misled the Superior Court to rely on false representation and false documentation to find in favor of the Defendant. . . . Said lower tribunal action was at all time in violation of federal law; . . . As such, the complaint and its allegations of the Plaintiff are thus a question of federal law giving rise to the jurisdiction of this United States Federal Court. . . . Plaintiff would welcome court's review of the case in state court as many valid points were made.

(Am. Compl. ¶¶ 83, 84, 87.) This section of the complaint may be merely intended as a statement of the Court's jurisdiction over Mr. Ghawi's claims; it is not a cause of action. If Mr. Ghawi's intent was to ask this Court to review the state court's judgment, that request is denied as this Court does not have the power to review a state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005) ("[A]ppellate jurisdiction to reverse or modify a state-court judgment is lodged, . . . by 28 U.S.C. § 1257, exclusively in [the Supreme] Court."); *see also id.* at 283–84 (Explaining the *Rooker-Feldman* doctrine: "Plaintiffs in *Rooker* and *Feldman* had litigated and lost in state court. Their federal complaints, we observed, essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments. We declared such suits out of bounds, i.e., properly dismissed for want of subject-matter jurisdiction.").

[15] Section 16-256e bars the use of "any device which transmits an unsolicited recorded telephone message for any commercial, business or advertising purpose to any telephone customer in the state and which continues the call and message after the customer hangs up the receiver." C.G.S. § 16-256e. The statute provides for a fine of not more than one thousand dollars for violations. *Id.*

### a.  RICO, 18 U.S.C. § 1961 et seq.

RICO makes it "unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain . . . any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1962(b).  Racketeering activity is defined to include, *inter alia*, "any act which is indictable under . . . section 1341 (relating to mail fraud) [or] section 1343 (relating to wire fraud). . . ."  18 U.S.C. § 1961(1)(B).  Plaintiff contends that Defendants violated RICO by "us[ing] other third-part[ies] to help them create the false affidavits and procedures alleged herein, drafting language that Defendants knew would be interpreted incorrectly by consumers and courts around the country."  (Am. Compl. ¶ 46.)  Without any specific allegations regarding what affidavits and letters Mr. Ghawi references here, compounded by his failure to comply with the District of Connecticut's Standing Order in Civil RICO Cases,[16] there is no basis to plausibly infer liability of Defendants for RICO violations.

### b.  FDCPA, 15 U.S.C. §§ 1692b(1) & (3), 1692e(2), 1692f(1)

Sections 1692b(1) and (3) require: "Any debt collector communicating with any person *other than the consumer* for the purpose of acquiring location information about the consumer" to "(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and only if expressly requested, identify his employer;" and to "(3) not communicate with any such person more than once unless requested to do so by such person. . . ."  15 U.S.C. §§ 1692b(1), (3) (emphasis added).  As

---

[16] The Order requires plaintiffs to "file a RICO Case Statement within twenty days of filing the complaint."

Defendants observe, however, Plaintiff's complaint never alleges that they ever spoke with any person other than Mr. Ghawi regarding his debt. Because § 1692b only applies when a debt collector communicates with a person other than the consumer, Mr. Ghawi's complaint fails to state a claim under this section. His claims under § 1692b are accordingly dismissed.

Section 1692e(2) prohibits debt collectors from falsely representing "the character, amount, or legal status of any debt," and § 1692f(1) proscribes debt collectors from collecting "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Both of these claims fail for the same reason. Although Mr. Ghawi complains that Defendants refused to validate the debt or to prove that they represented Citibank and that they used allegedly illegal means to collect the debt, he never alleges that the debt is not his or that the alleged amount is incorrect.

### c.  CCPA Claim, C.G.S. 36a-648

Mr. Ghawi claims that Defendants violated the CCPA. By enacting the Creditors' Collection Practices Act and its companion statute, the Consumer Collection Agency Act (CCAA) (under which Mr. Ghawi *did not* sue) the Legislature appears to have intended to create a statutory scheme under which individuals and entities collecting debts are categorized as either "creditors" or "debt collectors." The conduct of the former is regulated by the CCPA, while the conduct of the latter is regulated by the CCAA. A "consumer collection agency" generally includes "any person engaged in the business of collecting or receiving for payment for others of any account, bill or other indebtedness from a consumer debtor," C.G.S. § 36a-800(1), and a "creditor" is generally "any person [not a collection agency] to whom a debt is owed by a consumer debtor and such debt

18

results from a transaction occurring in the ordinary course of such person's business, or . . . any person to whom such debt is assigned," C.G.S. § 36a-645.

Under these definitions, it is apparent that the only defendant here that is a creditor is Citibank.  However, Mr. Ghawi's allegations all center on the conduct of HLS and HLS employees (who are not creditors), and Mr. Ghawi does not make any claims regarding Citibank's own conduct.  Because Mr. Ghawi alleged violations only of the Creditors' Collections Practices Act, applicable to "creditors," his CCPA claims are dismissed in their entirety.

### d.   Connecticut TILA Claim, C.G.S. § 36a-681

Section 36a-681 of the Connecticut Truth in Lending Act mandates that "Any person who willfully and knowingly . . . gives false or inaccurate information or fails to provide information which such person is required to disclose . . . shall be fined not more than five thousand dollars or imprisoned not more than one year or both."  C.G.S. § 36a-681.  Section 36a-681 does not provide for a private right of action, but § 36a-683 does create a right of action for violations of § 36a-681 by *creditors*.[17]  *See* C.G.S. § 36a-683 ("Except as otherwise provided in this section, any creditor who fails to comply with any requirement of sections 36a-675 to 36a-685, inclusive . . . with respect to any person is liable to that person.").  Mr. Ghawi alleges that he requested several times that HLS and HLS employees validate his debt, but he does not claim that he made any such request to Citibank directly.  Because the statute provides a right of action only against creditors, and because Plaintiff did not allege any misconduct on the part of Citibank, Plaintiff's

---

[17] "Creditor" is defined with reference to the federal Consumer Credit Protection Act, 15 U.S.C. § 1602(g).

state TILA claim is dismissed.

### e. C.G.S. § 42-288a

Conn. Gen. Stat. § 42-288a restricts the means by which solicitors may make telephonic sales calls. A telephone solicitor is defined as "any individual, association, corporation, partnership, limited partnership, limited liability company or other business entity, or a subsidiary or affiliate thereof, doing business in this state that makes or causes to be made a telephonic sales call. . . ." C.G.S. § 42-288a(9). A "telephonic sales call" is, in turn, defined as "a telephone call made by a telephone solicitor . . . to a consumer for the purpose of (A) engaging in a marketing or sales solicitation, (B) soliciting an extension of credit for consumer goods or services, or (C) obtaining information that will or may be used for marketing or sales solicitation or exchange of or extension of credit for consumer goods or services." C.G.S. § 42-288a(8). Because Plaintiff does not allege that Defendants' calls to him were for the purpose of soliciting sales, an extension of credit, or obtaining information for marketing or sales solicitation, Plaintiff fails to state a claim under § 42-288(a). His claim is therefore dismissed.

### III.    Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. # 60] is GRANTED in part and DENIED in part.

The following claims are dismissed in their entirety: (1) 47 U.S.C. § 227(e); (2) TILA, 15 U.S.C. § 1643(b); (3) Mail Fraud, 18 U.S.C. § 1341; (4) "Unconscionability"; (5) "Misconduct"; (6) C.G.S. § 16-256e; (7) RICO, 18 U.S.C. § 1961 et seq.; (8) FDCPA, 15 U.S.C. §§ 1692b(1) & (3),  1692e(2), and 1692f(1); (9) Connecticut TILA, C.G.S. § 36a-681; and (10) C.G.S. § 42-288a. In addition, all claims under the FDCPA and CUTPA are

dismissed as to Defendant Citibank.

The remaining claims—(1) FDCPA, 15 U.S.C. §§ 1692c(a)(1), 1692d(5) & (6), 1692e(10), and 1692g(b) as to HLS and HLS employees; (2) TCPA, 47 U.S.C. § 227(b) as to all Defendants; and (3) CUTPA, C.G.S. § 42-110 *et seq.* as to HLS and HLS employees—are not dismissed.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 1st day of December, 2014.