UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


NABIL GHAWI                          )
PLAINTIFF

                                          CIVIL ACTION 3:13 CV
                                          00115JBA

VS                                   )

HOWARD L. SCHIFF P.C.
CTIBANK, NA JEANINE                  )
DUMONT, HEATH TIBERIO
REBECCA JADACH, QUANESHIA  )
DAILEY-THOMPSON
(hereinafter HLS) DEFENDANT/S   )

                                          April 13, 2015



MOTION FOR ORDER OF COMPLIANCE TO DISCOVERY
(RESPONSES TO REQUESTS FOR ADMISSIONS,
INTERROGATORIES AND PRODUCTION).



     Plaintiff is asking the Court to order HLS to comply by
responding in good faith to discovery including the submitted
interrogatories, admissions and request for production. Citibank has
other information that is pertinent and separate discovery has been
served on them. Mrs Dumont herself argues that all the information
they have is from CIB. This makes such disclosure even that more
important.

The questions are well within the scope of the four corners of the complaint. Enclosed are further clarifications of each item required and the reason for such a demand. The initial responses by HLS are included but are not sufficient and are deficient.

The responses by Jeanine M. Dumont are sorely lacking in substance. Plaintiff has enumerated below what is needed and the reasons why. Each item refers to the corresponding one found in attached (Exhibit O). The discovery was directed to each individual named party, namely Heath Tiberio, Quaneshia Dailey-Thompson and Rebecca Jadach. Jeanine Dumont as an officer of the company may be able to answer questions on behalf of Howard L. Schiff PC but the discovery has to be addressed and signed by each individual named in the suit, as answers will vary.

## ADMISSIONS:

1- Since this was a yes or no question then reply means that it is so admitted. The reason of why is not the question. HLS has to comply to both federal and state statutes. Federal law disagrees with their position: USC Title 15 Chapter 41 Subchapter V § 1692e. The 1974 Uniform Consumer Credit Code requires any assignee of a "supervised loan" to be licensed: UCC § 2.302 (1974). Even Connecticut requires debt collectors to be licensed (Exhibit Q). It is correct that individual attorneys do not have to be licensed but non-human entities must be licensed and bonded.

2- It is so admitted. It is true that Citibank NA can retain any number of law firms to pursue the same debt but Citibank NA according to USC 1692g et seq must validate the debt before they or their retained law firms attempt to collect on the same debt. The fact is that HLS sent in hundreds of bogus and questionable statements after the fact (not within the 30 days as required by CPB § 13-9 of the July 9th, 2011 dunning letter ) ( Exhibit E) . Frey v. Gangwish, 970 F.2d 1516 (6th Cir. 1992).

3- Please refer to Exhibit I.

4-   Case law does not agree with your position. "When challenged written assignment must be produced. An affidavit stating that there is such an assignment is not sufficient."- Unifund CCR Partners V Shah NE 2d 2011 WL 477725 (Ill. App. Ct. Feb 1, 2011). Gold v Rowland, 296 Conn. 186, 994, A2d 106 (2010). Additionally, compliance with CGS 36a-671(b) is a requirement as per Connecticut statutes.

5-   This attempt at validation took place after the fact and certainly after all the violations took place. Just prior to the summons and during litigation, HLS as counsel to Citibank, produced hundreds of questionable statements that did not meet the basic thresholds of the rules of evidence. Plaintiff's complaint is fundamentally one based on the methods and practices used [1]. Futile attempts at validation are irrelevant anyway especially since they were made in violation of the FDCPA and related statutes as defined in the Amended Complaint and in the forthcoming MSJ. Assuming the statements are valid (strongly contested) they were produced about a year later. All violations cited are prior to that date so that the argument presented by HLS and CIB is moot.

6-   Athough denied that is not entirely correct. Please refer to # 5 above.

7-   Mr. Ghawi  does not remember the exact date that he gave Ms. Dailey-Thompson (and others) the consent to call him. It must have been at the time Plaintiff informed Defendant/s that he did not have the time or means to fight such behemoths. According to HLS's records consent was given on June 21, 2012 therefore even according to Defendant all calls prior to that date were in violation. Additionally whether there were telephone charges or not is not a defense. Both federal and CT TCPA make the act of  the robo-call to either residential or cell phones a violation. All automated calls made to a cell or residential line are in violation, and more especially if there is no written or verbal consent. The MSJ will discuss those statutes in detail.

---

(1) **Keele v. Wexler, 149 F/3d 589. 594 (7th Cir. 1998). "[T]he FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists."**

8- Plaintiff does not believe that he informed Defendant/s that calls would be forwarded from 203-5315122. Plaintiff knows he informed Defendant/s that by calling that number they were in effect calling his mobile number. He does know that his telephone setup is such that his cell phone/s ring/s simultaneously; so the calls are not forwarded. Moreover, Mrs. Dumont misses the whole intention of the TCPA as to whether Plaintiff is charged for the calls or not.

9- The fact is that Ms. Jadach, Mr Tiberio et al are attorneys and officers of the firm and consequently they are liable for the actions, policies and regulations of their company(*2). Technically it may be true that the individual phones do not have the capacity to auto-dial but the "involved parties" are responsible for the actions against Plaintiff. Each individual attorney who took a part in the suit is liable. Attorneys Christopher Moylan and Holly Nelson are two other officers/employees of HLS that were not named in the original complaint but have since been identified in the investigatory process. They claimed representation of Citibank NA. Plaintiff requests that they be included in the MSJ. All other officers and employees that took a part should and must be included. (*2)

---

(*2) Kistner v. Law Offices of Michael P. Margelefsky, L.L.C., 518 F.3d 433(6thCir2008). A collection lawyer was responsible under the FDCPA for collection letters sent under his supervision. There is no corporate immunity under the FDCPA for officers of a debt collection agency or law firm who are actively engaged in debt collection.

Beasley v. Collectors Training Inst., 1999 U.S. Dist. LEXIS 2575 (N.D. Ill. Feb. 25, 1999). Complaint sufficiently stated a claim against individual officers and employees of a corporation by alleging that the individual defendants collected debts on behalf of a third party. Plaintiff did not need to allege facts to pierce the corporate veil to reach the officers.

Carvana v. MFG Fin., Inc., 2008 WL 246 8539 (D. Utah June 17, 2008). The corporate form does not protect officers, directors, or shareholders from individual liability under the FDCPA; individuals who satisfy the statutory definition can be held personally liable under the FDCPA without piercing the corporate veil.

Robinson v. Managed Account Receivables Corp., 654 F. Supp. 2d 1051 (C.D. Cal. 2009). Employees of a debt collection organization may be "debt collectors" under the FDCPA and held personally liable for acts committed during the scope of their employment.

LeBlanc v. Unifund CCR Partners, 601 F.3d 1185 (11th Cir. 2010). Partners of a debt collector limited partnership may be held jointly and severally liable for the partnership's conduct regardless of whether they violated the FDCPA and whether or not they are debt collectors.

West v. Costen, 558 F. Supp. 564 (W.D. Va. 1983). A collection agency and ins individual collection employees are all "debt collectors" separately liable for their separate violations of the FDCPA. By piercing the corporate veil, the owner of the collection agency was also found liable for FDCPA violations

Schwarm v. Craighead, 552 F. Supp. 2d 1056 (E.D. Cal. 2008). Personal FDCPA liability can be imposed on employees, shareholders, officers and directors without piercing the corporate veil, as long as the individual; (1) materially participated in collecting the debt at issue; (2) exercised control over the affairs of the business; (3) was personally involved in the collection of the debt at issue; or (4) was regularly engaged, directly and indirectly, in the collection of debts. The individual defendant had FDCPA liability where, as a director and president, the individual oversaw collecting debts pursuant to contracts with the district attorneys' offices, was one of only three individuals that had final authority over the company's collection procedures, developed the automated software the company used, and was solely responsible for managing and maintaining the automated computer system that implemented the collection program.

Alozynski v. Rubin & Debski, P.A., 2010 WL 1849081 (M.D. Fla, May 7, 2010). The court denied a motion to dismiss because individuals who control and direct the practices of a collection firm can be personally liable even if they act under the auspices of a corporate entity. In addition, they may be liable as persons who "directly or indirectly" collect or attempt to collect a debt.

Belin V. Litton Loan Serv., L.P., 2006 WL 1992410 (M.D. Fla. July 14, 2006). The employees of a debt collection agency who actually engaged in the allegedly unlawful misconduct and the collection agency itself are jointly and severally liable for the resulting FDCPA violations.

Krapf v. Prof'l Collection Servs., Inc., 525 Supp. 2d 3324 (E.D.N.Y. 2007). Employees of the debt collector personally involved with the violative conduct are personally liable under the FDCPA.

Ohlson v. Cadle Co. 2006 WL 721505 (E.D.N.Y. Mar 21, 2006). The court rejected the defendant's contention that only collection agencies, and not individuals, are liable under the FDCPA, holding to the contrary "that officers and employees of the debt collecting agency may be jointly and severally liable with the agency where they have affirmatively acted."

10-   All the listed calls are violations as they occurred prior to June 21, 2012. There was no consent given prior to that date. Plaintiff is still waiting to receive requested information from HLS that indicates a record of the conversation. In production and during telephone discussions that recording or documentation has been with requested. That should not be too onerous and certainly less so than the massive amount of meaningless statements (after the fact anyway) that have been resent numerous times.

11-   Please refer to response 10. It may be true that there may not have been robo-calls after June 21, 2012 but Plaintiff was in litigation at that time and there would not have been any reason for Defendant/s to robo-call him after that time. Mr. Ghawi does admit that Mrs. Dumont called him to discuss a resolution late into the litigation. Mrs. Dailey-Thompson never followed up with a return call early on in the litigation.

12-   My telephone number may be retrieved somehow (although it is listed in DNC  Do Not Call). If alleged original creditor did not have the right to call my private number then certainly HLS as a debt collector, especially according to TCPA, had no legal authority to call me. It is so admitted that they got my number through public means. Logically that means that I did not give it to them and therefore they did not have my consent to call me.

13-   I recall informing Ms Dumont that she was calling me on my cell phone. Admittedly that was during litigation (those calls were not included as violations). Plaintiff does not recollect if Attorney Dumont asked him if it was OK to call him. Plaintiff did include his telephone number to the Court, in his appearance and from then on all parties had access to that number. Plaintiff is not contesting calls made during that time period but only those made without his verbal or written consent as required by the many statutes (refer to MSJ). Plaintiff has requested to see the company manual instructing employees on the rules and regulations on phone policies. Defendants response was the usual it is too evasive, ambiguous, cumbersome etc.... I will sign off on any non-disclosure but I should be able to use that information to support my argument.

14-   Please refer to 7-13 above.

15-   Please refer to 7-13 above.

16-   Automatic Telephone Dialing Systems (ATDS) used by HLS falls squarely within the TCPA definition.

17-   A complete and comprehensive explanation of the exact definition of an ATDS will be found in the forthcoming Memo of Law. In any case Plaintiff's admit to the use of an ATDS.

18-   An ATDS only needs to have the capacity to dial without human assistance. There is no doubt that ATDS used by HLS had that capacity.

19-   Please refer to 7 -13. I have requested in production for HLS to show me where and when I had given my consent. They state that it is too onerous for them to do so. In any event all violations took place prior to summons.

20-   According to Defendant's records (which I have requested and still waiting for) prior to June 21, 2012  Defendant did not have my permission.  Plus I never had calls forwarded. The telephone system is such that ringing main number is equivalent to calling all my numbers, be they cell or not. Call forwarding would mean that the calls were automatically transferred to my mobile and they were not; calls were not call forwarded or transferred to my cell number. I informed HLS et al that by calling such number they were effectively calling my cell phone.

21-   HLS has not informed the Plaintiff or Court on how they got his number. It is Defendant's responsibility in discovery to explain how they were able to get Plaintiff's number. The request is not too cumbersome. By obtaining such number/s privately HLS and CIB are admitting that they did not get the number from me and I certainly did not and would not have given consent to be bombarded by calls.

22-   HLS claims to have records that are germane to the complaint. I have asked them to send me that evidence many times; especially in request for production. This is not too burdensome or cumbersome

and it is relevant. Plaintiff concurs that around June 2012 attempts were made at finding a resolution to the disagreement.

23-   Using investigators to retrieve numbers may be a legal but questionable tactic. But calling without explicit consent is not legal.

24-   Mini Miranda could not have possibly been given in the calls that terminated prematurely (Exhibit N) . Since these were messages left in the voice mailbox they could only have been terminated by Plaintiff. They were presumably calls that ended early because the machine did not hear a human response on the other end.

## INTERROGATORIES

1-   There are 6 Defendants (in fact many more should be revealed during discovery). Mrs. Dumont is just one of the Defendants. Discovery is directed to each individual Defendant. Mrs. Dumont cannot testify or respond to discovery for every single Defendant. Discovery is being submitted to each individual party. If Mrs. Dumont wants to address issues only known to each individual Defendant then each Defendant must consent and sign off that they agree with responses and they have nothing to add.

2-   HLS has not denied using an ATDS

3-   Response is in direct contradiction to the TCPA statute which explicitly does not allow for any robo-calls without express consent.

4-   The whole suit revolves upon this question. To say it is not relevant is disingenuous. In any event, Plaintiff will be producing the evidence himself if HLS does not wish to cooperate. HLS should either admit or deny that they have such information

5-   It is relevant to case. Notwithstanding this does not change the premise of the complaint.

8

6-   Has already admitted that an ATDS is used.

7-   If policies are not in place to abide by the statutes then Defendant cannot apply the two affirmative defenses used.

8-    Pease see response 7 above.

9-    Relevant if HLS is going to use the pretext that they were in compliance.

10-    Most relevant as HLS' defense is that they have done nothing wrong  and have always been in compliance. I have shown otherwise and now the onus is on them to prove me wrong.

11-    Policies and procedures used cannot comply with state and federal laws. HLS cannot use that defense. If they claim otherwise then it must be proven. To state one thing and do another is contradictory.

12-    I informed  Mrs. Dumont she could redact proprietary areas. It is critical as State suit is based on a contract with CIB but no contract has ever been produced.

13-    I have sent Citibank (CIB) separate discovery. They have information that is pertinent and only accessible to them. For HLS to say that all agreements are proprietary and then attempt to file a protective order indicates much concern. To say that I am not entitled to information that directly affects me and then file a protective order is insincere. Possibly they can submit the information directly to the Court with a non-disclosure clause.

14-    Whatever policies and practices that HLS has in place are defective or deficient. It is for them to prove that my allegations which are substantiated by exhibits, documentation, statutory and case law is insufficient; otherwise they must be deemed admitted. In any case, TCPA applies to both residential and cell phones.

15-    Plaintiff needs to be informed when there are any changes or updates. Information requested in production must be supplied or it cannot be used later in testimony.

6-   Has already admitted that an ATDS is used.

7-   If policies are not in place to abide by the statutes then Defendant cannot apply the two affirmative defenses used.

8-   Pease see response 7 above.

9-   Relevant if HLS is going to use the pretext that they were in compliance.

10-   Most relevant as HLS' defense is that they have done nothing wrong  and have always been in compliance. I have shown otherwise and now the onus is on them to prove me wrong.

11-   Policies and procedures used cannot comply with state and federal laws. HLS cannot use that defense. If they claim otherwise then it must be proven. To state one thing and do another is contradictory.

12-   I informed  Mrs. Dumont she could redact proprietary areas. It is critical as State suit is based on a contract with CIB but no contract has ever been produced.

13-   I have sent Citibank (CIB) separate discovery. They have information that is pertinent and only accessible to them. For HLS to say that all agreements are proprietary and then attempt to file a protective order indicates much concern. To say that I am not entitled to information that directly affects me and then file a protective order is insincere. Possibly they can submit the information directly to the Court with a non-disclosure clause.

14-   Whatever policies and practices that HLS has in place are defective or deficient. It is for them to prove that my allegations which are substantiated by exhibits, documentation, statutory and case law is insufficient; otherwise they must be deemed admitted. In any case, TCPA applies to both residential and cell phones.

15-   Plaintiff needs to be informed when there are any changes or updates. Information requested in production must be supplied or it cannot be used later in testimony.

16-   Plaintiff is not prying but it appears that HLS is not current on the many changes that have taken place in the debt collection industry.

## REQUESTS FOR PRODUCTION:

1-   Plaintiff does not believe there is any such agreement. Without evidence that has been requested it is not possible to know what the truth is. If proprietary and Plaintiff's evidence cannot be rebuffed then what is the resolution?

2-   Defendant responds " MOREOVER, THE INFORMATION SOUGHT IS CONFIDENTIAL AND PROPRETORY AND SUBJECT TO DISCLOSURE. This proviso is used in nearly every response but especially in questions that are deemed intimidating. Some information is critical and for HLS to continually block access to redacted relevant data is unconscionable. Virtually any disclosure not to their liking is considered unacceptable. Proviso states that they are subject to disclosure so I am requesting in production their disclosure.

3-   To be even more specific Plaintiff is looking for communication  between CIB and HLS regarding the debt collection. Plaintiff is seeking information on the debt collection process. Plaintiff does not care about the proprietary relationship. The disclosure can remain proprietary but the Court and Plaintiff must have access to such information that can make a difference to the outcome of the lawsuit. Card issuers must promptly provide consumer with a copy of the agreement upon request. 12 CFR § 226.58(e)(1).

4-   Plaintiff will have to rely on documents that Defendant affirm are in my possession. Defendant in their request for production asked for the same equivalent materials that Plaintiff has. If only selective materials are disclosed then that defeats the purpose of discovery.

5-    The reason for production is that Defendant in their affirmative statement of defense states that they are fully compliant. How can that be with all the violations being exposed?

6-    The Defendant claims that I have given them my consent to call me. I do not understand how this question is vague and irrelevant and overly broad. It is a very simple request to produce such documents to corroborate their position.

7-    Since Defendant does not have such records then Plaintiff will use that which is his possession. How this request for production is irrelevant is beyond human comprehension.

8-    Defendant has already admitted they use an ATDS. That is all the information needed to establish fault as far as TCPA and equivalent CT TCPA is concerned.

9-    Please refer to response 5-8 above.

10-   5-8 above. Production is relevant.

11-   5-8 above.  Production is relevant.

12-   5-8 above.  Production is relevant.

13-   same

14-   same.

15-   The request is not overly broad, vague and ambiguous and seeks information which is not relevant to the case. On the contrary the question is very specific and relevant. The response by HLS is not truthful. HLS has been involved in many judicial proceedings. (*3)

11

16-   As in 15 Defendant has the information but may not want to disclose it. Information is most relevant to case. In fact a quick search will indicate that there are many violations and complaints that HLS has been charged with. Footnote (*3) shows just a few.

17-   To be more specific Plaintiff seeks information where Defendant has violated the law. If they as attorneys are not cognizant of the law then publicly disclosed information will prove otherwise. (*3)

---

(*3)   Ballou u v. LAW OFFICES HOWARD LEE SCHIFF, 39 A. 3d 1075 - Conn: Supreme Court 2012

Walsh v. LAW OFFICES OF HOWARD LEE SCHIFF, PC, No. 3: 11-cv-1111 (SRU) (D. Conn. Jan. 7, 2013).

Murphy v. LAW OFFICES OF HOWARD LEE SCHIFF, PC, Civil Action No. 13-10724-RWZ (D. Mass. Feb. 26, 2014).

Hockenhull v. LAW OFFICE HOWARD LEE SCHIFF, PC, CA No. 12-415 S (D.R.I. Dec. 13, 2012).

Devlin v. LAW OFFICES HOWARD LEE SCHIFF, PC, Civil Action No. 11-11902-JGD (D. Mass. Sept. 25, 2012).

Martin v. LAW OFFICES OF HOWARD LEE SCHIFF, PC, CA No. 11-484 S (D.R.I. Feb. 7, 2013).

EGLETES v. LAW OFFICES HOWARD LEE SCHIFF, PC, No. 3: 10-CV-00641 (CSH) (D. Conn. Mar. 7, 2011).

18-   As in 17 above.

19-   Plaintiff does not believe this to be a correct response. Most reputable law firms have such insurance to protect the company and its employees.

20-   Please see 8 above.

21-   If I have to sign a confidentiality agreement then how can I use this information in trial. Possibly Court could place it under seal.

22-   Most incorrect. Consent is required to all calls, residential, cell or otherwise.

23-   Response does not address question.

24-   There are still documents that Defendant has and Plaintiff has requested; the telephone call made by Mr. Ghawi on June 21, 2012 is one such request. Plaintiff does not wish to receive duplicate statements of everything submitted. Plaintiff is only seeking pertinent and relevant information that has a bearing on the case. Information that HLS has quoted from and therefore is in their possession and not in Plaintiff's possession has to be released . Court must force HLS to comply otherwise such information must be stricken from the record.

25-   Plaintiff requests that as new material or information comes to Defendants attention that they inform Plaintiff immediately. Plaintiff has a right to receive copies of all materials that are to be used in Court.

26-   Please refer to 25 above.

## CONCLUSION:

Whereas Plaintiff requests that Defendant/s HLS et al (Rebecca Jadach, Heath Tiberio, Quaneshia Dailey-Thompson, Jeanine Dumont) respond to the discovery questions individually as each is a named party in the suit. Defendant should answer or revise answers so that they are in conformity to the established minimum requirements. Furthermore Citibank NA must address their discovery, as the questions are not the same.

Should Defendant/s not address the deficiencies in this motion for order then the revisions made by Plaintiff will be considered deemed by default.

Respectfully submitted,

/S/   Nabil Ghawi
g5319458
Plaintiff
April 13, 2015

14

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2015 I electronically filed (and sent by postage prepaid) the foregoing with the Clerk of the Court by using the CM/ECF system that will send a notice of electronic filing to the following:

Howard L. Schiff   PC
Jeanine M. Dumont, Attorney
510 Tolland St.
East Hartford, CT 06108

/s/ Nabil Ghawi