## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| NABIL GHAWI | : CIVIL ACTION NO. 3:13-cv-115 (JBA) |
|         Plaintiff | : |
| v. | : |
| | : |
| LAW OFFICES HOWARD LEE SCHIFF, | : |
| P.C., JEANINE M. DUMONT, HEATH A. | : |
| TIBERIO, REBECCA JADACH, QUANESHIA | : |
| DAILEY-THOMPSON, CITIBANK, N.A. | : |
|         Defendants | :        JUNE 8, 2015 |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT

Defendants, LAW OFFICES HOWARD LEE SCHIFF P.C., [hereinafter, "Schiff Law Office"],

JEANINE M. DUMONT, HEATH A. TIBERIO, REBECCA JADACH, and QUANESHIA DAILEY-

THOMPSON [hereinafter collectively referred to as "Schiff defendants"], hereby oppose the

Motion for Summary Judgment filed by plaintiff,[1] and in addition, move for summary judgment

in favor of the Schiff defendants.  In support, defendants state as follows:

### BACKGROUND

This is an action by plaintiff seeking to collect damages for alleged violations of the Fair

Debt Collection Practices Act ("FDCPA"), Telephone Consumer Protection Act ("TCPA") and the

---

[1]      Section (f) of this Court's Order on Pretrial Deadlines Rev. April 20, 2010 requires that a party moving for Summary Judgment seek a pre-filing conference before filing a motion for summary judgment.  This requirement appears to have been waived for the plaintiff's Motion for Summary Judgment.  The Schiff Defendants did not file a motion requesting a pre-filing conference, but they are willing to do so if required by this Court.

Connecticut Unfair Trade Practices Act ("CUTPA").  All of these claims arise from the efforts of the Law Offices Howard Lee Schiff P.C. (hereinafter, "the Schiff Law Office") to collect a balance due and owing on Mr. Ghawi's Citibank credit card account in the sum of $14,773.19.

The Schiff Law Office commenced suit in the Connecticut Superior Court, Judicial District of Stamford, Docket No. CV 12 6013516S in 2012 on behalf of its client, Citibank, N.A. [hereinafter, "the Superior Court Action"].   In the Superior Court Action, judgment entered in favor of Citibank after hearing Citibank's Motion for Summary Judgment.  **Exhibit 1.**  Mr. Ghawi thereafter appealed the decision of the Superior Court.  The Appellate Court subsequently confirmed the decision of the Superior Court.  *Citibank N.A. v. Ghawi, 148 Conn. App. 905 (2014), attached as* **Exhibit 2.**  As of this date, Mr. Ghawi has failed to make any payments against the judgment.

Mr. Ghawi now seeks summary judgment by his second Motion for Summary Judgment dated April 16, 2015 wherein he seeks an undetermined amount of damages.  *Plaintiff's Memorandum of Law at 1.*[2]  The claims remaining in the plaintiff's Amended Complaint following this Court's ruling on defendants' Motion to Dismiss on December 1, 2014 are as follows:

(1) *First Cause of Action:* FDCPA 15 U.S.C. §1692c(a)(1), 1692d(5) & (6), 1692e(10) and 1692g(b);

(2) *Second Cause of Action:* TCPA; and

---

[2] Mr. Ghawi leaves the determination of a "dollar figure" to the Court's discretion.  *Id. at 2.*

(3) *Sixth Cause of Action:* CUTPA.

The Schiff defendants also move for summary judgment as to these remaining counts. Each of these claims will be discussed separately below.

## ARGUMENT

**I.   PLAINTIFF HAS FAILED TO ESTABLISH THAT THERE HAS BEEN ANY VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT BY ANY CONDUCT OF THE SCHIFF DEFENDANTS.**

### A. THERE HAS BEEN NO VIOLATION OF 15 U.S.C. §1692g BY THE SCHIFF DEFENDANTS.

Mr. Ghawi first claims that defendants violated 15 U.S.C. §1692g because he received a "dunning letter" dated July 9, 2012.  According to plaintiff, this letter was unsigned in violation of the FDCPA, and it violated §1692g because "two other purported Collection attorneys...affirmed that they represented such creditor." *Plaintiff's Memorandum of Law at 3.* Mr. Ghawi further alleges that the Schiff Law Office violated 15 U.S.C. §1692g(b) by pursuing the alleged debt "before it being validated by [Citibank]; as both [Shermeta, Adams & Von Allmen PC] and [Solomon and Solomon] claimed representation of [Citibank]." *Id.* Mr. Ghawi claims that he sent a letter to the Schiff Law Office on July 15, 2011 disputing the debt and requesting validation. *Id.*

15 U.S.C. §1692g provides as follows:

(a) NOTICE OF DEBTS; CONTENTS  Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has

3

paid the debt, send the consumer a written notice containing

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) DISPUTED DEBTS   If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original

### 1.   No Requirement that the Validation Notice Be Signed by the Debt Collector.

There is nothing in this section which requires that the validation notice sent by the Schiff Law Office on July 9, 2011 be signed. *See National Consumer Law Center*, FAIR DEBT COLLECTION (7th Ed. 2011) at §5.7.2, *et. seq.* Mr. Ghawi cites no authority for the claim the failure to sign the validation notice constitutes a violation of the FDCPA.  §1692g(a) specifies that "written notice" be sent to the consumer—as was done in this case.  There is no statutory requirement that the validation notice be signed.  In fact, in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, *412 F.3d 360, 361-62 (2d Cir.2005)*, the consumer received a letter printed on a law firm's

letterhead but with no signature except for the firm's name in the signature block. *Id. at 361.* The consumer filed suit, alleging that the letter violated Sections 1692e(3) and (10) of the FDCPA. *Id. at 362.* The district court dismissed the case under Federal Rule of Civil Procedure 12(c) (motion for judgment on the pleadings), determining as a matter of law that the letter did not violate the FDCPA. *Id.* The Second Circuit affirmed. Id. at 365.

In this case, every validation notice sent by the Schiff Law Office is subject to meaningful review before it is sent out to a consumer. *Affidavit of Christopher T. Moylan at ¶3.* Plaintiff offers no evidence or argument that the information contained in the validation notice was incorrect in any way. Therefore, this letter does constitute a violation of 15 U.S.C. §1692g simply because it was unsigned.

## 2.    No Violation By Citibank's Change in Representation.

Mr. Ghawi next argues that this letter violated the FDCPA because two other attorneys "claimed representation" of Citibank. From the letters produced by Mr. Ghawi, it is clear that Solomon and Solomon wrote to him on December 1, 2010—before this claim was referred to the Schiff Law Offices on June 23, 2011. *See Exhibit F to Plaintiff's Memorandum of Law[3] and Affidavit of Christopher T. Moylan at ¶6.* It further appears that on January 6, 2011 a Michigan law firm named Shermeta, Adams & Von Allmen sent Mr. Ghawi a letter. *See Exhibit G to Plaintiff's Memorandum of Law.* Again, the Shermeta, Adams & Von Allmen letter was sent prior to the Schiff Law Offices' representation of Citibank after June 23, 2011. *Affidavit of*

---

[3] The Schiff defendants specifically object to plaintiff's use of Exhibits F, G and H as hearsay and irrelevant to this case.

*Christopher T. Moylan at ¶6.*

Citibank is entitled to change counsel.  It appears that each law firm properly provided Mr. Ghawi with notice of its representation of Citibank as well as the validation notice required by 15 U.S.C. §1692g.  There is no valid basis for Mr. Ghawi's allegation that Citibank's changes in representation by counsel constitute a violation of any provision of the FDCPA.

**3.      No Violation if Plaintiff Sent Requests or Disputes Sent to Third Parties.**

§1692g(b) is quite clear that the obligation to verify a debt only arises when "the consumer notifies the debt collector in writing..."  The Schiff defendants are not responsible for claims that other law firms or Citibank may have failed to validate the debt before the case was referred to the Schiff Law Office, as asserted by Mr. Ghawi. *Plaintiff's Memorandum of Law at 5.* The obligation does not arise when another alleged "debt collector" is so notified.  If notice of dispute or request for validation is sent to another party, then the debtor collector, the Schiff Law Office, does not have notice and is not therefore obligated to provide validation of the debt.  Moreover, the Schiff defendants were never informed of any prior request by Mr. Ghawi to either of the previous law firms or Citibank to validate this debt. *Affidavit of Christopher T. Moylan at ¶6.* Therefore, there was no obligation for the Schiff defendants to send validation to Mr. Ghawi based upon alleged requests for validation to other law firms or Citibank.

**4.      Plaintiff's Alleged July 15, 2011 Was Never Received by the Schiff Law Office.**

Mr. Ghawi's claim that no validation was sent by the Schiff Law Office before pursuing this debt is also unfounded.  Plaintiff has provided no proof that his July 15, 2011 letter was

sent to the Schiff Law Office and/or received by the Schiff Law Office.[4]   §1692g(a)(3) expressly

states that the consumer must be notified that the debt will be presumed valid unless the

debtor, within 30 days of **receiving** notice that disputes the validity of the debt.  *Sims v. GC*

*Services L.P., 445 F.3d 959, 962 (7th Cir. 2006)*.  Moreover, §1692g(a)(4) expressly states that the

debt collector's obligation to stay efforts to collect the debt and provide validation only arises

"if the debt collector **receives written request** from the debtor within 30 days of receiving the

notice..." *Id. (emphasis supplied)*.  Moreover, 5 U.S.C. §1692g(b) requires that a request for

verification of the debt be made in writing and that the debt collector **receive the notice from**

**the consumer**.  *Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 934 (9th Cir. 2007) (criticized on*

*other grounds); accord Desantis v. Computer Credit, Inc., 269 F.3d 159, 162 (2nd Cir. 2001)("the*

*collector is obligated by the Act to cease collection, pending verification, if is* **receives** *the*

*consumer's written notification of 'dispute"...); and Glowacki v. Law Offices Howard Lee Schiff P.C.,*

*Docket No. 1:13-CV-11306 (RGS)(D. Mass. June 5, 2014)(attached) ("Under the FDCPA, a*

*consumer must file a dispute in writing, within thirty days of receipt of a demand letter to trigger*

*a debt validation process.")*.

   If this Court should hold that the Schiff Law Offices is responsible for failure to validate a

debt this debt despite the fact that *it never received a request for validation* from the consumer,

the result would be that validation would have to be provided in each and every case whether

---

[4] There was no mention of any obligation to validate the debt by Mr. Ghawi prior to April 12, **2012** when the Schiff Law Office received a "Notice of Dispute" from Mr. Ghawi with his Answer to the Complaint in the Superior Court Action.  *See Affidavit of Christopher T. Moylan at ¶4 and Exhibit B attached thereto*.  Curiously, none of Mr. Ghawi's correspondence mention his July 15, 2011 letter.  *See Exhibits D, F, H and J to the Affidavit of Christopher T. Moylan*.

it has been requested or not to avoid potential liability under this statute for an alleged failure to validate the debt. Such a result was not contemplated by the drafters of the FDCPA, and it would be an unprecedented construction of §1692g.

As more fully set forth in the *Affidavit of Christopher T. Moylan at ¶3, 4 and 5*, after the validation notice was sent to Mr. Ghawi on July 9, 2011. Prior to April 2012, no letter disputing this debt or requesting validation had been received by the Schiff Law Office. *Affidavit of Christopher T. Moylan at ¶4.* The Schiff Law Office has a long-standing procedure in place for dealing with all requests for validation upon receipt. *Affidavit of Christopher T. Moylan at ¶5 and Exhibit K attached thereto.* Had any request for validation been received from Mr. Ghawi, it would have been acted upon immediately, and validation of the debt would have been promptly sent to Mr. Ghawi. However, since the firm never received the alleged request for validation, it was not possible for the Schiff Law Office to know that Mr. Ghawi had disputed the debt and/or requested validation.

**5.     The Statute of Limitations Bars Any Claims for Alleged Violations of §1692g.**

Even if we assumed that this letter was sent in violation of the FDCPA, Mr. Ghawi's claims are now barred by the one-year statute of limitations found in 15 U.S.C. §1692k(d)[5] since this action was commenced on January 24, 2013--more than a year after the alleged July 15, 2011 request for validation of the debt and the subsequent alleged failure to validate. *See e.g.,*

---

[5] §1692k(d) provides: "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."

*Derisme v. Hunt Liebert Jacobson P.C., 880 F. Supp. 2d 339, 355-57 (D. Conn. 2012).*

Therefore, Mr. Ghawi's allegations of a violation of 15 U.S.C. §1692g are unsupportable and unfounded.  Summary judgment must be denied as to these allegations, and summary judgment must be entered in favor of the Schiff defendants as to these claims.

### B. THE SCHIFF LAW OFFICE IS NOT REQUIRED TO HOLD A "CONSUMER COLLECTION AGENCY" LICENSE, AND THEREFORE THERE HAS BEEN NO VIOLATION OF 16 U.S.C. §§1692e OR 1692f.

Mr. Ghawi next claims that the Schiff Law Office is required to have a "consumer collection agency" license. *Plaintiff's Memorandum of Law at 4.*  Mr. Ghawi asserts that sending him a letter without such a license is a violation of 15 U.S.C §1692e and 1692f, as well as undisclosed "parallel state law." *Plaintiff's Memorandum of Law at 5.*[6]

15 U.S.C. §1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)  The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

 (2) The false representation of-

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

---

[6]  The Schiff defendants specifically object to plaintiff's Exhibit J as hearsay.  The author is unknown and it does not appear to come from any authority, let alone the Connecticut Department of Banking.  Moreover, the "document" is redacted so that portions are not readable.  Therefore, it has been improperly provided to this Court.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to-

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12)  The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

To the extent that Mr. Ghawi is asserting that there has been a violation of 15 U.S.C. §1692e(2), *see Amended Complaint at ¶33,* no evidence or argument has been provided by plaintiff to support such a claim.  There was no misrepresentation of the amount of the debt due and owing, and there was no misrepresentation as to compensation by the Schiff defendants for their services.

15 U.S.C. §1692f provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated

11

payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if-

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B)there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

Plaintiff has alleged that there was a violation of §1692e(10) as a result of the "use of any false representation or deceptive means to collect or attempt to collect the debt or obtain information. *Amended Complaint at ¶34.* Plaintiff alleges that there was a violation of 15 U.S.C. §1692f(1) because defendants attempted "to collect any amount not authorized by the agreement creating the debt or permitted by law." *Id. at ¶35.*[7]  It is presumed that this

---

[7] Mr. Ghawi has not asserted a claim of violation of §1692f based upon an alleged effort to collect an amount not authorized by the agreement in his Motion for Summary Judgment.  Therefore, it is presumed that this argument is abandoned.  However, in the event that Mr. Ghawi decides to pursue this allegation, defendants reserve the right

allegation is in reference to plaintiff's claim that "HLS....[sent] plaintiff a collection letter even

though they were not licensed to collect as required by Connecticut law...." *Plaintiff's*

*Memorandum of Law at 5.*

There is no requirement for attorneys and/or their law offices be licensed under Conn.

Gen. Stat. §36a-800.  Attorneys are expressly **exempt** from such a requirement under

Connecticut law:

> (2) "Consumer collection agency" means any person (A) engaged as a third party in the business of collecting or receiving for payment for others of any account, bill or other indebtedness from a consumer debtor, (B) engaged directly or indirectly in the business of collecting any account, bill or other indebtedness from a consumer debtor for such person's own account if the indebtedness was acquired from another person and if the indebtedness was either delinquent or in default at the time it was acquired, or (C) engaged in the business of collecting or receiving for payment property tax from a property tax debtor on behalf of a municipality, including any person who, by any device, subterfuge or pretense, makes a pretended purchase or takes a pretended assignment of accounts from any other person or municipality of such indebtedness for the purpose of evading the provisions of sections 36a-800 to 36a-810, inclusive, as amended by this act. It includes persons who furnish collection systems carrying a name which simulates the name of a consumer collection agency and who supply forms or form letters to be used by the creditor, even though such forms direct the consumer debtor or property tax debtor to make payments directly to the creditor rather than to such fictitious agency. "Consumer collection agency" further includes any person who, in attempting to collect or in collecting such person's own accounts or claims from a consumer debtor, uses a fictitious name or any name other than such person's own name which would indicate to the consumer debtor that a third person is collecting or attempting to collect such account or claim. **"Consumer collection agency" does not include** (i) an individual employed on the staff of a licensed consumer collection agency, or by a creditor who is exempt from licensing, when attempting to collect on behalf of such consumer collection agency, (ii) persons not primarily engaged in the collection of debts from consumer debtors who receive funds in escrow for subsequent distribution to others, including, but not limited to, real estate brokers and lenders holding funds of borrowers for payment of taxes or insurance, (iii) any public officer or a person acting under the order of any court, **(iv) any member of the bar of this state**, (v) a person

---

to address this issue in a subsequent brief.

who services loans or accounts for the owners thereof when the arrangement includes, in addition to requesting payment from delinquent consumer debtors, the providing of other services such as receipt of payment, accounting, recordkeeping, data processing services and remitting, for loans or accounts which are current as well as those which are delinquent, (vi) a bank or out-of-state bank, as defined in section 36a-2, and (vii) a subsidiary or affiliate of a bank or out-of-state bank, provided such affiliate or subsidiary is not primarily engaged in the business of purchasing and collecting upon delinquent debt, other than delinquent debt secured by real property. Any person not included in the definition contained in this subdivision is, for purposes of sections 36a-645 to 36a-647, inclusive, a "creditor", as defined in section 36a-645.

Conn. Gen. Stat. §36a-800(2) (emphasis supplied).  Indeed, the Connecticut Department of

Banking specifies on its website that the following are not required to hold a Consumer

Collection Agency license:

### Who does not need a license?

1. An individual employed on the staff of a licensed consumer collection agency, or by a creditor who is exempt from licensing, when attempting to collect on behalf of such consumer collection agency.

2. Persons not primarily engaged in the collection of debts from consumer debtors who receive funds in escrow for subsequent distribution to others, including, but not limited to real estate brokers and lenders holding funds of borrowers for payment of taxes or insurance.

3. Any public officer or a person acting under the order of any court.

4. Any member of the bar of this state.

5. A person who services loans or accounts for the owners thereof when the arrangement includes, in addition to requesting payment from delinquent consumer debtors, the providing of other services such as receipt of payment, accounting, record-keeping, data processing services and remitting, for loans or accounts which are current as well as those which are delinquent.

6. A bank or out-of-state bank, as defined in section 36a-2.

    A subsidiary or affiliate of a bank or out-of-state bank, to the extent such affiliate or

    subsidiary is not primarily engaged in the business of purchasing and collecting upon

    delinquent debts not secured by real property.

*See attached* **Exhibit 3.**  There nothing which requires a law firm to hold a Consumer Collection

Agency license in Connecticut.

14

"[I]t is settled law that a corporation cannot practice law . . . And this is true even though it acts through attorneys who are themselves members of the bar." *Grievance Committee v. Dacey, 154 Conn. 129, 133 n.2 (1966) (citations omitted)*.  Therefore, if the attorneys are not required to hold a consumer collection agency license, then a holding that the law firm hold such a license would completely vitiate the exemption and undermine the statute.

The present case is clearly distinguishable from *Persels and Assoc., LLC v. State Department of Banking, Docket No. CV 12 6017849S, Judicial District of New Britain (Prescott, J.; March 28, 2014),* which is presently pending on appeal before the Connecticut Supreme Court. *Persels* involved the requirement of an out of state law firm to hold a Connecticut Debt Adjustors license.  Persels was an out of state law firm not subject to *any* regulatory powers of the Judicial Branch.  It was contacting consumers in Connecticut for purposes of assisting them in debt consolidation.  The clear concern was the Persels or other law firms could not be subject to regulation by any entity in Connecticut because it was not required to be a member of the Connecticut Bar.  Therefore, absent a debt adjuster license in Connecticut, there would be no ability to regulate its activities.

In this case, the Schiff Law Office and its attorneys are subject to regulatory powers of the Connecticut Judicial Branch, unlike Persels.   Therefore, there is no reason to require an in-state law firm to obtain an additional license as a Consumer Collection Agency when the firm is clearly regulated.

"Not all courts have adopted a categorical rule that an FDCPA violation occurs whenever

15

an unlicensed debt collector sends out any debt collection notice, and instead some have looked to the content of the notice." *Goins v. JBC & Associates, P.C., 352 F. Supp. 2d 262, 271 (D. Conn. 2005)(finding violation because letter threatened to take legal action which could not be legally taken).* "[I]n Wade v. Regional Credit Association, 87 F.3d 1098 (9th Cir.1996), the Ninth Circuit found that the defendant's unlicensed debt collection activity was not a 'threat to take action that could not legally be taken' in violation of FDCPA § 1692e(5). *Id.* Where the body of the notice is "informational" and "not threatening," the notice "could not be characterized as threatening to take specific action, the court found no FDCPA violation." *Goins at 271, citing Wade v. Regional Credit Association, supra, at 87 F.3d at1099 and Ferguson v. Credit Management Control, Inc., 140 F.Supp.2d 1293, 1302 (M.D.Fla.2001) (debt collection agency did not hold itself out as a licensed debt collector and did not threaten to take legal action if the plaintiff did not respond to the notice).* Where the only language in the notice is that required by the FDCPA, the notice does not violate the FDCPA. The least sophisticated consumer could construe the notice as a "prudential reminder, not as a threat to take action." *Goins at 271, citing Wade v. Regional Credit Association, 87 F.3d at 1100.*

In this case, the validation notice sent by the Schiff Law Office contains no threat to take any action, and specifically, no threat of suit against Mr. Ghawi. The notice is purely informational, and consists of the language required under the FDCPA as required by 15 U.S.C. §1692g. *See Exhibit E to Plaintiff's Memorandum of Law and Exhibit A to the Affidavit of Christopher T. Moylan.*

Thus, it is clear that there could be no violations of either §1692e or §1692f based upon plaintiff's claim that defendants allegedly failed to hold a consumer collection agency license.

**C.     THE SCHIFF LAW OFFICE WAS COUNSEL TO CITIBANK IN THE SUPERIOR COURT ACTION AGAINST PLAINTIFF AND DID NOTHING TO "CONCEAL" CITIBANK FROM HIM.**

Mr. Ghawi complains that he "has not once been able to communicate with [Citibank] since [the Schiff Law Office] became legal counsel to such alleged creditor; even though, in pleadings and proceedings he has requested to be able to question to accuser." *Plaintiff's Memorandum at 4.* It is unclear from Mr. Ghawi's argument what if any laws he claims were violated because he was unable to speak directly to Citibank. However, Mr. Ghawi has no basis for suggesting that the Schiff Law Office's representation of Citibank is illegal or improper in any way. Mr. Ghawi never noticed a deposition of a representative from Citibank where he might have discussed his case with Citibank directly. Nor was there ever any hearing which required Citibank's representative to be present and to testify in Court. *Affidavit of Christopher T. Moylan at ¶8.* There was never an occasion for Citibank to "testify" in the Superior Court Action.

Citibank has a right to refuse to speak to an adversary when it is actively represented by counsel in litigation. It is a standard practice of many clients to defer to outside counsel, and not accept calls from an adversary.

There is no basis for any allegation of wrongdoing with respect to the Schiff Law Office's representation of Citibank.

17

### D. PLAINTIFF FALSELY CLAIMS THAT THE SCHIFF LAW OFFICE DID NOT IDENTIFY ITSELF WHEN CALLING HIM ABOUT HIS CITIBANK DEBT IN VIOLATION OF 15 U.S.C. §1692d(6) OR THAT THE SCHIFF DEFENDANTS CALLED HIM AT INCONVENIENT TIMES IN VIOLATION OF 15 U.S.C. §1692c(a)(1).

Plaintiff next argues that calls placed by the Schiff Law Office were made without caller

identification and were not complete in violation of 15 U.S.C. §1692d(6).[8] This allegation is

false. Each and every call made to Mr. Ghawi included the following message if he did not

answer the phone:

> *This message is for Nabil Ghawi if you are not Nabil Ghawi, please hang up now.*
>
> *5 Second Pause*
>
> *This is "collector name" from the Law Offices Howard Lee Schiff P.C, attorney's in the practice of debt collection. It is important that you return our call at "phone #". When*

---

[8]   15 U.S.C. §1692d provides:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) 1 of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

*returning the call please refer to CN# V81812. Again the phone number to return the call is "phone #". [9]*

*See Affidavit of Christopher T. Moylan at ¶9.* This constitutes "meaningful disclosure" of the caller's identification. The calls recorded to Mr. Ghawi all contain the same or similar statement, and clearly disclose the name of the person calling and that the person is calling from the Schiff Law Office. If Mr. Ghawi disconnected the call before the message was completed, he would not receive the entire information which is given as a standard practice firm wide and when calls are made using the automatic dialer.

Plaintiff further claims that the Schiff Law Office's caller identification was inaccurate. This again is untrue. The Schiff Law Office specifically identifies itself as "Law Off Schiff." *See Affidavit of Jennifer Hayes, Account Manager of Tele-Consults Associates, Inc., filed herewith.* It appears that Mr. Ghawi's own telephone carrier puts "Telemarketer" on incoming calls from the Schiff Law Office, and therefore, it is not the defendants who are responsible for any alleged misidentification of its calls to Mr. Ghawi. This allegation is improper and unfounded.

Plaintiff's allegation that the Schiff Law Office violated 15 U.S.C. §1692c(a)(1)[10] are also

---

[9]  The "phone #" stated would be Schiff Law Office telephone number.

[10]  15 U.S. C. §1692c(a) provides:

COMMUNICATION WITH THE CONSUMER GENERALLY

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt-

(1)  at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9

unfounded. In response to Interrogatory No. 3, **Exhibit 4A**, Mr. Ghawi admits that he "does not recollect very instance in which I requested calls stop. I do remember that I informed HLS et al that they were calling my cell phone. The calls were always inconvenient as they distracted me from my work..."

No calls were made to Mr. Ghawi before 8:00 a.m. or after 9:00 p.m. *Affidavit of Christopher T. Moylan at ¶13.* If calls were subjectively inconvenient for Mr. Ghawi, he failed to indicate the same and request that he not be called or be called later. *Id.* The Schiff defendants cannot be held responsible for the plaintiff's failure to communicate. 15 U.S.C. §1692c(a)(1).

Moreover, Mr. Ghawi did not request that calls cease until August 10, 2012. Prior to that time, he failed to make any request that calls cease. In fact, he requested and instructed that our assistant call him at 203 531 5122, and informed her that he was having his calls to that number transferred to his cell phone. On August 10, 2012 when he requested that call cease, his request was honored with the exception of calls which were required by the Court for short calendar markings, discovery conferences, and the like. *Affidavit of Christopher T. Moylan at ¶11.*

---

o'clock postmeridian, local time at the consumer's location;

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or

(3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

**E. EVEN IF WE ASSUME THAT THE SCHIFF DEFENDANTS HAVE VIOLATED ANY PROVISION OF THE FDCPA, THERE IS NO EVIDENCE THAT ANY CONDUCT BY THE SCHIFF DEFENDANTS WAS INTENTIONAL AND THE VIOLATION WAS AS A RESULT OF A BONA FIDE ERROR.**

15 U.S.C. §1692k(c) provides, "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was **not intentional** and **resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.**"

"As used in the Act 'bona fide' means that the error resulting in a violation was 'made in good faith; a genuine mistake, as opposed to a contrived mistake.'" *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 538 (7th Cir.2005); *see also Black's Law Dictionary 186 (8th ed.2004) (defining "bona fide" as "1. Made in good faith; without fraud or deceit" and "2. Sincere; genuine"); Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1246 (11th Cir.2008). To be considered a bona fide error, the debt collector's mistake must be objectively reasonable. *Johnson*, 443 F.3d at 729 (" [I]n effect, [the bona fide] component serves to impose an objective standard of reasonableness upon the asserted unintentional violation")" *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir.2006).

Plaintiff has failed to establish that any conduct by the Schiff Law Office or its employees was intentional in any way.   In is clear that any errors which may have occurred were made in good faith without fraud or deceit.  Moreover, it is clear that the firm maintains procedures which are reasonably adapted to avoid such errors, and therefore, if there was a violation, it

21

was as a result of a bona fide error.


## II.   PLAINTIFF HAS FAILED TO ESTABLISH THAT THE TELEPHONE CONSUMER PROTECTION ACT HAS ANY APPLICATION IN THIS CASE.

Mr. Ghawi proclaims that there have been violations of the TCPA by defendants.[11]  What Mr. Ghawi fails to disclose is that at *no* time were any calls made by defendants to Mr. Ghawi's *cell phone*.  *See Plaintiff's Responses to Defendants' Interrogatory 3(a), 4, 6 and 12; and Requests for Production 5 and 6 (attached as Exhibit 4 and Exhibit 4A).*[12]  Indeed, in response to discovery, plaintiff disclosed his cell phone numbers, and none of the numbers he listed were ever called by the Schiff Law Offices at any time.  *Id. at Response to Interrogatory 12.*   Moreover, there are no allegations or claims that Mr. Ghawi was charged for any of the calls which were made by defendants.

Plaintiff asserts that he was called on an "800" number.  *See page 3 of plaintiff's Exhibit L.* The 800 number was never called by the Schiff defendants.  There is no record of any calls by

---

[11]  The Schiff defendants object to plaintiff's Exhibit L which purports to be a listing of "Incoming Calls from HLS." It is not known how this document was prepared or who prepared it.  It appears to have several inaccuracies.  *See Affidavit of Christopher T. Moylan at ¶10.*  Further, there are unexplained statements on this document such as "45 calls   on CD," "15 calls from notes," and "3 Incoming calls to my 800-474 4294 that I pay for per minute on excel spreadsheet."  Similarly, the Schiff defendants object to plaintiff's Exhibit N as hearsay.  There is no disclosure of where this document came from and/or how it was produced.

[12]  It should be noted that Mr. Ghawi was asked in Request for Admission 13 to admit that the telephone number called by defendants, 203 531 5122 is a land line or a non-cell phone number.  *See Exhibit 4.*  Mr. Ghawi's failed to respond to this Request for Admission when he initially answered defendants' discovery.  *Id.*  Mr. Ghawi's original responses did not include the Requests for Admissions, Interrogatories and Requests for Production which were posed by defendants.  Therefore, defendants have attached **Exhibit 4A** which combines the questions and Mr. Ghawi's answers for the Court's convenience.

In his supplemental responses served on May 24, 2015, Mr. Ghawi gives the evasive response: "The MSJ addresses above in great detail." **Exhibit 5.**  If indeed it were so clear that number is a cell phone number, plaintiff

the Schiff Law Office to this number on plaintiff's own Exhibit L, and there is no record of any

calls by the Schiff Law Office to this 800 number. *Affidavit of Christopher T. Moylan at ¶13.*

The TCPA 47 U.S.C. §227(b)(1) expressly prohibits telephone calls to *cellular telephones:*

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice

(i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);

(ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

(iii) to any telephone number assigned to a paging service, **cellular telephone service,** specialized mobile radio service, or other radio common carrier service, or any service **for which the called party is charged for the call.**

(emphasis supplied).

Mr. Ghawi admits that the telephone number is not a cell phone number, and at his

direction, calls made to this number are directed to his cell phone. *See Response to*

*Interrogatories Nos. 4 and 6,* **Exhibit 4.** Therefore, it was not the Schiff defendants who called

plaintiff's cell phone, but Mr. Ghawi who forwarded the calls, and at his direction, calls to his

land line were sent to his cell phone for his convenience.

The TCPA further restricts automated dialer calls to residential phone number:

(B) to initiate any telephone call to any **residential** telephone line using an artificial or

would have no difficulty at all denying this Request for Admission.

prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B);

However, Mr. Ghawi alleges in his Amended Complaint that the telephone number which was called by defendants was a **business** telephone number. *Amended Complaint at ¶39 ["That number is reserved for his business and cell phone."].*

In fact, Mr. Ghawi expressly consented to calls being made to 203 521 2155 by defendants not only while speaking to Schiff Law Office employees but also by filing an Appearance in the Superior Court Action and providing his cell phone number for use in connection with the litigation. *Affidavit of Christopher T. Moylan at ¶s 11 and 14 and* **Exhibit 6.** Such an Appearance constitutes consent to telephone calls being made to a party at the number given. Moreover, even if Mr. Ghawi had revoked his consent to calls, defendants would have immediately ceased making any calls to this number, as it did on and after August 12, 2012. *Affidavit of Christopher T. Moylan at ¶s 11 and 14.*

Based upon the foregoing, there are no facts to support any claim of a violation of the TCPA by defendants.


**III.      THERE IS NO BASIS FOR A RECOVERY UNDER UDAP ALLEGED IN THE PLAINTIFF'S AMENDED COMPLAINT; IF HE IS REFERRING TO HIS CUTPA CLAIM, THERE IS NO BASIS FOR ANY ALLEGED CLAIM OF A VIOLATION OF CUTPA.**

Mr. Ghawi claims that he has a right to recover attorney's fees under the "state UDAP statute." *Plaintiff's Memorandum of Law at 28.* However, there are no alleged violations of a

state UDAP statute in his Amended Complaint.  Moreover, Mr. Ghawi is not an attorney, and therefore, he would have no right to recover attorney's fees in this case.  Further, if there is no violation of the TCPA, there is no right to recover fees.

If Mr. Ghawi is referring to his CUTPA claim, then there are no valid claims here.  All of the prior allegations in the Amended Complaint were incorporated into the Sixth Cause of Action "Violation of Connecticut Unfair Trade Practices Act (C.U.P.T.A.)."  *Amended Complaint at 13*.  There are no additional grounds for alleged violation of CUTPA which are included in the Amended Complaint.  Mr. Ghawi merely alleges, "Continued attempts to collect the debt were unfair, unlawful, immoral, and oppressive and have caused substantial injury to the plaintiff."  *Id. at 14, ¶78*.  However, no facts are alleged other than the incorporated paragraphs to support these conclusory allegations.

This is a derivative claim.  Because there have been no violations of the FDCPA or the TCPA, there can be no violation of CUTPA.  Therefore, defendants are entitled to summary judgment as to the Sixth Count of the Amended Complaint.

## IV.   SUMMARY JUDGMENT MUST BE DENIED AS TO PLAINTIFF; HOWEVER, THE SCHIFF DEFENDANTS ARE CLEARLY ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits...show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c).  When moving for summary judgment against a party who will bear the burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim.  *See Celotex Corp. v. Catrett , 477 U.S. 317, 322-23 (1986)* ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.")  "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  See also Ellis v. Solomon & Solomon, 599 F. Supp. 2d 298, 300-01 (D.Conn. 2009); Goins v. JBC Associates, P.C., 352 F. Supp. 2d 262, 265-66 (D. Conn. 2005).*

When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts... must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-588 (1986).* However, "[w]hen a motion for summary judgment is made and supported as provided in [the Federal Rules], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading." Fed. R. Civ. P. 56(e).  Instead, the party opposing summary judgment must set forth the specific facts in affidavit or other permissible evidentiary form that demonstrate a genuine issue for trial. *See id.*

Plaintiff has failed to demonstrate that he is entitled to judgment as a matter of law with

respect to the FDCPA and TCPA claims alleged in the Amended Complaint.  No sworn affidavit was provided by Mr. Ghawi in support of his Motion for Summary Judgment, and many of the exhibits which he provided in support of his Motion are inadmissible hearsay or otherwise improper.  Therefore, the Motion is not supported by anything other than bald allegations. Indeed, plaintiff's is completely lacking in specific allegations directed at the individual employees in his Amended Complaint, and even in his Motion for Summary Judgment, he fails to demonstrate that any one of the individual employees violated any law.[13]  The Schiff defendants, however, have demonstrated that they are entitled to summary judgment because there are not material issues of fact in this case, and defendants are clearly entitled to judgment as a matter of law.

## CONCLUSION

The Schiff defendants ask that this Court deny plaintiff's Motion for Summary Judgment, and that their Motion for Summary Judgment be granted.

DEFENDANTS, LAW OFFICES HOWARD LEE SCHIFF P.C., JEANINE M. DUMONT, HEATH A. TIBERIO, REBECCA JADACH AND QUANESHIA DAILEY-THOMPSON

Jeanine M. Dumont ct 05021

---

[13] It is clear that Mr. Ghawi simply named as a defendant anyone employee who dealt with him on this case without having any good faith basis for naming the employees as defendants.  Specifically, Mr. Ghawi has completely failed to demonstrate how Attorney Tiberio or Attorney Jadach personally violated the FDCPA.  Thus, Mr. Ghawi's intention was to harass and embarrass these individuals.

Law Offices Howard Lee Schiff PC
Its Attorneys
510 Tolland Street
East Hartford, CT  06108
Telephone (860) 528 9991
Fax (860) 528 7602

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing and any attachments hereto were mailed, postage prepaid, on JUNE 8, 2015 to the following:

**PLAINTIFF**
NABIL GHAWI
14 HAWTHORNE STREET S APT B
GREENWICH, CT  06831

**DEFENDANT, CITIBANK N.A.**
Tara Lynn Trifon, Attorney at Law
Locke Lord LLP - CT
20 Church St., 20th Floor
Hartford, CT 06103

Jeanine M. Dumont

## THIS COMMUNICATION IS FROM A DEBT COLLECTOR.

Glowacki v. Law Offices of Howard Lee Schiff, P.C, 060514 MADC, 1:13-cv-11306-RGS

**ELLEN GLOWACKI**

**v.**

**LAW OFFICES OF HOWARD LEE SCHIFF, P.C**

**Civil Action No. 1:13-cv-11306-RGS**

**United States District Court, D. Massachusetts.**

**June 5, 2014**

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

RICHARD G. STEARNS, District Judge.

Plaintiff Ellen Glowacki alleges that the Law Office of Howard Lee Schiff, P.C. (Schiff) violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, by engaging in "oppressive, " "deceptive, " and "unfair" collection practices. Before the court are the parties' cross-motions for summary judgment.

BACKGROUND

Glowacki is a resident of Nantucket, Massachusetts. Schiff is a law firm incorporated in the State of Connecticut with its principal place of business in East Hartford, Connecticut. Schiff maintains regional offices in Massachusetts, Rhode Island, Maine, and Vermont.

On October 1, 1984, Glowacki opened a credit card account with Citibank, N.A. (Citibank). Citibank retained Schiff to recover what it believed to be a balance of $15, 179.84 owing on the account. On April 6, 2013, Schiff sent Glowacki a demand letter. On April 25, 2012, Glowacki disputed the debt in a letter to Schiff. Glowacki asked for an explanation of the debt, its calculation, a breakdown of the interest charged, the fees and costs, and the alleged debtor's name, address, and telephone number.[1] On November 9, 2012, Schiff responded with copies of monthly billing statements listing Glowacki's name and address. Schiff's letter stated in part:

We suggest that you send us a check or money order for the balance due payable to "Citibank, N.A." unless you intend to exercise your rights as stated in the Validation Notice below. All questions and payments should be directed to this office....VALIDATION NOTICEIf you do not dispute the validity of the debt, or any portion thereof, within 30 days of the receipt of this letter, we will assume it is valid. If you dispute the validity of this debt or any portion thereof, in writing within 30 days of receipt of this letter, we will obtain and mail you verification of the debt or a copy of a judgment against you. At your request, in writing within 30 days of receipt of this letter, we will provide you with the name and address of the original creditor, if different from the current creditor....Respectfully, Law offices Howard Lee Schiff, P.C.

Def.'s Ex. F.

After receiving no response from Glowacki, on November 23, 2012, Schiff brought suit on behalf of Citibank against Glowacki in the Nantucket District Court. On April 29, 2013, while the Citibank case was pending, Glowacki brought a separate suit in the state court against Schiff, alleging violations of the FDCPA and the Massachusetts Consumer Protection Act.[2] On May 30, 2013, Schiff removed the lawsuit to this court. After the expiration of fact discovery, on March 14, 2014, Schiff moved for summary judgment. On April 1, 2014, Glowacki filed an opposition and a crossmotion for summary judgment. The parties' briefing is now complete.

DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." *Rogers v. Fair,* 902 F.2d 140, 143 (1st Cir. 1990). The nonmoving party "must adduce specific, provable facts demonstrating that there is a triable issue." *Id.,* quoting *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir. 1989). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986) (emphases in original).

The FDCPA

Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The term "debt collector" applies to any person "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The effect of these broad statutory prohibitions is to regulate all forms of "communications" with borrowers. *In re Hart,* 246 B.R. 709, 729 (Bankr. D. Mass. 2000); *see also* 15 U.S.C. § 1692a(2).

The following practices, among others, violate the FDCPA.
(2) The false representation of -(A) the character, amount or legal status of any debt; or(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt....(5) The threat to take any action that cannot legally be taken or that is not intended to be taken....(10) The use of any false representation or deceptive means to collect or attempt to collect any debt.
15 U.S.C. § 1692e.

Section 1692f(1) of the FDCPA also makes it unlawful to "use unfair or unconscionable means to collect or attempt to collect any debt, " including "[t]he collection of any amount (including any interest, fee, charge, or expenses incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." The FDCPA is a strict liability statute that is to be construed liberally so as to effectuate its remedial purpose. *See Russell v. Equifax A.R.S.,* 74 F.3d 30, 33 (2d Cir. 1996); *In re Hart,* 246 B.R. at 729. Whether the debt is legitimately owed also has no bearing on the validity of the action. *Id.* at 777.

"When considering whether a particular collection notice violates the FDCPA, courts usually look to whether the objective least sophisticated debtor' would find the notice improperly threatening or misleading." *Martin v. Sands,* 62 F.Supp.2d 196, 199 (D. Mass. 1999), citing *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir. 1993) (the "least sophisticated debtor standard has... been adopted by all federal appellate courts that have considered the issue.'"). The "least sophisticated consumer" test is an objective standard that "pays no attention to the circumstances

of the particular debtor in question...." *Easterling v. Collecto, Inc.,* 692 F.3d 229, 234 (2d Cir. 2012).

Glowacki contends that Schiff's April 6, 2012 collection letter violated the FDCPA "because it contained intentional (and negligent[]) misrepresentations and was deceptive, unclear, and confusing." Pl.'s Opp'n at 10. Glowacki also alleges the letter, among other things, failed to identify the legal basis under which Schiff was entitled to bring a debt collection action in the Massachusetts courts.

Schiff first argues that Glowacki's Complaint fails as a matter of law because she does not allege that "the debt at issue [arose] out of an alleged transaction which was primarily for personal, family, or household purposes and falls within the definition of debt for purposes of 15 U.S.C. § 1692a(5) as required by the statute." Def.'s Br. at 4. The credit card statements at issue are, however, part of the summary judgment record, *see* Def.'s Ex.'s H1-H3, and they show numerous charges for what could only fairly be regarded as personal and household expenses, including consumer merchandise, meals, and furniture. *See* Def.'s Ex.'s H1-H3.

Turning to the more substantive issue, Glowacki claims that Schiff's April 6, 2012 demand letter violated section 1692e because it failed to identify the source of Schiff's ability to file a collection action in Massachusetts, [3] and (curiously) that the letter, by only "suggesting" instead of "demanding" payment, misled Glowacki into disputing the debt. Compl. ¶ 40(a).[4]

Glowacki has presented no evidence of behavior by Schiff that, even by an objective standard, could be characterized as oppressive, deceptive, or abusive. The Schiff letterhead itself belies Glowacki's description. It clearly lists the locations of Schiff's six regional offices, including the one in Auburn, Massachusetts.[5] There is simply nothing about the letterhead that could possibly lead even the most unsophisticated of consumers into the belief that Schiff as a law firm had no ability to file a lawsuit in Massachusetts.[6]

Nor is possible that the least sophisticated of consumers would have reasonably interpreted the "suggestion" that the debt be paid as an admission that the debt was not valid and as an invitation to the putative debtor to resist collection. In the first instance, section 1692d "does not preclude debt collectors from making non-abusive statements designed to encourage voluntary payment, " as Schiff politely did here. It prohibits "only oppressive and outrageous conduct." *Bieber v. Associated Collection Servs., Inc.,* 631 F.Supp. 1410, 1417 (D. Kan. 1986). In the second instance, the least sophisticated consumer test does not extend protection to "every bizarre or idiosyncratic interpretation of a collection notice' and courts should apply the standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices.'" *Easterling,* 692 F.3d at 234, quoting *Russell,* 74 F.3d at 33. The court sees no deceitful or oppressive conduct on Schiff's part.

Next, Glowacki contends that Schiff failed to timely respond to Glowacki's April 25, 2012 debt validation request. Particularly, Glowacki asserts that Schiff should have provided responses to each and every one of Glowacki's inquiries, *see* fn.1, *supra,* or provide explanations as to why it was unable to do so. Under the FDCPA, a consumer must file a dispute *in writing,* within thirty days of receipt of a demand letter to trigger a debt validation process. *See* 15 U.S.C. § 1692g(b). "Once a consumer exercises this right, a debt collector must cease all further debt collection

activity until it complies with various verification obligations." *Brady v. Credit Recovery Co., Inc.,* 160 F.3d 64, 67 (1st Cir. 1998), citing 15 U.S.C. § 1692g(b). The FDCPA does not define what constitutes proper debt verification, nor has the First Circuit specifically addressed the specific quantum of verification under the FDCPA.[7] *Poulin v. The Thomas Agency,* 760 F.Supp.2d 151, 159 (D. Me. 2011).

Nevertheless, other circuit courts have uniformly held that this provision of the FDCPA is not intended to give a debtor a detailed accounting of the debt to be collected. Instead, "[c]onsistent with the legislative history, verification is only intended to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Chaudhry v. Gallerizzo,* 174 F.3d 394, 406 (4th Cir. 1999), (citation and internal punctuation omitted); s *ee also Dunham v. Portfolio Recovery Assocs., LLC,* 663 F.3d 997, 1003 (8th Cir. 2011). In *Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162 (9th Cir. 2006), the Ninth Circuit adopted the standard as articulated by the Fourth Circuit, holding that "[a]t the minimum, verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed."'

*Id.* at 1173-1174, quoting *Chaudhry,* 174 F.3d at 406. Therefore, to sufficiently validate a debt, the debt collector need only demonstrate that the creditor has provided some evidence that the debtor owes the specific amount demanded. Here, the credit card statements provided by Schiff indicating the delinquent balance serve that purpose.[8]

Simply put, in relation to the FDCPA, there is no evidence that Schiff acted unreasonably in its collection activities. Schiff is entitled to summary judgment on Count I (the FDCPA claim).

For the foregoing reasons, Schiff's motion for summary judgment on the FDCPA claim is ALLOWED with prejudice. The remaining claims are REMANDED to the state court for resolution. [9] The Clerk will enter judgment for Schiff on the FDCPA claim and remand the case file to the state court.

SO ORDERED.

--------

Notes:

[1] Glowacki's letter requested:

1. An explanation of what the money you say is owed is for; 2. Explain and show how you calculated what is alleged to be owed including a complete and detailed breakdown of any and all interest, fees and costs so that the account is accurate to the penny; 3. Identify the original creditor by name, address and phone number; 4. Identify the name of any securitized transaction that the account has been sold into; 5. Identify the servicer by name, address and phone number of any securitized transaction that the account has been sold into; 6. Provide all executed documents evidencing the securitization of the account receivables or the default fees and costs; 7. Provide evidence that any applicable statute of limitations has not expired on this account; 8. If applicable, provide evidence that you are licensed to collect debts in Massachusetts; and 9. Provide the name and address of your Registered Agent.

Def.'s Ex. G.

[2] Glowacki avers that Schiff's April 6th collection letter references a "Citi AAdvantage World

Mastercard" account, yet it provided credit card statements as part of its verification for "Citi Driver's Edge Card" and "Citi Driver's Edge Charter World. Compl. ¶ 25. Def.'s Ex.'s H1-H2. However, the last four digits of the account number for the "Citi Driver's Edge Charter World Mastercard" are the same as those of the "Citi AAdvantage World Mastercard." Glowacki does not deny having owned a "Citi Driver's Edge Card" or a "Citi Driver's Edge Charter World MasterCard."

[3] Additionally, Glowacki argues that the mailing address of East Hartford, Connecticut on Schiff's letterhead misled her as to whether or not Schiff was authorized to practice law in Massachusetts, and that Schiff failed to disclose any affiliated law firm in Massachusetts. Glowacki notes that Schiff's collection letter did not list the name, address, or phone number of Schiff's Massachusetts office, or the name, address, or phone number of any Massachusetts-licensed attorney. Compl. ¶ 31-35.

[4] The balance of the Complaint simply recites practices identified in the FDCPA as harassing, oppressive, or abusive without any particular reference to Schiff's demand letter.

[5] Glowacki also alleges that the failure of a specifically named attorney to personally sign the April 6th letter constituted an unfair and deceptive practice. Compl. ¶ 11. The letter did list the law firm's name, which includes the name of its principal, the "Law Offices of Howard Lee Schiff, P.C., " as well as the firm's address, telephone, and facsimile numbers. Nothing in the case law or the FDCPA itself requires that the name of a specific attorney appear on a collection letter sent by a law firm to a debtor.

[6] While not immediately relevant, Schiff offers evidence that ten of its attorney-employees are licensed to practice law in Massachusetts. Def.'s Ex. B.

[7] Section 1692g(b) provides:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. 15 U.S.C. § 1692g(b).

[8] Glowacki concedes in her brief that the FDCPA does not establish a time frame in which a debt collector must respond to a validation request. The statute only requires that a debtor collector cease all collection activity until the request is satisfied. There is no evidence that Schiff did not satisfy this requirement.

[9] When a court dismisses the foundational federal claims, the balance of competing factors ordinarily will favor declining jurisdiction over the pendent state law claims. *Camelio v. Am. Fed'n,* 137 F.3d 666, 672 (1st Cir. 1998).

---------

V81812

STATE OF CONNECTICUT

D.N. FST CV 12 6013516     SUPERIOR COURT    :SUPERIOR COURT
                          STAMFORD - NORWALK
CITIBANK, N.A.            JUDICIAL DISTRICT    :STAMFORD/NORWALK JUDICIAL
                                              DISTRICT AT STAMFORD
     VS                   2013 FEB -5 P 2: 14

NABIL GHAWI                                   :FEBRUARY 5, 2013

### MEMORANDUM OF DECISION
### RE: MOTION FOR SUMMARY JUDGMENT (111.00)

The plaintiff Citibank sues to collect an allegedly delinquent credit card debt from the

defendant Nabil Ghawi in the amount of $14,774.19.  Ghawi, representing himself, answered the

complaint, denying all allegations of credit account default, and claims of an account stated, and

demanding "strict and authenticated proof thereof."  Ghawi also served discovery requests and

requests to admit.

Citibank served discovery requests on Ghawi, including requests to admit.  Ghawi moved

for an extension of time to July 18, 2012 to respond to Citibank's discovery.  He was granted a

further extension to September 18, 2012 by order of Judge Mottolese on July 30, 2012.  In the

meantime, Citibank, on July 26, 2012 made this motion for summary judgment relying on an

affidavit and attached account statements and on the failure to respond to its requests to admit.

Ghawi moved on August 3, 2012 for an extension of time to respond to the summary judgment

motion; this motion was presumably granted pursuant to Practice Book § 17-14.  A second Ghawi

# *EXHIBIT 1*

motion for extension of time was made on September 21, 2012 and denied on September 27, 2012.

Citibank responded to Ghawi's first discovery request on May 21, 2012 and certified that it had responded to a second set of requests on September 17, 2012. In its first response, Citibank objected to most requests, but notwithstanding, provided many substantive answers, and in a subsequent filing has stated it provided Ghawi with close to 300 pages of documents.

In its affidavit supporting summary judgment, Citibank attaches monthly account statements of the Ghawi account since November 2008. These statements were addressed to the address Ghawi presently uses. Until July 2009 Ghawi made the minimum monthly payments, and his debt was reduced to the low $6,000's. In July 2009 a transfer of balance due was made to this account of $8,500.00, and with other finance charges the balance due grew to $14,499.45. Ghawi continued to make the now larger minimum monthly payments through December 2009, but also made another balance transfer to his account of $700.00. In 2010, it appears that at least one of the low interest rate programs offered by Citibank expired, and that Ghawi failed to make the minimum monthly payment on one or more occasions. In the October 6, 2010 statement the balance due was $14,378.90, the minimum monthly payment was $1,321.09, and higher interest rates and late payments fees kicked in. In November, 2010 the Ghawi account was closed and the full amount then due was $14,773.19.

From the outset Ghawi has disputed at least a portion of the debt, requested "verification" of the debt, proof that Citibank owns the debt, "validation" of the debt, and a history of the charges and payments. Dkt. Entry 104.00. He has also challenged the right of Citibank's counsel to prosecute the action. Dkt. Entry 115.00.

To date, the record reflects that Ghawi has not responded to the initial requests to admit

2

served on him.  Pursuant to Practice Book § 13-23(a), the matters sought to be admitted are deemed admitted if the party requested does not respond.  Therefore, Ghawi has admitted: (1) he resided at the address shown on the statements, (2) had a Citibank credit card with the same number as shown on the statements; (3) that he used the credit card and made payments to Citibank; (4) received regular monthly statements and (5) owes $14,773.19.

On the basis of the foregoing, the court finds no material facts at issue, and that under the law Citibank is entitled to summary judgment on both counts of the complaint.  As to Count One (Default of Credit Agreement) the deemed admissions establish Citibank's case.  As to Count Two (Account Stated) the admissions and the monthly statements accompanying the summary judgment motion are sufficient.  See *General Petroleum Products, Inc. v. Merchants Trust Co.*, 115 Conn. 50, 56 (1932); *Citibank (South Dakota) v. Manger*, 105 Conn. App. 764, 766 N.2 (2008); *Credit One LLC*, 117 Conn. App. 92 cert denied 294 Conn. 907 (2009).

Judgment is entered in the amount of $14,773.19 plus costs.  There will be no prejudgment interest, and post judgment interest shall accrue at six percent (6%) annually.

SO ORDERED.

TAGGART D. ADAMS
JUDGE TRIAL REFEREE

Decision entered in accordance
with the foregoing. All parties of record
notified 2/5/2013
Abe Hurdle

3

148 Conn.App. 905 (Conn.App. 2014), AC 35514, Citibank, N.A. v. Ghawi

**Page 905**

**148 Conn.App. 905 (Conn.App. 2014)**

**86 A.3d 1101**

**CITIBANK, N.A.**

**v.**

**NABIL R. GHAWI**

**AC 35514**

**Appellate Court of Connecticut**

**March 25, 2014**

Defendant's appeal from the Superior Court in the judicial district of Stamford-Norwalk, Tobin, J.; Hon. A. William Mottolese, judge trial referee; Hon. Taggart D. Adams, judge trial referee.

Gruendel, Alvord and Bishop, Js.

**OPINION**

Per Curiam.

The judgment is affirmed.

# EXHIBIT 2



CT.gov  State of Connecticut | Governor Dannel P. Malloy | | Search |

# CONNECTICUT DEPARTMENT OF BANKING

Home     About Us     Programs & Services     Forms     Contact Us


Jorge Perez
Commissioner

**Consumer Help**
**Verify a License**
**Licensing Information**
**Enforcement**
**Laws and Regulations**
**External Links**
**Division Home Page**
**Main Menu**














## Consumer Collection Agency Licensing

### Who needs a license?

"Consumer collection agency" means any person (A) engaged as a third party in the business of collecting or receiving for payment for others of any account, bill or other indebtedness from a consumer debtor, (B) engaged directly or indirectly in the business of collecting any account, bill or other indebtedness from a consumer debtor for such person's own account if the indebtedness was acquired from other person and if the indebtedness was either delinquent or in default at the time it was acquired, or (C) engaged in the business of collecting or receiving for payment property tax from a property tax debtor on behalf of a municipality, including any person who, by any device, subterfuge or pretense, makes a pretended purchase or takes a pretended assignment of accounts from any other person or municipality of such indebtedness for the purpose of evading the provisions of sections 36a-800 to 36a-810, inclusive.  It includes persons who furnish collection systems carrying a name which simulates the name of a consumer collection agency and who supply forms or form letters to be used by the creditor, even though such forms direct the consumer debtor or property tax debtor to make payments directly to the creditor rather than to such fictitious agency.  "Consumer collection agency" further includes any person who, in attempting to collect or in collecting such person's own accounts or claims from a consumer debtor, uses a fictitious name or any name other than such person's own name which would indicate to the consumer debtor that a third person is collecting or attempting to collect such account or claim.

### Who does not need a license?

1. An individual employed on the staff of a licensed consumer collection agency, or by a creditor who is exempt from licensing, when attempting to collect on behalf of such consumer collection agency.

2. Persons not primarily engaged in the collection of debts from consumer debtors who receive funds in escrow for subsequent distribution to others, including, but not limited to real estate brokers and lenders holding funds of borrowers for payment of taxes or insurance.

3. Any public officer or a person acting under the order of any court.

4. Any member of the bar of this state.

5. A person who services loans or accounts for the owners thereof when the arrangement includes, in addition to requesting payment from delinquent consumer debtors, the providing of other services such as receipt of payment, accounting, record-keeping, data processing services and remitting, for loans or accounts which are current as well as those which are delinquent.

6. A bank or out-of-state bank, as defined in section 36a-2.

7. A subsidiary or affiliate of a bank or out-of-state bank, to the extent such affiliate or subsidiary is not primarily engaged in the business of purchasing and collecting upon delinquent debts not secured by real property.

### Essential Statutes - *Updated to January 1, 2013*

Before applying for a license, **please** reference the relevant Connecticut Statutes [Sections 36a-800 - 810 inclusive] and Regulations of Connecticut State Agencies for Consumer Collection Agencies.  Additionally, please reference Public Act 13-253, An Act Concerning Money Transmission and Consumer Collection Agencies, which as passed by the General Assembly and signed into law by Governor Malloy on July 11, 2013.  Sections 22 through 27 and Section 29 of the Act amended and enacted laws within the Commissioner's jurisdiction concerning Consumer Collection Agencies.  The Public Act takes effect October 1, 2013.  You may log on to www.cga.ct.gov to review the statutes, regulations and public act in their entirety.

---

**Warning To Licensees Who Collect Debt From CT Consumers**

It is illegal to collect on consumer loans which violate Connecticut's small loan regulatory scheme or to receive payment processing fees not contemplated by a consumer's underlying debt contract - see attached memo.

---

# EXHIBIT 3

**Frequently Asked Questions**

**Licensing Fees**

The licensing fees for the main office and the branch office applications are the same.

**$500** - For an application filed between 10/1/14 and 9/30/15

**License Application Forms**

Main Office

If you will be conducting Connecticut licensing activity from the corporate office/headquarters, you are required to designate this location as the "Main Office."
If you will **not** be conducting Connecticut licensing activity from this location, then the initial application filed with this department will be considered the Main Office for licensing purposes in the State of Connecticut.

Branch Office

Any additional location to be licensed in the State of Connecticut.

- Checklist - Main Office  *(3 pages, 286 KB)*
- Checklist - Branch Office *(2 pages, 281 KB)*
- Application - Main Office *(7 pages, 297 KB)*
- Application - Branch Office *(3 pages, 285 KB)*
- Bond *(1 page, 76 KB)*
- Personal and Business History Statement *(2 pages, legal size, 287 KB)*
- Attestation Form - Main Office *(1 page, 285 KB)*
- Attestation Form - Branch Office *(1 page, 276 KB)*
- Debt Buyers Only Statement of Acknowledgment *(1 page, 11 KB)*

**Other Collection Agency Forms**

- Change of Address *(1 page, 51 KB)*
- Change of Name *(1 page, 50 KB)*
- Change of Officer *(3 pages, legal size, 320 KB)*
- Change of Stockholder *(1 page, legal size, 63 KB)*
- Change of Supervisor *(3 pages, 322 KB)*
- Office Closure *(1 page, 39 KB)*

**Contact**

Connecticut Department of Banking
Consumer Credit Division
260 Constitution Plaza
Hartford, CT 06103-1800

Staff: Maria Burgos
Telephone: (860) 240-8211 or toll-free 800-831-7225
Fax: (860) 622-4971
E-mail: maria.burgos@ct.gov

**CBRC**   Visit the Connecticut's Business Response Center for information on all licensing and permitting activities across Connecticut State government.

Content Last Modified on 2/10/2015 11:20:57 AM

Printable Version

**260 Constitution Plaza, Hartford, CT 06103-1800 / Phone:  800-831-7225**
Home | CT.gov Home | Send Feedback | Login | Register
State of Connecticut Disclaimer, Privacy Policy, and Web Site Accessibility Policy.  Copyright © 2002-2015 State of Connecticut.



### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

NABIL GHAWI                            CIVIL ACTION 3:13 CV 115 JBA
   PLAINTIFF            )


V                        )


HOWARD L. SCHIFF P.C.  et. al.
   DEFENDANTS          )


                             FEBRUARY 18, 2015


### PLAINTIFF'S RESPONSE TO DEFENDANT'S
### REQUESTS FOR ADMISSIONS, INTERROGATORIES
### AND REQUEST FOR PRODUCTION


1.     Request for Admission :  Admitted.
1.     Interrogatory:  Not Applicable
1.     Production:     Not Applicable

2.     Not relevant but admitted.

2.     Interrogatory:  Object as not relevant to complaint. Notwithstanding I have
requested validation from the Defendant many times.

2.     Production:     Object as not relevant to complaint. This is not relevant, as
complaint is not predicated on validation of debt.  Since two prior law firms had not
validated debt then HLS was violating federal and state laws ( Exhibit 4) when
they initiated contact with Plaintiff (Exhibit 1). Notwithstanding validation of debt was
requested from inception and from then on ( Exhibit 2 ).

3.     Request for Admission:     Deny

*EXHIBIT 4*

3.   Interrogatory: a) I did not take notes on every occasion I requested calls to stop but I recall informing all parties that contacted me that my home/office landline and cell phones rang simultaneously and b) it was inconvenient for me to be interrupted while working  (c) I have attached a record of calls received  (Exhibits 3). Every call was inconvenient as I felt pressure being applied when I did talk to a representative and was detracted from my work when automated messages were left. All calls were initiated by an ADS (Automatic Dialing System) and therefore by definition violated a number of laws.

3.   Production:   Most of the requests were verbal but the July 19th letter (Exhibit 2) requesting validation of debt clearly requests that all communication be in writing.  All other written communication may not spell out that correspondence be in writing but clearly alludes to that. Please see Attached Exhibits 3 that show some of the incoming calls from HLS. These were automated robo calls that would leave a "canned" message (usually cut off) if not picked up and if answered the same canned message was relayed. ( Please see HLS own Exhibits 2 & 6 for further validation that Plaintiff wished to have written documentation).

4.   Request for Admission:   Object as not relevant to case  as complaint is not based on alleged debt but on the method of collection. Notwithstanding, letter may be a copy.

4.   Interrogatory:   Please refer to Exhibits 3  which is a detailed history of calls with time and date. Although the number called may have been 203-531 5122  I am able to pick up the call on any one of my 2 other cell phones which ring simultaneously. The carrier is Cablevision which provides my VOIP service which courts have ruled falls within the definition of TCPA (FCC) as equivalent to a cell phone purposes for the act.

4.   Production:   Attached  Exhibit 3.

5.   Request for Admission:   Object as not relevant to suit as complaint is not based on alleged debt but on the method of collection.

5.   Interrogatory:   Please refer to Exhibit 3.

5.   Production:   Refer to Exhibit 3. My provider is a VOIP (voice over internet protocol) which the courts have ruled is equivalent to a cellular phone as far as definition of the TCPA is concerned. Additionally I had informed you that my cell phone is tied in with my 203-531 5122 and calling that number was equivalent

to ringing my cell number which rings simultaneously and I can respond on either phone. I cannot differentiate on which phone I have responded to according to the records but the phone company keeps a record of any call received.

6.   Request for Admission:   Object as not relevant.  Notwithstanding letter appears to be a true copy.  Upon rereading the letter I reiterate my position which did not change.  I do not think there can be any doubt that I would like communications to be in writing (Exhibit 5) (Exhibit 6).

6.   Interrogatory:   203-531 5122 is a Voip residential line that is used by home/office. I have an 800-474 4294 which is only released to a few preferred individulas as I am charged on every incoming call. This 800 number is forwarded to my 203-531 5122 number. My other mobile numbers are 203-829 7841 and 203-718 8906 (in past I had 202-999 5432). I have had many cell phones over the years.  My business requires much travel and all phones are tied in together so that they all ring simultaneously and not forwarded (except for 800#) so that I can pick up on any line. Usually it is a cell line especially when away from my home/ office. Fortunately, no matter which phone I pick up a record has been kept by my telephone provider (Exhibit 8). None of these numbers were ever disclosed to Citibank NA or HLS.

6.   Production:   My telephone is listed as a residential line. Since I am a solo practitioner and my business is a personal one there is no way to separate the calls individually. Suffice it to say that all incoming calls are directed to me personally and all phones are in my personal name.

7.   Request for Admission:   I deny as I have no control over the Defendants phone systems and policies on calling.

7.   Interrogatory:   There is no way that I can keep detailed records of Defendants outgoing calls. They would have that information. All I know is that on a number of occasions telemarketer appeared on caller ID as well as occasionally blocked/private number; additionally sometimes nonsensical numbers appeared on caller ID. Even recently when Ms. Dumond called me a number of times the caller ID showed 4 or 5 digits and definitely not a number indicting a valid telephone number or name of HLS

7.    Production:    Defendant's forthcoming responses to Plaintiff's requests for admission, interrogatory and production should reveal the truth as the records are in the possession of HLS.

8.                    Request for Admission:    Denied absolutely.

8.           Interrogatory:    My discovery should reveal the facts. HLS should have records of all the outgoing calls made to me. I retrieved records from my phone company and it only shows the incoming calls made by HLS as disclosed in Exhibits.

8.        Production:    See exhibits and above 7 response. Defendants responses to Plaintiff's requests for admission, interrogatory and production and are in possession of HLS should be disclosed by Defendant.

9.        Request for Admission:    Object as not relevant. Notwithstanding letter appears to be a true copy.

10.    Request for Admission:    Object as not relevant. Notwithstanding Exhibit 7 appears to be a copy of my appearance.

9.        Interrogatory:    Since your phone system is automated ; these are robo calls with a machine calling and scripted automated messages left or if one picks up then one has to wait until a human being takes over the call. All named parties are responsible.

9.        Production:    The first call can be accidental but after that by definition calls are made willingly and knowingly. I have no idea who is calling since a machine leaves an automated message and if I should pick up I never know who the party at the other might be.

11.    Request for Admission:    I have no idea whether I left a message on June 21, 2012. Apparently you claim you have a copy of a recording. That should have been produced by now. Please send me the taped message. In any case, this will be requested during discovery if it is not sent immediately.

I know that at one point I had attempted to find an agreeable resolution and there were several attempts to end suit but that would have been the only reason I may have left such a message and it was only for that purpose alone and not a carte blanche to call me ad infinitum (Exhibit 7). I need to listen to message as it could be taken out of context. In any event calls made according to Exhibit 3 were made prior to the date of June 12, 2012. It appears that to avoid a time consuming legal battle I attempted a last ditch offer to end the differences. I had informed Ms. Daily-Thomson that my time was valuable and I did not have time to fight a law firm and an institution such as Citibank; it would cost me much more than paying them to get them off my back as the time and effort to come up against such forces would be most distressing. If I recollect correctly instead of getting back to me with a counter offer or an explanation the response was issuing a summons and the filing of a complaint.

10.     Interrogatory:     There is no way for me to remember every conversation, message or communication I had several years ago. My objective at the time was to get on with my life and spend as little time as possible on non-productive activities. I certainly did not keep detailed notes with an intention of a long drawn-out legal battle.

10.     Production:     Object as not relevant. Notwithstanding all relevant correspondence and documents that have a bearing on the case will be produced at the right time. This lawsuit is predicated on FDCPA, TCPA, CUTPA etc. which are a consequence of the actions of HLS and Citibank NA and not on the debt itself.

12.     Request for Admission:     Denied. On the contrary I recall informing Ms. Dumont on several occasions when I was traveling on business that is was not suitable for me to speak especially since I was on my cell phone and I was trying to make a living.

10.     Interrogatory:     It is impossible for me to admit truthfully as to every instance, day and time of every call and what was said exactly. Please refer to above response. Suffice it to say that all calls made from HLS were inconvenient as their purpose was nothing more than to collect on an alleged and disputed debt.

14.   Request for Admission:   Denied with an explanation. The 203-531 5122 is a home/office line that is used by me in my private practice which encompasses personal, business and other issues. It is listed as a VOIP

residential line (which according to TCPA is within their definition of a regulated line) in my personal name. All my lines are attached to that number. They are not forwarded but all phones ring simultaneously and I can pick up any one of the phones.

12.    Interrogatory:    Once again my 203-531 5122 is my main line which I give out as my cell number as when it rings (calls not forwarded) so do all my mobile phones (which have changed over the years). This reduces the inconvenience of friends, family, clients, and business colleagues etc, to maintain several numbers. My personal name appears on all numbers that I have including an 800 number as well as my present mobile numbers of 203-829-7841 and 203-718 8906 and other numbers that have changed over the years.

12.    Production:    Exhibit 3 show all the numbers that came in from HLS. They are the numbers listed to the right and can be traced to HLS. I am in the process of completing my investigation as to other numbers used.

13.    Production:    Please refer to Exhibits. The TCPA is a four statute, the FDCPA 1 year and CUTPA 3 years.

13.    Interrogatory:    Defendants have a preliminary damage report. Suffice it to say that the time for me to study and research the complicated laws have taken away from my business caused me sleepless nights and health issues. One cannot measure such damages purely in monetary terms. Any dollar number is not sufficient to compensate me.

14.    Production:    Every individual measures such actual damages in many different ways. I leave it to the discretion of the court to come with a dollar figure as to me my time and health are priceless.

14.    Interrogatory:    They have been spelled out in the complaint and in detail in the motion for summary judgment.  A damage report has been given to Ms. Dumont.

15.    Production:    Statutory damages are in the damage report and more specifically in the complaint and will be displayed in detail when research and investigation is completed

15.    Interrogatory:    See above response 15. Applies to punitive damages as well.

16.     Production:       See above.

16.     Interrogatory:     Included on my hard drive from messages left. I only have the recordings, which were left, on my voice box. Unlike HLS I do not record my conversations as words can be taken out of context. That is why I have requested that HLS correspond with me in writing.

17.     Production:       In Exhibits. Please provide email so I can forward as attachments. In previous communications I had listed each call in detail and why it was a violation. It is with Defendant and can be found in the court pleadings.. Similarly I request that all records in your possession be delivered to me.

17.     Interrogatory:     Your Exhibit 8 has been selectively chosen and accompanying paperwork was omitted. Consequently, this not an accurate picture. I had submitted complete Exhibits of phone logs with notes. I am now sending you an updated record. The outbound calls are of no significance to my suit. The number displayed in defendant's Exhibit 8 is 860 882 1798 and not 860-888 1798. That number is or was an HLS number. I shall send more comprehensive evidence. This would only be a partial list as going through hundreds if not thousands of documents and telephone numbers is a painstaking process.

18.     Interrogatory:     The statement is just prior to 02/22/2010 as is shown under account terms in the statement. You claim you have all the statements which I do not.

19.     Interrogatory:     Object as this is completely irrelevant. The only reason for that Exhibit was to show that I had not released the number 203-531 5122 to either HLS or Citibank.

20.     Interrogatory:     Object as this is completely irrelevant. The only reason for Defendant's Exhibit 9 was to show that I had not released the number 203-531 5122 to either HLS or Citibank .

Plaintiff,

Feb. 18, 2015

Nabil Ghawi

## CERTIFICATION OF SERVICE

I herby certify that a copy of the foregoing and any attachments were mailed by USPS Priority Delivery to:

Jeanine M. Dumont, Attorney
510 Tolland St
East Hartford, CT 06108

Nabil Ghawi

February 18, 2015

EXHIBIT 1

## AFFIDAVIT

1- On 1December, 2010 the law firm of Solomon and Solomon, P.C. sent defendant a letter requesting payment of an alleged Citibank debt account number ending 1181. The debt was never validated.

2- On 26 May, 2011 the law firm of Shermeta, Adams and Von Allmen, P.C. dismissed this alleged Citibank debt account number ending 1181 without prejudice. The debt was never validated.

3- On July 9, 2011 the law firm of Howard L. Schiff P.C. sent defendant a letter requesting payment on an alleged Citibank debt account number ending 1181

4- The defendant has asked the plaintiff for validation of this purported debt multiple times and to date plaintiff has not complied.

5- The plaintiff proceeds to file a complaint on 15 February, 2012

6- The defendant has demanded that Howard L. Schiff show good faith proof that he is indeed counsel of record to plaintiff.

7- Jeanine M. Dumont replies that defendant should take their word that they indeed represent Citibank.

8- Nabil Ghawi rebuts and requests that Howard L. Schiff, P.C. show true representation and validation of debt.

## VERIFICATION

Personally appeared before me the undersigned who on oath states that the facts set forth in this AMENDED NOTICE OF DISPUTE are true and correct to the best of his knowledge and belief.

_____
Nabil Ghawi pro se

Marie C Norton
9/17/2012

MARIE C NORTON
NOTARY PUBLIC
CONNECTICUT
My Commission Expires
09/30/2016

EXHIBIT 1

**Nabil Ghawi**
**14 Hawthorne St S (Apt B)**
**Greenwich, CT 06831**


Howard L. Schiff P.C
510 Tolland St
East Hartford, CT 06108

Ref:  CN: V81812 NS

July 15, 2011


Greetings,

I am writing in response to your letter dated July 9, 2011. I am not refusing
to pay the alleged debt but this is a notice that your claim is disputed. This is
a request made pursuant to the Fair Debt Collection Practices Act. I dispute
your debt related allegations, deny the same and demand strict proof and
verification thereof. This dispute, denial and demand are made in accordance
with federal and state law.

As a third party debt collector please provide me the documentation of your
authority to act on behalf of Citibank NA.

I request kindly that all communication be in writing. Thank you for your
understanding and cooperation.



Yours cordially,

7/15/2011

Nabil Ghawi

# EXHIBIT 3

## INCOMING CALLS FROM HLS

| | | |
|---|---|---|
| 7/7/2011 | 10:58 | 860-882 0061 |
| 7/8/2011 | 13:19 | 860-882 0061 |
| 7/13/2011 | 14:51 | 860-882 1798 |
| 7/14/2011 | 11:24 | 860-882 1798 |
| 7/16/2011 | 17:08 | 866-234 7606 |
| 7/16/2011 | 20:10 | 866-234 7606 |
| 7/22/2011 | 14:52 | 860-882 0061 |
| 7/26/2011 | 10:47 | 860-882 1798 |
| 7/27/2011 | 9:02 | 860-882 0061 |
| 7/28/2011 | 13:52 | 860-882 1798 |
| 8/01/2011 | 17:33 | 860-289 1248 |
| 8/03/2011 | 15:24 | 866-234 7606 |
| 8/04/2011 | 13:12 | 860-882 0061 |
| 8/04/2011 | 15:11 | 860-882 0061 |
| 8/04/2011 | 15:12 | 860-882 1798 |
| 8/06/2011 | 10:06 | 866-234 7606 |
| 8/08/2011 | 14:59 | 860-882 1798 |
| 8/09/2011 | 12:15 | 866-234 7606 |
| 8/11/2011 | 12:38 | 860-882 1798 |
| 8/11/2011 | 12:14 | 866-234 7606 |
| 8/13/2011 | 17:10 | 866-234 7606 |
| 8/18/2011 | 13:28 | 866-234 7606 |
| 8/24/2011 | 9:05 | 866-882 1798 |
| 9/10/2011 | 17:09 | 866-234 7606 |
| 9/15/2011 | 16:32 | 860-882 1798 |
| 10/6/2011 | 14:57 | 860-882 0061 |
| 10/6/2011 | 15:01 | 860-882 1798 |
| 10/8/2011 | 15:20 | 866-2347606 |
| 10/15/2011 | 15:59 | 866-234 7606 |
| 11/12/2011 | 14:57 | 866-234 7606 |
| 12/1/2011 | 10:33 | 866-234 7606 |
| 12/03/2011 | 15:05 | 866-234 7606 |
| 12/16/2011 | 9:33 | 860-882 1798 |
| 12/10/2011 | 14:33 | 866-234 7606 |
| 12/17/2011 | 16:10 | 866-234 7606 |

| | | |
|---|---|---|
| 1/17/2012 | 16:30 | 866-234 7606 |
| 1/21/2012 | 14:34 | 866-234 7606 |
| 1/28/2012 | 16:07 | 866-234 7606 |
| 2/4/2012 | 15:06 | 866-234 7606 |
| 2/9/2012 | 11:43 | 860-882 1798 |
| 2/1/2012 | 16:26 | 866-234 7606 |
| 2/18/2012 | 15:47 | 866-234 7606 |
| 2/25/2012 | 16:33 | 866-234 7606 |
| 3/3/2012 | 14:49 | 866-234 7606 |
| 3/10/2012 | 14:24 | 866-234 7606 |

45 calls      on CD

| | | |
|---|---|---|
| 3/24/2012 | 2 pm | 866-234 7606 |
| 3/17/2012 | 2:44 pm | 866-234-7606 |
| 2/11/2012 | 4:29 pm | 866-234 7606 |
| 1/14/2012 | 3:44 pm | 866-234 7606 |
| 1/07/2012 | 4:31 pm | 866-234 7606 |
| 11/19/2011 | 2:56 pm | 866-234 7606 |
| 10/29/2011 | 3:20 pm | 866-234 7606 |
| 11/19/2011 | 2:56 pm | 866-234 7606 |
| 10/29/2011 | 3:20 pm | 866-234 7606 |

9 calls on computer hard drive

| | | |
|---|---|---|
| 6/21/2012 | 5:10 pm | 866-234 7606 |
| 5/12/2012 | 3:50 pm | 866-234 7606 |
| 3/31/2012 | 15:39 | 866-234 7606 |
| 4/14/2012 | 15:27 | 866-234 7606 |

4 calls on computer hard drive

| | |
|---|---|
| 3/08/2012 | 866-234 7606 |

EXHIBIT 3B

| | |
|---|---|
| 3/14/ 2012 | 866-234 7606 |
| 3/17/2012 | 866-234 7606 |
| 4/2/2012 | 866-234 7606 |
| 4/7/2012 | 866-234 7606 |
| 4/16/2012 | 866-234 7606 |
| 4/21/2012 | 866-234 7606 |
| 5/12/2012 | 866-234 7606 |
| 5/26/2012 | 866-234 7606 |
| 6/2/2012 | 866-234 7606 |
| 6/16/2012 | 866-234 7606 |
| 6/16/2012 | 866-234 7606 |
| 6/21/2012 | 866-234 7606 |
| 3/13/2012 | 860-882 1798 |
| 1/18/2012 | 860-882 1798 |

15 calls from notes

| | | |
|---|---|---|
| 12/18/2014 | 1:26 pm | 860-350 6199 |
| 12/18/2014 | 12:56 pm | 860-350 6199 |
| 11/29/2014 | 5:58 pm | 860-350 6199 |

3 Incoming calls to my 800-474 4294 that I pay for per minute on excel spreadsheet.

TOTAL OF 76 calls that can be accounted for.

This is only a partial list as there were numerous  other calls that will require more work to uncover.

# EXHIBIT

A law firm is not exempt from licensing as a consumer collection agency.  An attorney if he/she is a member of the Connecticut Bar would be exempt from licensing.  If you are required to obtain a license, a surety bond is required.

Please let me know if you need any further information.


Consumer Credit Division
Connecticut Department of Banking
260 Constitution Plaza
Hartford, CT  06103-1800
telephone:  860-240-8209
fax:          860-622-4972
e-mail:

*EXHIBITS*

DOCKET NO. CV 12 6013516 S

CITIBANK, N.A.
VS
NABIL R GHAWI

July 16, 2012

Dear Ms. Quaneshia Daley-Thompson,

As requested I am writing to you to ask for the original (or certified copy) of the signed agreement between defendant and plaintiff on opening the alleged account. Subsequently there have been a number of amendments and changes done unilaterally by Citibank as has been the standard policy of many of the creditors. I would like to receive those in writing as well.

Pursuant to our conversation I am asking the court for a motion for enlargement of time as I need to receive the requisite information. The few responses to my discovery questions were evasive and did not address the issues at hand in a forthcoming manner. This leads me to believe that there is substance of fact that has to be disclosed in a candid way. To reveal the true information there has to be complete disclosure. A lack of transparency makes me think that there is obfuscation; consequently I need to understand the reasons why the answers were designed in such a way as to confuse rather than enlighten.

I thank you for your understanding and remain respectfully,

Nabil Ghawi

Nabil R. Ghawi
14 Hawthorne St S (B)
Greenwich, CT 06831

November 11, 2012

Dear Jeanine Dumont,

I made every effort to try to establish a conference call so that we could try to find an agreeable resolution to the issues at hand. I understand that the storm we recently experienced has caused havoc on peoples lives. I hope that you and your family were not unduly affected. I did leave a message at your office confirming a 4 pm call on November 7th but had not heard back.

I will make every effort to accommodate your schedule so that we can try and resolve our differences so that the situation does not deteriorate any further. I notice that the judge has allowed you an extension of time so that the most recent discovery questions can be answered. I also see that a protective order was granted.

There are several areas which have to be addressed, be it in discovery or otherwise. I will be filing a motion to reargue the judges' orders for protective order as until at least the following areas of contention are addressed then there can be no further progress:

1- According to the rules of evidence and federal as well as state statutes (as stated in the memorandum of law opposing the protective order) once the defendant requests true representation then plaintiff must comply. Ms. Dumont your offhanded position that since you are officer of the court then I have to accept your word is not purely hearsay and has no foundation in the law. Why do you not accept my word? I am the only one with firsthand knowledge according to CT Practice Book. All other evidence presented is based on secondhand knowledge.

2- In your complaint count 1 you state in no uncertain terms that:" according to the terms of the contract". As your suit is based on such terms then I have every right to request a copy of the agreement. To once again tell me that I should know what the terms are because you say so has no foundation in the law.

3- To produce two different set of statements in itself is proof that they cannot by definition be copies of the originals. To request originals or certified copies of originals is based on CT rules of evidence. To introduce questionable affidavits validating bogus

EXHIBIT 6

statements should be sufficient to terminate this proceeding. But yet once again giving you the benefit of the doubt I request that such documentation be produced as it is absolutely essential to this suit.

I respectfully request that you NOT mark the short calendar ready until these essential and preliminary questions are addressed. I would be grateful if you were to give me prior notice prior to filing your MSJ so that I have the opportunity to retort.

Yours cordially,

Nabil Ghawi

11/23/2012

# EXHIBIT 6

EXHIBIT 7

LAST HARTFORD, CONNECTICUT
ORTLAND, MAINE
WORCESTER, MASSACHUSETTS
NASHUA, NEW HAMPSHIRE
PROVIDENCE, RHODE ISLAND
BRATTLEBORO, VERMONT

LAW OFFICES
# HOWARD LEE SCHIFF, P.C.

Howard Lee Schiff 1933-2007

510 Tolland Street POB 280245 East Hartford CT 06128-0245
Telephone (860) 528-1645 Facsimile (860) 528-7602

September 27, 2011

NABIL R GHAWI
14 HAWTHORNE ST S #A

GREENWICH CT     06831

RE: NABIL R GHAWI
    CITIBANK, N.A.

Our file no. CN-V81812

I must speak with you.

Please call me. I can be reached at (866) 234-7606 Monday through
Friday from 8:30 a.m. until 8:30 p.m.

Payment may also be made via the internet at WWW.PAYSCHIFF.COM or
through PhonePay at (866) 214-9942.

When you choose to make a payment with your bank account via the
IVR system and you enter your CN Number when prompted, you are
authorizing Law Offices Howard Lee Schiff, P.C. to debit your
bank account via ACH in the amount authorized towards payment of
debt owed.


Respectfully.

QUANESHIA DAILEY-THOMPSON
Legal Assistant


THIS COMMUNICATION IS FROM A DEBT COLLECTOR.
THIS IS AN ATTEMPT TO COLLECT A CLAIM OR DEBT AND ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

D6

EXHIBIT 8

# Find Me

All calls to your line will simultaneously ring up to three additional phone lines and the call will be connected to whichever phone answers first.

Find Me:     ⦿ On     ⦾ Off

Ring all calls at the following numbers (max 3):

(203) 718-8906

(203) 829-7841

(        )         -

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| NABIL GHAWI<br>　　　Plaintiff | )<br>) CIVIL ACTION NO. 3:13 CV 115 (JBA)<br>) |
| v. | )<br>) |
| LAW OFFICES HOWARD LEE SCHIFF P.C., et al<br>　　　Defendants | )　　*March 10, 2015*<br>)　~~JANUARY 19, 2015~~ |

*Integrated Responses*

## REQUESTS FOR ADMISSIONS, INTERROGATORIES AND REQUESTS FOR PRODUCTION

　　Pursuant to Fed. R. Civ. P. 33, 34 and 36, defendants, LAW OFFICES HOWARD LEE SCHIFF P.C., JEANINE M. DUMONT, HEATH A. TIBERIO, REBECCA JADACH and QUANESHIA DAILEY-THOMPSON, hereby requests that the plaintiff, NABIL GHAWI, answer the following Requests for Admissions, Interrogatories and Requests for Production, within 30 days:

### DEFINITIONS AND INSTRUCTIONS

A.　　　As used herein, the term "document" includes, without limiting the generality of its meaning, all originals or copies where originals are unavailable, and non-identical copies (whether different from originals by reason of notation made on the copies or otherwise), of all written, recorded or graphic matter, however produced or reproduced, of correspondence, pleadings, emails or electronic messages, telegrams, sound or video recordings of any type of conversation, meeting, or conference, minutes of meetings, memoranda, interoffice communications, studies, analyses, reports, summaries and results of investigations and tests, reviews, contracts, agreements, working papers, tax returns, statistical records, ledgers, books of account, vouchers, bank checks, bank statements, invoices, receipts, computer data, stenographers notebooks, manuals, directives, bulletins, desk calendars, appointment books, diaries, maps, charts, photographs, plaques, drawings or other graphic representations, logs, investigator's reports, or papers similar to any of the foregoing, however denominated.

B.　　Any person or entity referred to shall include, in addition to that person or entity, his, her, or its officers, directors, agents, employees and representatives.

C.　　Unless oth~~　　　　　　　　　　　　　　　~~　1, 2011 to the present.

D.　　If the Inter~~　　　　　　　　~~ or documentation
which you do not~~　　　　　~~tion or

# EXHIBIT 4A

documentation, the reason why you do not have the information or documentation, and indicate who or what has the document or information that is requested.

E.      As used herein, the term "and" as well as "or" shall be construed either disjunctively or conjunctively as is necessary to bring within the scope of these requests any and all documents which might otherwise be construed to be outside their scope.

F.      As used herein, "Amended Complaint" shall refer to the Amended Complaint filed by Plaintiff in this action on or about March 13, 2014.

G.      As used herein, the FDCPA shall refer to the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.*, or any part thereof.

H.      As used herein, the TCPA shall refer to the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.*, or any part thereof.

I.      The "debt" shall refer to the balance due and owing plaintiff on his Citibank Platinum Select MasterCard with an account ending in #1181 which was charged off by Citibank in February 2011.

J.      "The Superior Court Action" shall refer to the suit commenced the Superior Court of the State of Connecticut, Judicial District of Stamford, by return date of April 10, 2012, bearing civil docket number, CV 12 6013616S, and entitled, *Citibank, N.A. v. Nabil R. Ghawi.*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Request for Admission 1:** Do you admit that the letter dated July 9, 2011, attached hereto as **Exhibit 1,** is a true and correct copy of a letter you received from the Law Offices Howard Lee Schiff in July 2011?

# 1.      Request for Admission : Admitted.

**Interrogatory 1:** If your response to Request for Admission 1 was anything but a complete, unqualified admission of said Request for Admission, please state when you received the letter dated July 9, 2011.

# 1.      Interrogatory:  Not Applicable

**Request for Production 1:** If your response to Request for Admission 1 was anything but a complete, unqualified admission of said Request for Admission, please produce a copy of the July 9, 2011 which you received from the Law Offices Howard Lee Schiff.

2

# 1.    Production:    Not Applicable

**Request for Admission 2**:  Do you admit that the letter stating "Faxed on August 28th, 2012" attached hereto as **Exhibit 2,** is a true and correct copy of the letter which you sent to the Law Offices Howard Lee Schiff on or about August 28, 2012?

# 2.    Not relevant but admitted.

**Interrogatory 2**:  Please state when you first requested validation of the debt from the Law Offices Howard Lee Schiff as referenced in your Amended Complaint dated March 12, 2014 at ¶14.

2.    Interrogatory:  Object as not relevant to complaint. Notwithstanding I have requested validation from the Defendant many times.

**Request for Production 2**:  Please produce a copy of each and every letter or other document which you claim supports your allegations that plaintiff requested validation of the debt at any time after July 9, 2011, including, but not limited to a copy of the letter you claim that you sent defendants on or about July 15, 2011 and any proof that you have that any or all of these letters were sent and/or received by defendants.

2.    Production:    Object as not relevant to complaint. This is not relevant, as complaint is not predicated on validation of debt. Since two prior law firms had not validated debt then HLS was violating federal and state laws ( Exhibit 4) when they initiated contact with Plaintiff (Exhibit 1). Notwithstanding validation of debt was requested from inception and from then on ( Exhibit 2 ).

**Request for Admission 3**:  Do you admit that plaintiff never requested that defendants cease calling him?

# 3.    Request for Admission:    Deny

**Interrogatory 3:** If your response to Request for Admission 3 was anything but a complete, unqualified admission of said Request for Admission, please state the following:
(a)  Each and every instance in which you requested that telephone calls stop, including the date, time and the name of the person you spoke to at defendant's law office;

(b)  Describe what you stated to defendant(s) which was intended to convey that telephone calls were to cease; and

(c)  Please state each and every instance in which you claim that you were called at usual time or place or a place know or which should be known to be inconvenient as alleged in the Amended Complaint at ¶20.

3.   Interrogatory: a) I did not take notes on every occasion I requested calls to stop but I recall informing all parties that contacted me that my home/office landline and cell phones rang simultaneously and b) it was inconvenient for me to be interrupted while working  (c) I have attached a record of calls received  (Exhibits 3). Every call was inconvenient as I felt pressure being applied when I did talk to a representative and was detracted from my work when automated messages were left. All calls were initiated by an ADS (Automatic Dialing System) and therefore by definition violated a number of laws.

**Request for Production 3**:  Please produce all letters or other documents which you claim support your allegations that you were called by defendants after you requested no more telephone calls and/or that you were called at an usual time or place or a place know or which should be known to be inconvenient as alleged in the Amended Complaint at ¶20.

3.   Production:    Most of the requests were verbal but the July 19th letter (Exhibit 2) requesting validation of debt clearly requests that all communication be in writing.  All other written communication may not spell out that correspondence be in writing but clearly alludes to that. Please see Attached Exhibits 3 that show some of the incoming calls from HLS. These were automated robo calls that would leave a "canned" message (usually cut off) if not picked up and if answered the same canned message was relayed. ( Please see HLS own Exhibits 2 & 6 for further validation that Plaintiff wished to have written documentation).

**Request for Admission 4**:  Do you admit that the letter stating "Faxed to 860-528-7602 on September 3, 3012" attached hereto as **Exhibit 3**, is a true and correct copy of a letter you sent to defendants on or about September 3, 2012?

4.   Request for Admission:   Object as not relevant to case   as complaint is not based on alleged debt but on the method of collection. Notwithstanding, letter may be a copy.

**Interrogatory 4:**  Please list each call which you claim was made in violation of the FDCPA, and include in your answer:  (a) the date and time of each call; (b) the telephone number to which the call was made; (b) whether the call was made to a cell phone or a non-cell phone number; and (c) the carrier who provided your cell phone or phone service for each such call made to

you.

4. Interrogatory:   Please refer to Exhibits 3  which is a detailed history of calls with time and date.  Although the number called may have been 203-531 5122  I am able to pick up the call on any one of my 2 other cell phones which ring simultaneously. The carrier is Cablevision which provides my VOIP service which courts have ruled falls within the definition of TCPA (FCC) as equivalent to a cell phone purposes for the act.

**Request for Production 4:** Please produce copies of all cell or non-cell phone bills showing calls which were made on the dates on which you claim calls were made to you by defendants in violation of the FDCPA.

# 4.  Production:   Attached  Exhibit 3.

**Request for Admission 5**: Do you admit that the letter dated September 8, 2012 attached hereto as **Exhibit 4,** is a true and correct copy of a letter you sent to defendants on or about September 8, 2012?

5.   Request for Admission:   Object as not relevant to suit as complaint is not based on alleged debt but on the method of collection.

**Interrogatory 5:** Please list each call which you claim was made in violation of the TCPA, and include in your answer:  (a) the date and time of each call; (b) the telephone number to which the call was made; (b) whether the call was made to a cell phone or a non-cell phone number; and (c) the carrier who provided your cell phone or phone service for each such call made to you.

# 5.   Interrogatory:   Please refer to Exhibit 3.

**Request for Production 5:** Please produce copies of all cell or non-cell phone bills showing calls which were made on the dates on which you claim calls were made to you by defendants in violation of the FDCPA.

5.   Production:      Refer to Exhibit 3. My provider is a VOIP (voice-over internet protocol) which the courts have ruled is equivalent to a cellular phone as far as definition of the TCPA is concerned. Additionally I had informed you that my cell phone is tied in with my 203-531 5122 and calling that number was equivalent

to ringing my cell number which rings simultaneously and I can respond on either phone. I cannot differentiate on which phone I have responded to according to the records but the phone company keeps a record of any call received.

**Request for Admission 6**: Do you admit that the letter dated September 17, 2012 attached hereto as **Exhibit 5**, is a true and correct copy of a letter you sent to defendants on or about September 17, 2012?

      6.    Request for Admission:     Object as not relevant. Notwithstanding letter appears to be a true copy. Upon rereading the letter I reiterate my position which did not change. I do not think there can be any doubt that I would like communications to be in writing (Exhibit 5) (Exhibit 6).

**Interrogatory No. 6**: Please list each and every telephone number you have had or used from January 1, 2011 to the present time, and for each number, indicate: (a) whether the number is for a cell phone or a non-cell phone; (b) whether the number is for personal or business uses; and (c) whether you have provided the number to Citibank and/or defendants for calls relating to this debt.

      6.    Interrogatory:    203-531 5122 is a Voip residential line that is used by home/office. I have an 800-474 4294 which is only released to a few preferred individulas as I am charged on every incoming call. This 800 number is forwarded to my 203-531 5122 number. My other mobile numbers are 203-829 7841 and 203-718 8906 (in past I had 202-999 5432). I have had many cell phones over the years. My business requires much travel and all phones are tied in together so that they all ring simultaneously and not forwarded (except for 800#) so that I can pick up on any line. Usually it is a cell line especially when away from my home/ office. Fortunately, no matter which phone I pick up a record has been kept by my telephone provider (Exhibit 8). None of these numbers were ever disclosed to Citibank NA or HLS.

**Request for Production No. 6**: Please produce all documents which support your response to Interrogatory No. 5 and/or show that your telephone number(s) were for business or personal use.

      6.    Production:    My telephone is listed as a residential line. Since I am a solo practitioner and my business is a personal one there is no way to separate the calls individually. Suffice it to say that all incoming calls are directed to me personally and all phones are in my personal name.

## ADMISSIONS, INTERROGATORIES AND REQUESTS FOR PRODUCTION

Pursuant to Fed. R. Civ. P. 33, 34 and 36, defendants, LAW OFFICES HOWARD LEE SCHIFF P.C., JEANNE M. DUMONT, HEATH A. TIBERIO, REBECCA JADACH and QUANESHIA DAILEY-THOMPSON, hereby requests that the plaintiff, NAEL GHAWI, answer the following Requests for Admissions, Interrogatories and Requests for Production, within 30 days:

### DEFINITIONS AND INSTRUCTIONS

A.        As used herein, the term "document" includes, without limiting the generality of its meaning, all originals or copies where originals are unavailable, and non-identical copies (whether different from originals by reason of notation made on the copies or otherwise), of all written, recorded or graphic matter, however produced or reproduced, of correspondence, pleadings, emails or electronic messages, telegrams, sound or video recordings of any type of conversation, meeting, or conference, minutes of meetings, memoranda, interoffice communications, studies, analyses, reports, summaries and results of investigations and tests, reviews, contracts, agreements, working papers, tax returns, statistical records, ledgers, books of account, vouchers, bank checks, bank statements, invoices, receipts, computer data, stenographers notebooks, manuals, directives, bulletins, desk calendars, appointment books, diaries, maps, charts, photographs, plaques, drawings or other graphic representations, logs, investigator's reports, or papers similar to any of the foregoing, however denominated.

B.     Any person or entity referred to shall include, in addition to that person or entity, his, her, or its officers, directors, agents, employees and representatives.

C.     Unless otherwise specified, the scope of discovery is from January 1, 2011 to the present.

D.     If the Interrogatory or Request for Production calls for information or documentation which you do not have, please state **that you do not have the information or** documentation, the reason why you do not have the information or documentation, and indicate who or what has the document or information that is requested.

E.     As used herein, the term "and" as well as "or" shall be construed either disjunctively or conjunctively as is necessary to bring within the scope of these requests any and all documents which might otherwise be construed to be outside their scope.



# *EXHIBIT 5*

**Request for Admission 7**: Do you admit that defendants do not control what appears as caller identification on your phone(s)?

7.    **Request for Admission:**    I deny as I have no control over the Defendants phone systems and policies on calling.

**Interrogatory 7:**  If your response to Request for Admission 7 was anything but a complete, unqualified admission of said Request for Admission, please state the following:
(a)  Each and every reason for your response;
(b)  Describe each and every witness with information supporting or tending to support your response, including the name, address and telephone number of each witness; and
(c)  Describe each and every document in your possession and control supporting or tending to support your response.

7.    **Interrogatory:**    There is no way that I can keep detailed records of Defendants outgoing calls. They would have that information. All I know is that on a number of occasions telemarketer appeared on caller ID as well as occasionally blocked/private number; additionally sometimes nonsensical numbers appeared on caller ID. Even recently when Ms. Dumond called me a number of times the caller ID showed 4 or 5 digits and definitely not a number indicting a valid telephone number or name of HLS

**Request for Production 7**: If your response to Request for Admission 7 was anything but a complete, unqualified admission of said Request for Admission, please produce each and every document that supports or tends to support your response thereto.

7.    **Production:**    Defendant's forthcoming responses to Plaintiff's requests for admission, interrogatory and production should reveal the truth as the records are in the possession of HLS.

**Request for Admission 8:**  Do you admit that each time that the Law Offices Howard Lee Schiff called you, the caller indicated his or her name and that he or she is calling from the Law Offices Howard Lee Schiff?

8.    **Request for Admission:**    **Denied absolutely.**

**Interrogatory 8:** If your response to Request for Admission 8 was anything but a complete, unqualified admission of said Request for Admission, please state the following:
(a)  Each and every reason for your response;
(b)  Describe each and every witness with information supporting or tending to support your

response, including the name, address and telephone number of each witness; and
(c) Describe each and every document in your possession and control supporting or tending
to support your response.

8. **Interrogatory:** My discovery should reveal the facts. HLS should have records of all the outgoing calls made to me. I retrieved records from my phone company and it only shows the incoming calls made by HLS as disclosed in Exhibits.

**Request for Production 8**: If your response to Request for Admission 8 was anything but a complete, unqualified admission of said Request for Admission, please produce each and every document that supports or tends to support your response thereto.

8. **Production:** See exhibits and above 7 response. Defendants responses to Plaintiff's requests for admission, interrogatory and production and are in possession of HLS should be disclosed by Defendant.

**Request for Admission 9:** Do you admit that the letter dated October 22, 2012 attached hereto as **Exhibit 6** is a true and correct copy of a letter you sent defendants on or about October 22, 2012?

9. **Request for Admission:** Object as not relevant. Notwithstanding letter appears to be a true copy.

**Request for Admission 10**: Do you admit that attached hereto as **Exhibit 7** is a true and correct copy of the Appearance which you filed in the Superior Court action?

10. **Request for Admission:** Object as not relevant. Notwithstanding Exhibit 7 appears to be a copy of my appearance.

**Interrogatory No. 9:** In your Amended Complaint at ¶ 40, you allege that "[d]efendnat made the calls to Plaintiff willfully and knowingly after the first call." Please state which defendant you are referring to and please state each and every fact which you claim supports your allegations that the defendant's conduct was "willful" and "knowing."

9.     Interrogatory:    Since your phone system is automated ; these are robo calls with a machine calling and scripted automated messages left or if one picks up then one has to wait until a human being takes over the call. All named parties are responsible.

**Request for Production No. 9:** With reference to your allegation in ¶40 of your Amended Complaint, please produce each and every document which you have which supports your allegations that the defendant's conduct was either willful or knowing.

9.     Production:     The first call can be accidental but after that by definition calls are made willingly and knowingly. I have no idea who is calling since a machine leaves an automated message and if I should pick up I never know who the party at the other might be.

**Request for Admission 11:** Do you admit that on June 21, 2012, you left a voice mail message requesting that defendants continue to call you on your home phone number because you were causing all of the calls to your home phone number to be transferred to your cell phone because you were not at home?

11.     Request for Admission:     I have no idea whether I left a message on June 21, 2012. Apparently you claim you have a copy of a recording. That should have been produced by now. Please send me the taped message. In any case, this will be requested during discovery if it is not sent immediately.

I know that at one point I had attempted to find an agreeable resolution and there were several attempts to end suit but that would have been the only reason I may have left such a message and it was only for that purpose alone and not a carte blanche to call me ad infinitum (Exhibit 7). I need to listen to message as it could be taken out of context. In any event calls made according to Exhibit 3 were made prior to the date of June 12, 2012. It appears that to avoid a time consuming legal battle I attempted a last ditch offer to end the differences. I had informed Ms. Daily-Thomson that my time was valuable and I did not have time to fight a law firm and an institution such as Citibank; it would cost me much more than paying them to get them off my back as the time and effort to come up against such forces would be most distressing. If I recollect correctly instead of getting back to me with a counter offer or an explanation the response was issuing a summons and the filing of a complaint.

**Interrogatory No. 10:** If your response to Request for Admission 11 was anything but a

complete, unqualified admission of said Request for Admission, please describe the voice mail message which you claim you left for defendants on June 21, 2012?

10.     **Interrogatory:**     There is no way for me to remember every conversation, message or communication I had several years ago. My objective at the time was to get on with my life and spend as little time as possible on non-productive activities. I certainly did not keep detailed notes with an intention of a long drawn-out legal battle.

**Request for Production No. 10:**  Except as otherwise produced herein, please produce a copy of each and every letter which you claim you sent defendants between January 1, 2011 and the time of the commencement of this suit.

10.     **Production:**     Object as not relevant. Notwithstanding all relevant correspondence and documents that have a bearing on the case will be produced at the right time. This lawsuit is predicated on FDCPA, TCPA, CUTPA etc. which are a consequence of the actions of HLS and Citibank NA and not on the debt itself.

**Request for Admission No. 12:**  Do you admit that you never indicated to any one calling from the Law Office Howard Lee Schiff that the calls were inconvenient?

12.     **Request for Admission:**     Denied. On the contrary I recall informing Ms. Dumont on several occasions when I was traveling on business that is was not suitable for me to speak especially since I was on my cell phone and I was trying to make a living.

**Interrogatory No. 11:**  If your response to Request for Admission 12 is anything but a complete, unqualified admission of said Request for Admission, please state the following:
(a) Each and every instance in which you stated that the calls were inconvenient, including the date and time of each call, and the name of the person to whom you were speaking.
(b) Please state what you said to the caller; and
(c) Please state why you claimed that these calls were inconvenient.
SHOULD BE INTERRATORY 11:

10.     **Interrogatory:**     It is impossible for me to admit truthfully as to every instance, day and time of every call and what was said exactly. Please refer to above response. Suffice it to say that all calls made from HLS were inconvenient as their purpose was nothing more than to collect on an alleged and disputed debt.

10

F.      As used herein, "Amended Complaint" shall refer to the Amended Complaint filed by Plaintiff in this action on or about March 13, 203:4.

G.      As used herein, the FDCPA shall refer to the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.,* or any part thereof.

H.      As used herein, the TCPA shall refer to the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.,* or any part thereof.

I.      The "debt" shall refer to tITe balance due and owing plaintiff on his Citibank Platinum Select MasterCard with an account ending in #1181 which was charged off by Citibank in February 2011.

J.      'The Superior Court Action" shall refer to the suit commenced the Superior Court, of the State of Connecticut, Judicial District of Stamford, by return date of April 10, 2012, bearing civil docket number, CV 12 60136165, and entitled, *Citibank, N.A. v. Nabil R. GhawL*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Request for Admission 1:** Do you admit that the letter dated July 9, 2011, attached hereto as **Exhibit I,** is a true and correct copy of a letter you received from the Law Offices Howard Lee Schiff in July 2011?

**Admitted.**

**Interrogatory 1:** If your response to Request for Admission 1 was anything but a complete, unqualified admission of said Request for Admission, please state when you received the letter dated July 9, 2011.

**Admitted.**

**Request for Production 1:** If your response to Request for Admission 1 was anything but a complete, unqualified admission of said Request for Admission, please produce a copy of the July 9, 2011 which you received from the Law Offices Howard Lee Schiff.

**Admitted.**

**Request for Admission** 2: Do you admit that the letter stating "Faxed on August 28th, 2012" attached hereto as **Exhibit 2**, is a true and correct copy of the letter which you sent to the Law Offices Howard Lee Schiff on or about August 28, 2012?

**Admitted.**

**Interrogatory 2:**  Please state when you first requested validation of the debt from the Law Offices Howard Lee Schiff as referenced in your Amended Comlaint dated March 12, 2014 at 14.

**First requested validation on July 15, 2011 in response to dunning letter dated July 9, 2011.**

**Request for Production** 2: Please produce a copy of each and every letter or other document which you claim supports your allegations that plaintiff requested validation of the debt at any time after July 9, 2011, including, but not limited to a copy of the letter you claim that you sent defendants on or about July 15, 2011 and any proof that you have that any proof these letters were sent and/or received by defendants.

**If memory serves me properly I mailed the July 15, 2011 around the same time by US postal service first class mail. Since I did not send the letter by registered mail I have no proof that HLS received any of my correspondence. I sent most of my mail to HLS by first class mail and priority delivery.  By the same token neither can CIB or HLS prove that I received any of their communications although since communication was constant I have to assume that all correspondence was received.**

**Request for Admission** 3: Do you admit that plaintiff never requested that defendants cease calling him?

**Denied.**

**Interrogatory 3:** If your response to Request for Admission 3 was anything but a complete, unqualified admission of said Request for Admission, please state the following:
(a) Each and every instance i n which you requested that telephone calls stop, including the date, time and the name of the person you spoke to at defendant's law office;
(b) Describe what you stated to defendants which was intended to convey that telephone calls were to cease; and
(c) Please state each and every instance in which you claim that you were called at usual time or place or a place know or which should be known to be inconvenient as alleged in the Amended Complaint at ¶20.

**I do not recollect every instance in which I requested calls stop. I do remember that I informed HLS et al that they were calling my cell phone. The calls were always inconvenient as they distracted me from my work. In any case the fact that the calls were made by an automated service (ATDS) is itself a violation.**

**Request for Production 3:** Please produce all letters or other documents which you claim support your allegations that you were called by defendants after you requested no more telephone calls and/or that you were called at an usual time or place or a place know or which should be known to be inconvenient as alleged in the Amended Complaint at ¶20.

**The 211 telephone calls made by Citibank and the 100 (approximately) calls from HLS are documented by time and day they were made. The information was derived from a CD that was sent to me by my phone company. A copy of that CD with all the incoming calls received by Plaintiff will be included is included.**

**Request for Admission 4:** Do you admit that the letter stating "Faxed to 860-528-7602 on September 3, 3012" attached hereto as **Exhibit 3**, is a true and correct copy of a letter you sent to defendants on or about September 3, 2012?

**This appears to be a true copy.**

**Interrogatory 4:** Please list each call which you claim was made in violation of the FDCPA, and include in your answer: (a) the date and time of each call; (b) the telephone; number to which the call was made; (b) whether the call was made to a cell phone or a non cell phone number; and (c) the carrier who provided your cell phone or phone service for each such call made to you.

**All calls made to my 203-531 5122 number are on the CD included. Plaintiff had to separate calls that emanated from Citibank and Howard L. Schiff law offices by painstakingly going through thousands of incoming calls to discern which ones originated from them. It is more than likely that many other calls were missed. HLS kindly sent me the record they have of all outgoing calls mad to Plaintiff. In fact, their records indicate about 30 more calls. I would imagine the same to be the case should CIB comply with motion to compel and produce all the records they have.**

**Request for Production 4:** Please produce copies of all cell or non-cell phone bills showing calls which were made on the dates on which you claim calls were made to you by defendants in violation of the FDCPA.

**The enclosed CD addresses the above request. There are FDCPA, TCPA and CUTPA violations that are enumerated in the Motion for Summary Judgment.**

**Request for Admission 5:** Do you admit that the letter dated September 8, 2012 attached hereto as **Exhibit 4**, is a true and correct copy of a letter you sent to defendants on or about September 8, 2012?

**Object as this is not relevant. The complaint is based on the method of collection and not the alleged debt. The letter dated September 8, 2012 has not been included. Notwithstanding I admit that any letter that contains my signature is from me. These are the exact same discovery questions that have been addressed by Plaintiff**

on March 10, 2015 in defendant's integrated responses. Plaintiff had addressed each single concern and nothing has changed other than more violations have been uncovered. I am including my previous responses, which address each item by item. Plaintiff apologizes if Defendant is inconvenienced by having to refer back to his own questions. Plaintiff has made a good faith effort to reply within the 30 days. It is most tiresome to have to reiterate the same responses albeit in a different format.

**Interrogatory 5:** Please list each call which you claim was made in violation of the TCPA, and include in your answer: (a) the date and time of each call; (b) the telephone number to which the call was made; (b) whether the call was made to a cell phone or a non-cell phone number; and (c) the carrier who provided your cell phone or phone service for each such call made to you.

This is the same response as before. Kindly refer to interrogatory 5 that is included. In any case the CD should more than satisfy this request.

**Request for Production 5:** Please produce copies of all cell or non-cell phone bills showing calls which were made on the dates on which you claim calls were made to you by defendants in violation of the FDCPA.

Please refer to above response. Included is every single call made by Citibank, NA and HLS et al by time and date. Defendant is welcome to go through the innumerable calls that are on the CD. They may find many more calls made that Plaintiff had missed. The ones included are the ones that Plaintiff has definitive evidence that he can point to. The Motion for Summary Judgment has more detailed notes on these calls and the reason/s for each violation.

**Request for Admission 6:** Do you admit that the letter dated September 17, 2012 attached thereto as **Exhibit 5**, is a true and correct copy of a letter you sent to defendants on or about September 17, 2012?

Since Plaintiff does not have such letter at his immediate disposal he refers Defendant to the original response made in the included integrated answers. Plaintiff will admit to any correspondence that contains his authentic signature.

**Interrogatory No. 6:** Please list each and every telephone number you have had or used from January 1, 2011 to the present time, and for each number, indicate: (a) whether the number is for a cell phone or a non-cell phone; (b) whether the number is for personal or business uses; and (c) whether you have provided the number to Citibank and/or defendants for calls relating to this debt.

The numbers if any that were provided to Citibank and defendants are not the numbers that were called as the included CD clearly shows. A detailed explanation has been given in my Motion for Summary Judgment as in all other conversations and correspondence as to the way my telephone system is set up. It is redundant to continuously ask the same questions in a different way. The replies will not change as they are based on facts and not hearsay.

Moreover, no consent was ever given to either Citibank or HLS to robo-call me.

**Request for Production No. 6:** Please produce all documents which support your response to Interrogatory No. 5 and/or show that your telephone number(s) were for business or personal use.

Please refer to the filed Motion for Summary Judgment that includes 25 exhibits. Also refer to previous response given which has not changed. The CD is added evidence.

**Request for Admission 7:** Do you admit that defendants do not control what appears as caller identification on your phone(s)?

**Denied.**

**Interrogatory 7:** Your response to Request for Admission 7 was anything but a complete, unqualified admission of said Request for Admission, please state the following:
(a) Each and every reason for your response;
(b) Describe each and every witness with information supporting or tending to support your response, including the name, address and telephone number of each witness; and
(c) Describe each and every document in your possession and control supporting or tending to support your response.

**Citibank and HLS et al have that information and documents in their possession. Plaintiff feels that many of these questions are moot, as they have been addressed before. The Motion for Summary Judgment and pertaining exhibits contain all such information.**

**Request for Production 7:** If your response to Request for Admission 7 was anything but a complete, unqualified admission of said Request for Admission, please produce each and every document that supports or tends to support your response thereto.

**Please refer to above response.**

**Request for Admission 8:** Do you admit that each time that the Law Offices Howard Lee Schiff called you, the caller indicated his or her name and that he or she is calling from the Law Offices Howard Lee Schiff?

**That is definitely not true and denied.**

**Interrogatory 8:** If your response to Request for Admission 8 was anything but a complete, unqualified admission of said Request for Admission, please state the following:

(a) Each and every reason for your response;

(b) Describe each and every witness with information supporting or tending to support your response, including the name, address and telephone number of each witness; and

(c) Describe each and every document in your possession and control supporting or tending to support your response.

**Kindly refer to MSJ. The enclosed CD is additional evidence. I could not have possibly kept a record of all such incoming calls. In any case whether the name of Citibank or HLS appeared or not does not affect the TCPA and CUTPA violations. Only one violation, of which there are many, is needed for the FDCPA to be effected.**

**Request for Production 8:** If your response to Request for Admission 8 was anything but a complete, unqualified admission of said Request for Admission, please produce each and every document that supports or tends to support your response thereto.

**Citibank and Howard L. Schiff Law offices have that information in their possession.**

**Request for Admission 9:** Do you admit that the letter dated October 22, 2012 attached hereto as Exhibit 6 is a true and correct copy of a letter you sent defendants on or about October 22, 2012?

**Exhibit 6 is not included. My responses have not changed from before. Any letter with my authentic signature is mine. I do not deny any of the correspondence sent to CIB and HLS if they contain my authentic signature. To date I have not seen any documentation that makes me suspect my signature.**

**Request for Admission 10:** Do you admit that attached hereto as **Exhibit** 7 is a true and correct copy of the Appearance which you filed in the Superior Court action?

**My response has not changed. The appearance form is available to the public as it is in the official court records.**

**Interrogatory No. 9:** In your Amended Complaint at ¶40, you allege that "[d]efendnat made the calls to Plaintiff willfully and knowingly after the first call." Please state which defendant you are referring to and please state each and every fact which you claim supports your allegations that the defendant's conduct was "willful" and "knowing."

**Please refer to my previous response of March 10, 2015. The Motion for Summary Judgment has all such information.**

**Request for Production No. 9:** With reference to your allegation in 1f40 of your Amended Complaint, please produce each and every document which you have which supports your allegations that the defendant's conduct was either willful or knowing.

**The Motion for Summary Judgment has all the above information requested. After the first call, which could be accidental, all calls made by CIB and HLS were made knowingly and willfully. The terminology and definition of such terms are available in any dictionary.**

**Request for Admission 11:** Do you admit that on June 21, 2012, you left a voice mail message requesting that defendants continue to call you on your home phone number because you were causing all of the calls to your home phone number to be transferred to your cell phone because you were not at home?

**Plaintiff has requested a copy of that voice mail in all his discovery and communication with Defendants. He has not received that information to date.**

**Interrogatory No. 10:** If your response to Request for Admission **11** was anything but a    complete, unqualified admission of said Request for Admission, please describe the voice mail mesage which you claim you left for defendants on June 21, 2012?

**Plaintiff has requested a copy of that voice mail in all his discovery and communication with Defendants. He has received nothing to date.**

**Request for Production No. 10:** Except as otherwise produced herein, please produce a copy of each and every letter which you claim you sent defendants between January 1, 2011 and the time of the commencement of this suit.

**Plaintiff has admitted that any correspondence that contains his authentic signature is his. Defendant has all such correspondence and Plaintiff has nothing to add.**

**Request for Admission No. 12:** Do you admit that you never indicated to any one calling from the Law Office Howard Lee Schiff that the calls were inconvenient?

**Denied.**

**Interrogatory No. 11:** If your response to Request for Admission **12** is anything but a complete, unqualified admission of said Request for Admission, please state the following:
(a)  Each and every instance in which you stated that the calls were inconvenient, including the date and time of each call, and the name of the person to whom you were speaking.
(b)  Please state what you said to the caller; and
 c)Please state why you claimed that these calls were  inconvenient.

**Request for Admission No. 13:**  Do you admit that the telephone number 203 531 5122 is a land line or a non-cell phone number?

NOT ANSWERED

**Request for Admission No. 14:**  Do you admit that the telephone number 203 531 5122 is a business telephone number?

14.    Request for Admission:    Denied with an explanation. The 203-531 5122 is a home/office line that is used by me in my private practice which encompasses personal, business and other issues. It is listed as a VOIP residential line (which according to TCPA is within their definition of a regulated line) in my personal name. All my lines are attached to that number. They are not forwarded but all phones ring simultaneously and I can pick up any one of the phones.

**Interrogatory No. 12:**  Please list all telephone numbers that you use or give out, and include in your response (a) whether the telephone number is a land line or non-cell phone number, or a cell phone; (b) whether the phone number is for personal, home, or business use; (c) whether calls to that number are automatically sent to a cell phone number from each number; and (d) the name of the customer, person or entity which appears on the telephone account for each telephone number.

12.    Interrogatory:    Once again my 203-531 5122 is my main line which I give out as my cell number as when it rings (calls not forwarded) so do all my mobile phones (which have changed over the years ). This reduces the inconvenience of friends, family, clients, and business colleagues etc, to maintain several numbers. My personal name appears on all numbers that I have including an 800 number as well as my present mobile numbers of 203-829-7841 and 203-718 8906 and other numbers that have changed over the years.

**Request for Production No. 12:**  Please produce all telephone records relating to the telephone number 203 531 5122.

12.    Production:    Exhibit 3 show all the numbers that came in from HLS. They are the numbers listed to the right and can be traced to HLS. I am in the process of completing my investigation as to other numbers used.

**Request for Production No. 13:**  Please produce a copy of all records of "countless calls"

11

which you claim that you received from the defendants between January 1, 2011 and the commencement of this suit which you claim were made in violation of 15 U.S.C. §1692d(5).

13.     Production:     Please refer to Exhibits. The TCPA is a four statute, the FDCPA 1 year and CUTPA 3 years.

**Interrogatory No. 13:** Please describe all "actual damages" you claim that you have suffered as a result of the alleged conduct by defendants herein, and include in your answer: (a) the type of damage you claim; and (b) the amount of damages you are claiming.

13.     Interrogatory:     Defendants have a preliminary damage report. Suffice it to say that the time for me to study and research the complicated laws have taken away from my business caused me sleepless nights and health issues. One cannot measure such damages purely in monetary terms. Any dollar number is not sufficient to compensate me.

**Request for Production No. 14:** Please produce all documents which support your claim for "actual damages" as described in Interrogatory No. 13 above.

14.     Production:     Every individual measures such actual damages in many different ways. I leave it to the discretion of the court to come with a dollar figure as to me my time and health are priceless.

**Interrogatory No. 14:** Please describe all "statutory damages" you claim, and include in your answer: (a) the statute you rely upon for each claim of damages; and (b) the amount of damages you are claiming.

14.     Interrogatory:     They have been spelled out in the complaint and in detail in the motion for summary judgment. A damage report has been given to Ms. Dumont.

**Request for Production No. 15:** Please produce all documents which support your claim for "statutory damages" as described in Interrogatory No. 14 above.

15.     Production:     Statutory damages are in the damage report and more specifically in the complaint and will be displayed in detail when research and investigation is completed

**Interrogatory No. 15:** Please describe all "punitive damages" you claim, and include in your answer: (a) the authority you rely upon for each claim of damages; and (b) the amount of damages you are claiming.

12

**Plaintiff cannot truthfully answer this question  and therefore denies this allegation.**

**MSJ has much more information that goes over the above request.**

- **Request for Admission No. 13:** Do you admit that the telephone number 203  531 5122 is a land line or a non-cell phone  number?

**The MSJ addresses above in great detail.**

**Request for Admission  No. 14:** Do you admit that the telephone  number 203  531 5122 is a business telephone  number?

**Please refer to above response**.

**Interrogatory No. 12:**  Please list all telephone  numbers that you use or give out, and include in your response (a) whether the telephone  number is a land line or non-cell phone number, or a cell phone; (b) whether the phone number is for personal, home, or business use; (c) whether calls to that number are automatically  sent to a cell phone number from each number; and (d) the name of the customer, person or entity which appears on the telephone account for each telephone number.

**These are redundant questions as they are addressed in great detail in MSJ.  Additionally the responses have not changed from included March 10, 2015 answers.**

**Request for Production No. 12:** Please produce all telephone records relating to the telephone number 203  531 5122.

**Included in the enclosed CD.**

**Request for Production No. 13:** Please produce a copy of all records of "countless calls" which you claim that you received from the defendants between January 1, 2011 and the commencement of this suit which you claim were made in violation of 15 U.S.C. §1692d(5).

**This has been addressed many times. The MSJ goes into much detail. See above response and that given in included March 10, 2015 documentation.**

**Interrogatory No. 13:** Please describe all "actual damages" you claim that you have suffered as a result of the alleged conduct by defendants herein, and include in your answer: (a) the type of damage you claim; and (b) the amount of damages you are claiming.

**This is a subjective topic and Plaintiff will leave it to the Court to decide.**

**Request for Production No. 14:** Please produce all documents which support your claim for "actual damages" as described in Interrogatory No. 13 above.

**Please refer to previous and above response.**

**Interrogatory No. 14:** Please describe all "statutory damages" you claim, and include in your answer: (a) the statute you rely upon for each claim of damages; and (b) the amount of damages you are claiming.

**MSJ spells this out in no uncertain terms.**

**Request for Production No. 15:** Please produce all documents which support your claim for "statutory damages" as described in Interrogatory No. 14 above.

**MSJ spells this out in no uncertain terms**

**Interrogatory No. 15:** Please describe all "punitive damages" you claim, and include in your answer: (a) the authority you rely upon for each claim of damages; and (b) the amount of damages you are claiming.

**Will let the court decide.**

**Request for Production No. 16:** Please produce all documents which support your claim for "punitive damages" as described in Interrogatory No. 15 above.

## Contained in MSJ

**Interrogatory No. 16:** Please state whether you have recordings of any calls which you claim were made to you by defendants in violation of the FDCPA or TCPA, and include in your response:  (a) the manner or method of recording each call; (b) the name of the person or entity which recorded each call; and (c) the location of each such recordings at the present time.

**On CD. The recordings are not of all telephone calls received; only those that were left in the voice mailbox which are automatically recorded so that they can be reviewed later.**

**Request for Production No. 17:** Please produce a copy of any and all recordings of telephone calls which you currently have in your possession.

**CD is included. Recordings of voice messages are on hard drive of computer. Plaintiff will forward as soon as a technical specialist helps him do this. Defendant should reciprocate by sending me the documentation on the recordings they have particularly the one of June 21, 2012.**

**Recordings are irrelevant at this point of the proceedings, as they do not change any of the facts submitted.**

**Interrogatory No. 17:** Attached hereto as Exhibit 8 is a document which was attached to your Amended Complaint as "Exhibit lD." Please describe what this document is and include in your response: (a) who provides the information on this document; {b) what "Optimum" or "Optimum Voice" means; (c) what the listing provided shows; (d) what are the inbound and outbound telephone numbers; and (e) whose  number is 860 888   1798.

**My telephone carrier is Optimum. It is a division of Cablevision. The service is a Voice over Internet Protocol (VOIP). I am including a CD which is an archived record provided by my telephone carrier.**

This contains all incoming calls made. Plaintiff would be grateful if CD is returned to him as this is the only copy he has. One has to scroll through all the numbers to find those that originated from Citibank and Howard L. Schiff PC. The 860-888-1798 is a HLS telephone number. Since you have kindly provided a CD with all your outgoing calls made to me then you have a record of all your outgoing calls.

**Interrogatory No. 18:** Attached hereto as Exhibit 9 is a document which was attached to your Amended Complaint as "Exhibit 2." Please provide the date of the statement on which this notice appeared.

**The statement from Citibank is one that was printed and mailed to Plaintiff about 2/22/2010.**

**Interrogatory No. 19:** With reference to Exhibit 9 attached hereto, please state whether the telephone number 203 532 9459 is or was a cell phone number; (b) who is named on the account as to the holder of this telephone number; and (c) whether telephone calls placed to this number were forwarded to 203 531 5122.

**Object as this interrogatory is irrelevant to the complaint. The only reason for the Exhibit is to show that the 203-531 5122 was not disclosed or released to either CIB or HLS.**

**Interrogatory No. 20:** With reference to Exhibit 9 attached hereto, please state whether the telephone number 203 930 6063 is or was a cell phone number; (b) who is named on the account as to the holder of this telephone number; and (c) whether telephone calls placed to this number were forwarded to 203 531 5122.

**Object as this interrogatory is irrelevant to the complaint. The only reason for the Exhibit is to show that the 203-531 5122 was not disclosed or released to either CIB or HLS.**

15.    Interrogatory:    See above response 15. Applies to punitive damages as well.

**Request for Production No. 16:** Please produce all documents which support your claim for "punitive damages" as described in Interrogatory No. 15 above.

# 16.    Production:    See above.

**Interrogatory No. 16:** Please state whether you have recordings of any calls which you claim were made to you by defendants in violation of the FDCPA or TCPA, and include in your response: (a) the manner or method of recording each call; (b) the name of the person or entity which recorded each call; and (c) the location of each such recording at the present time.

16.    Interrogatory:    Included on my hard drive from messages left. I only have the recordings, which were left, on my voice box. Unlike HLS I do not record my conversations as words can be taken out of context. That is why I have requested that HLS correspond with me in writing.

**Request for Production No. 17:** Please produce a copy of any and all recordings of telephone calls which you currently have in your possession.

17.    Production:    In Exhibits. Please provide email so I can forward as attachments. In previous communications I had listed each call in detail and why it was a violation. It is with Defendant and can be found in the court pleadings.. Similarly I request that all records in your possession be delivered to me.

**Interrogatory No. 17:** Attached hereto as **Exhibit 8** is a document which was attached to your Amended Complaint as "Exhibit 1D." Please describe what this document is and include in your response: (a) who provides the information on this document; (b) what "Optimum" or "Optimum Voice" means; (c) what the listing provided shows; (d) what are the inbound and outbound telephone numbers; and (e) whose number is 860 888 1798.

17.      Interrogatory:      Your Exhibit 8 has been selectively chosen and accompanying paperwork was omitted. Consequently, this not an accurate picture. I had submitted complete Exhibits of phone logs with notes. I am now sending you an updated record. The outbound calls are of no significance to my suit. The number displayed in defendant's Exhibit 8 is 860 882 1798 and not 860-888 1798. That number is or was an HLS number. I shall send more comprehensive evidence. This would only be a partial list as going through hundreds if not thousands of documents and telephone numbers is a painstaking process.

**Interrogatory No. 18:** Attached hereto as **Exhibit 9** is a document which was attached to your Amended Complaint as "Exhibit 2." Please provide the date of the statement on which this notice appeared.

18.      Interrogatory:      The statement is just prior to 02/22/2010 as is shown under account terms in the statement. You claim you have all the statements which I do not.

**Interrogatory No. 19:** With reference to **Exhibit 9** attached hereto, please state whether the telephone number 203 532 9459 is or was a cell phone number; (b) who is named on the account as to the holder of this telephone number; and (c) whether telephone calls placed to this number were forwarded to 203 531 5122.

19.      Interrogatory:      Object as this is completely irrelevant. The only reason for that Exhibit was to show that I had not released the number 203-531 5122 to either HLS or Citibank.

**Interrogatory No. 20:** With reference to **Exhibit 9** attached hereto, please state whether the telephone number 203 930 6063 is or was a cell phone number; (b) who is named on the account as to the holder of this telephone number; and (c) whether telephone calls placed to this number were forwarded to 203 531 5122.

20.      Interrogatory:      Object as this is completely irrelevant. The only reason for Defendant's Exhibit 9 was to show that I had not released the number 203-531 5122 to either HLS or Citibank .

DEFENDANTS

/S/*Jeanine M. Dumont*
Jeanine M. Dumont, Bar No. ct 05021

14

Law Offices Howard Lee Schiff PC
510 Tolland Street
East Hartford, Connecticut 06108
Telephone (860) 528 9991
Fax (860) 528 7602

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing and any attachments hereto were mailed on JANUARY 19, 2015 to the following counsel of record:

**DEFENDANT**
NABIL GHAWI
14 HAWTHORNE ST S #A
GREENWICH, CT.  06831

/S/*Jeanine M. Dumont*
Jeanine M. Dumont

## THIS COMMUNICATION IS FROM A DEBT COLLECTOR.

15

JD-CL-12 Rev. 1-12
P.B. §§ 3-1 thru 3-8, 3-8, 10-13, 25A-2

STATE
SUP

# *EXHIBIT 6*

**Notice To Self-Represented Parties**
*A self-represented party is a person who represents hims*
*represented party and you filed an appearance before and yo*
*you must let the court and all attorneys and self-represented p*
*changed your address by checking the box below:*

☐ *I am filing this appearance to let the court and all attorneys and self-represented*
*parties of record know that I have changed my address. My new address is below.*

Program date  6/11/12-12
Docket number  CV 1260 13516

**Name of case** *(Full name of Plaintiff vs. Full name of Defendant)*
HOWARD LEE SCHIFF   VS.   NABIL GHAWI

| Judicial District | Housing Session | Small Claims | Geographic Area number |
|---|---|---|---|
| ☒ | | | |

Address of Court *(Number, street, town and zip code)*
123 HOYT ST, STAMFORD, CT 06905

Scheduled Court date *(Criminal/Motor Vehicle Matters)*

## Please Enter the Appearance of

**Name of self-represented party** *(See "Notice to Self-Represented Parties" at top), or name of official, firm, professional corporation, or individual attorney*
NABIL GHAWI

Juris number of attorney or firm

**Mailing Address** *(Number, street) (Notice to attorneys and law firms - The address to which papers will be mailed from the court is the one registered or affiliated with your juris number. That address cannot be changed in this form.)*
14 HAWTHORNE ST S

Post office box

Telephone number *(Area code first)*
(203) 531 5122

| City/town | State | Zip code | Fax number *(Area code first)* | E-mail address |
|---|---|---|---|---|
| GREENWICH | CT | 06831 | (203) 4136349 | ghawi2001@yahoo.com |

in the case named above for: ("x" one of the following parties; if this is a Family Matters case, also indicate the scope of your appearance)

☐ The Plaintiff *(includes the person suing another person).*
☐ All Plaintiffs.
☐ The following Plaintiff(s) only: _____
☒ The Defendant *(includes the person being sued or charged with a crime).*
☐ The Defendant for the purpose of the bail hearing only *(In criminal and motor vehicle cases only).*
☐ All Defendants.
☐ The following Defendant(s) only: _____
☐ Other (Specify): _____
☐ This is a Family Matters case and my appearance is for: ("x" one or both)
    ☐ matters in the Family Division of the Superior Court    ☐ Title IV-D Child Support matters

*Note: If other counsel or a self-represented party has already filed an appearance for the party or parties "x'd above, put an "x" in box 1 or 2 below.*

1. ☐ This appearance is in place of the appearance of the following attorney,
    firm or self-represented party on file (P.B. Sec. 3-8): _____    *(Name and Juris Number)*

2. ☐ This appearance is in addition to an appearance already on file.

**I agree to accept papers (service) electronically in this case under Practice Book Section 10-13**    ☒ Yes    ☐ No

| Signed *(Individual attorney or self-represented party)* ▶ | Name of person signing at left *(Print or type)* NABIL GHAWI | Date signed 4/11/2012 |
|---|---|---|

## Certification

I certify that a copy of this document was mailed or delivered electronically or non-electronically on *(date)* 4/11/2012  to all attorneys and self-represented parties of record and that written consent for electronic delivery was received from all attorneys and self-represented parties receiving electronic delivery.

Name and address of each party and attorney that copy was mailed or delivered to
KEITH A. TIBERIO
510 TOLLAND ST.
E. HARTFORD, CT 06108

For Court Use Only

| Signed *(Signature)* ▶ | Print or type name of person signing NABIL GHAWI | Date signed 4/11/2012 | Telephone number 203-531-5122 |
|---|---|---|---|

*If necessary, attach an additional sheet or sheets with the name of each party and the address which the copy was mailed or delivered to.*