UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

<table>
<tr><td>NABIL GHAWI,<br><em>Plaintiff</em>,<br><em>v.</em><br>LAW OFFICES HOWARD LEE SCHIFF, P.C.,<br>JEANINE M. DUMONT, HEATH A. TIBERIO,<br>REBECCA JADACH, QUANESHIA DAILEY-<br>THOMPSON, and CITIBANK, N.A.,<br><em>Defendants</em>.</td><td>Civil No. 3:13-cv-115 (JBA)<br><br>November 10, 2015</td></tr>
</table>

**RULING ON MOTIONS FOR SUMMARY JUDGMENT**

On December 1, 2014, this Court ruled [Doc. # 64] on Defendants' motion to dismiss, granting the motion in part and denying it in part. Following the Court's ruling, the following claims remained for adjudication: (1) violations of the Federal Debt Collection Practice Act ("FDCPA"), 15 U.S.C. §§ 1692c(a)(1), d(5), d(6), e(10), and g(b), by Defendants Howard Lee Schiff, P.C., Jeanine M. Dumont, Heath A. Tiberio, Rebecca Jadach, and Quaneshia Dailey Thompson ("the HLS Defendants"); (2) violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), by the HLS Defendants and Defendant Citibank; and (3) violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110, by the HLS Defendants.

These claims can be organized into four categories: (1) claims arising out of Mr. Ghawi's allegation that the HLS Defendants, on behalf of Citibank, as well as Citibank itself, called his cell phone without his consent using an auto-dialer (TCPA § 227(b), CUTPA § 42-110); (2) claims arising out of Mr. Ghawi's allegation that the HLS Defendants harassed him and knowingly called him on his business line without his consent (FDCPA §§ 1692c(a)(1), d(5); CUTPA § 42-110); (3) claims arising out of Mr.

Ghawi's allegation that the HLS Defendants falsely represented via the caller identification on Mr. Ghawi's phone that they were telemarketers (FDCPA §§ 1692d(6), e(1), CUTPA § 42-110); and (4) claims arising out of Mr. Ghawi's allegations that although he requested validation of his debt, the HLS Defendants refused to provide such validation (FDCPA § 1692g(b), CUTPA § 42-110).

Mr. Ghawi [Doc. # 89], the HLS Defendants [Doc. # 102], and Citibank [Doc. # 154] have each filed motions for summary judgment. For the following reasons, Mr. Ghawi's motion is denied, Citibank's motion is granted in part and denied in part, and the HLS Defendants' motion is granted in limited part and denied in large part.

## I.      Discussion[1]

### A.  Mr. Ghawi's Motion for Summary Judgment

Mr. Ghawi's motion for summary judgment fails to adduce any competent evidence that demonstrates the lack of genuine dispute of material facts relative to any of his claims. In support of his claims, Mr. Ghawi offers the following evidence: (1) a list

---

[1] Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

created by Mr. Ghawi from unspecified sources of 211 pre-recorded calls between November 2010 and February 2011 that Mr. Ghawi claims can be traced to Citibank (*see* Ex. C to Pl.'s Mem. Supp. Mot. for Summ. J. [Doc. # 89-1]); (2) phone records for the phone number at issue (ending 5122) from 2009 until 2012, which do not indicate which incoming calls Mr. Ghawi attributes to Citibank or HLS, nor how he knows those numbers belong to Citibank or HLS; (3) a list of 73 calls, created by Mr. Ghawi from unspecified sources, by HLS between July 2011 and June 21, 2012, and three calls by HLS in November and December 2014 (*see* Ex. L to Pl.'s Mem. Supp.); (4) HLS's phone records, produced by HLS, showing that it called Mr. Ghawi 219 times between July 9, 2011 and June 17, 2012 (*see* HLS Call Log, Ex. RR to Pl.'s Obj. to Citibank's 56(a)Stmt [Doc. # 116]); (5) a list of voicemail messages Mr. Ghawi alleges were left by HLS (*see* Ex. N to Pl.'s Mem. Supp.); (6) a letter dated July 15, 2011 from Mr. Ghawi to HLS requesting validation of his debt (*see* Ex. I to Pl.'s Mem. Supp.); and (7) HLS's responses to Mr. Ghawi's requests for admissions, in which HLS admits that it utilized auto-dialers to call Mr. Ghawi but claims that it stopped doing so on June 21, 2012 when Mr. Ghawi informed Defendants that all calls to his home phone number were transferred to his cell phone (*see* Ex. O to Pl.'s Mem. Supp.).

This evidence alone is insufficient to demonstrate a lack of genuine dispute as to any material fact. HLS filed an affidavit by Christopher Moylan, a partner and the Operations Manager at HLS, in which Mr. Moylan claims that: HLS never received Mr. Ghawi's July letter seeking validation of his debt; Mr. Ghawi did not tell HLS to stop calling him until August 10, 2012 (at which point HLS stopped calling); and Mr. Ghawi's list of calls allegedly made by HLS is inaccurate. (Moylan Aff. [Doc. # 102-3] ¶¶ 4, 10, 12,

13.) All of Mr. Ghawi's claims therefore implicate disputed facts and his motion for summary judgment cannot be granted.

In addition, Mr. Ghawi is again reminded that he cannot add claims by raising them in a motion for summary judgment. The following claims, mentioned by Mr. Ghawi do not appear in his Amended Complaint or were dismissed and therefore are not addressed here: (1) the letter Mr. Ghawi received from HLS dated July 9, 2012 is unsigned and this is a violation of the FDCPA (Pl.'s Mem. Supp. at 3); (2) two law firms aside from HLS attempted to collect debt from Mr. Ghawi and this is a violation of the FDCPA (*id.*); (3) HLS was required to have a consumer collection agency license (*id.* at 4, 5); (4) Citibank violated CUTPA (*id.* at 27); (5) HLS has prevented Mr. Ghawi from communicating with Citibank (*id.* at 4); (6) HLS and/or Citibank violated TCPA § 227(b)(1)(B) (*id.* at 18); (7) Defendants violated the "Connecticut Mini TCPA" (*id.* at 25); (8) Defendants violated the "state UDAP statute" (*id.* at 28); and (9) Defendants violated § 227c(5) (Pl.'s Opp'n to HLS's Mot. for Summ. J. [Doc. # 121] at 22).

### B.  HLS and Citibank's Motions for Summary Judgment

Defendants also move for summary judgment.[2] Their claims are discussed below.

#### 1.  Validation of the Debt (FDCPA § 1692g(b); CUTPA § 42-110)

The HLS Defendants assert that summary judgment should be granted in their favor on Mr. Ghawi's validation claims for two reasons: (1) they never received Mr. Ghawi's July 2011 letter requesting validation of his debt (HLS's Mem. Supp. Mot. for

---

[2] The Court does not discuss HLS's arguments addressed to claims Mr. Ghawi has not made in his Amended Complaint or that were previously dismissed, as described above.

Summ. J. [Doc. # 102-1] at 6–8; Moylan Aff. ¶ 4); and (2) Mr. Ghawi's claim is barred by the statute of limitations (HLS's Mem. Supp. at 8.). HLS's assertion that it did not receive the letter Mr. Ghawi has produced, however, does little more than underscore this as a fact as to which there is a genuine issue of material fact, and summary judgment is not appropriate.

HLS's statute of limitations argument fares no better. Under 15 U.S.C. § 1692k(d), any action brought under the FDCPA must be filed "within one year from the date on which the violation occurs." HLS argues that since Mr. Ghawi initiated this lawsuit on January 24, 2013, no conduct that took place before January 24, 2012 can form the basis of his claims. Because Mr. Ghawi alleges that he requested validation on July 15, 2011, HLS asserts that his claim is barred by the statute of limitations.

This argument is unpersuasive. The FDCPA provides that "[i]f the consumer notifies the debt collector in writing within [thirty days of receiving a notice of debt from the debt collector] that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment . . . and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). Because "'FDCPA causes of action accrue with each communication in violation of the Act,'" *Basile v. I.C. Sys., Inc.*, No. 08-cv-42(s), 2011 WL 4368510, at *4 (W.D.N.Y. Sept. 19, 2011) (quoting *Ehrich v. RJM Acquisitions LLC*, No. 09 CIV. 2696 (BMC) (RER), 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009)), every time the HLS Defendants contacted Mr. Ghawi attempting to collect on his debt between the beginning of the statutory period on January 24, 2012 (six months after Mr.

Ghawi claims to have requested validation of his debt) and April 12, 2012 (the date on which HLS sent Mr. Ghawi the validation) constituted a new violation of the Act. Since Mr. Ghawi alleges that the HLS Defendants contacted him repeatedly between January 24, 2012 and April 12, 2012, in violation of the FDCPA, Defendants' statute of limitation claim fails.

### 2. Autodialer/Prerecorded Calls to Cell Phone Without Prior Express Consent (TCPA § 227(b)(1)(A)(iii); CUTPA § 42-10)

All Defendants argue that Mr. Ghawi's claims regarding autodialer/prerecorded calls to his cell phone should be dismissed because the calls were not in fact to a cell phone. TCPA § 227(b)(1)(A)(iii) prohibits "any person within the United States" from making "any call (other than . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."

Mr. Ghawi's 5122 number is a Voice over Internet Protocol (VoIP) line provided by Optimum. (*See* Pl.'s Responses to Discovery Requests, Ex. 5 to HLS's Mem. Supp. at 84.) VoIP "is a technology that allows [users] to make voice calls using a broadband Internet connection instead of a regular (or analog) phone line. [W]hile some VoIP services only work over [a] computer or a special VoIP phone, other services allow [users] to use a traditional phone connected to a VoIP adapter." FCC, *Voice Over Internet Protocol (VoIP)*, https://www.fcc.gov/enycolopedia/voice-over-internet-protocol-voip (last visited August 6, 2015). "VoIP services convert [the user's] voice into a digital signal

that travels over the Internet. If [the user is] calling a regular phone number, the signal is converted to a regular telephone signal before it reaches the destination. VoIP can allow [users] to make a call directly from a computer, a special VoIP phone, or a traditional phone connected to a special adapter." *Id.*

Calls to Mr. Ghawi's 5122 number "simultaneously ring up to three additional phone lines and the call [is] connected to whichever phone answers first." (Optimum Voice, Find Me Feature, Ex. 4 to HLS's Mem. Supp. at 58.) Mr. Ghawi explained that the 5122 line is his "main line which [he] give[s] out as [his] cell number [because] when it rings . . . so do all [of his] mobile phones (which have changed over the years). This reduces the inconvenience of friends, family, clients, and business colleagues etc, to maintain several numbers." (Pl.'s Responses to Discovery Requests, Ex. 4 to HLS's Mem. Supp. at 45.)

Mr. Ghawi appears to raise two alternative arguments with respect to TCPA § 227(b)(1)(A)(iii): (1) that calls to his 5122 number violate § 227(b)'s restriction on calls to cell phone because the 5122 number connects to his cell phone, and he notified the HLS Defendants of this fact (*see* Ghawi Aff. [Doc. # 112] ¶¶ 6, 19, 20); and (2) that calls to his 5122 number violate § 227(b)'s restriction on calls to services for which the called party is charged for the call because the 5122 number, "which is tied to [his] cell phone is paid for by airtime" and he incurs an expense "in using the number for inbound calls when it rings to [his] cell phone" (Pl.'s Opp'n Mot. to Dismiss [Doc. # 61] at 5).

Citibank asserts that Mr. Ghawi "has not produced any evidence to suggest that the 5122 Number is **assigned** to any of the types of services specifically identified in Section 227(b)(1)(A)(iii), nor can Ghawi provide evidence establishing that he is charged

on a per call basis as distinguished from a monthly flat fee."[3] (Citibank's Mem. Supp. Mot. for Summ. J. [Doc. # 154-1] at 4 (emphasis added).)

The HLS Defendants contend, for their part, that they "did not call Mr. Ghawi on his cell phone" (HLS's Suppl. Responses to Discovery Requests, Ex. DD to Pl.'s Counter Aff. Rebutting Moylan Aff. [Doc. # 110] at 6), but that "on June 21, 2012 Mr. Ghawi told [them] that by calling his home phone number, the call would be transferred to his cell phone, and he consented to the calls to his home phone number for this purpose. . . . Mr. Ghawi never indicated or implied that any calls that he was having transferred from his non-cell phone line resulted in any additional charges by his telecommunications provider. . . . However, no dialer calls were made to Mr. Ghawi after June 21, 2012" (HLS's Responses to Discovery Requests, Ex. O to Pl.'s Mem. Supp. at 3).[4] Therefore, the HLS Defendants conclude, "it was not the Schiff defendants who called plaintiff's cell phone, but Mr. Ghawi who forwarded the calls, and at his direction, calls to his land line were sent to his cell phone for his convenience." (HLS's Mem. Supp. at 23.)

As a preliminary matter, Mr. Ghawi has produced no evidence that he was charged for calls to his 5122 line, so his claim can only survive if the calls to the 5122 line are deemed calls to a cell phone. There is little caselaw on how VoIP services fit into § 227(b), but in light of the purpose of the TCPA—"to prohibit the use of

---

[3] Citibank's motion for summary judgment rests entirely on this argument.

[4] HLS appears to argue in Reply that its calls to Mr. Ghawi are exempt from the TCPA because they were made to a person with whom the caller had an established business relationship or were made for a commercial purpose. (*See* Reply [Doc. # 149] at 7.) The Court does not consider these arguments, as new arguments may not be raised in a reply brief. *See* D. Conn. L. Civ. R. 7(d).

[autodialers/prerecorded calls] to communicate with others by telephone in a manner that would be an invasion of privacy," *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)—there is no apparent conceivable reason on the record why the use of a VoIP number to connect to a cell phone should be treated differently from a direct call to a cell phone, at least where, as here, the caller informs the debt collector that the number connects to a cell phone.[5] Because there remain disputed questions of material fact as to whether and when Mr. Ghawi informed the HLS Defendants that his 5122 number connected to a cell phone and whether and when Mr. Ghawi consented to autodialer/prerecorded calls to his 5122 number, summary judgment is not appropriate with respect to HLS's calls.[6]

---

[5] Courts "have routinely held that a plaintiff need not prove that he was charged for a cellular phone call to state a claim under the TCPA." *Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 423 (E.D.N.Y. 2013) (internal quotation marks omitted); *see also Castro v. Green Tree Serv. LLC*, 959 F. Supp. 2d 698, 721 (S.D.N.Y. 2013) ("Under the 'rule of the last antecedent,' which provides that, where no contrary intention appears, a limiting clause or phrase should be read as modifying only the noun or phrase that it immediately follows, the Court finds that the phrase 'for which the called party is charged for the call' only modifies 'any service.'").

[6] The HLS Defendants' alternative argument, that "Mr. Ghawi expressly consented to calls being made to [the 5122 number] by defendants . . . by filing an Appearance in the Superior Court Action and providing his cell phone number for use in connection with the litigation" (HLS's Mem. Supp. at 24), is as the Court unequivocally stated in its Ruling on Defendants' Motion to Dismiss, devoid of merit. "[T]he fact that Mr. Ghawi gave the Superior Court and opposing counsel his contact information for communications regarding litigation matters does not translate to consent for HLS to contact him on his cell phone regarding debt collection matters, nor does it constitute 'prior' consent since the notice of appearance was entered nearly a year after the calls at issue here were made." (Ruling on Mot. to Dismiss at 8–9.)

Summary judgment is nonetheless warranted with respect to Citibank's calls to Mr. Ghawi because Mr. Ghawi has not alleged or demonstrated that he ever informed Citibank, as opposed to the HLS Defendants, that calls to the 5122 number went to his cell phone. Citibank's motion for summary judgment is, however, denied as to its liability for the HLS Defendants' calls to Mr. Ghawi. *See In the Matter of Rules and Regulations Implementing the TCPA*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008) ("[A] creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.").

### 3. Telemarketer on Caller ID (FDCPA §§ 1692d(6), e(1); CUTPA § 42-110)

Mr. Ghawi alleges that the HLS Defendants violated the FDCPA by causing "telemarketer" to appear on his caller ID screen when they called him. Section 1692d(6) of the FDCPA prohibits debt collectors from placing "telephone calls without meaningful disclosure of the caller's identity" and § 1692e(10) forbids debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

The HLS Defendants contend, however, that Mr. Ghawi's allegation is "improper and unfounded" because "Mr. Ghawi's own telephone carrier puts 'Telemarketer' on incoming calls from the Schiff Law Office, and . . . it is not the defendants who are responsible for any alleged misidentification of its calls to Mr. Ghawi." (HLS's Mem. Supp. at 19.) In support of this argument, the HLS Defendants offer the affidavit of

Jennifer Hayes, an Account Manager at Tele-consults Associates, Inc. who "acted as a liaison between [HLS] and its telephone service providers." (Hayes Aff. [Doc. # 102-4] ¶ 4.) Ms. Hayes explained that "[i]t is the practice in the telecom industry that the responsibility for showing a caller ID name falls onto the receiving consumers [sic] carrier who is supposed to be retrieving the name from its own or a commercially available database." (*Id.* ¶ 8.) She added that "[i]f Telemarketer appeared on a consumers [sic] Caller ID display it was not the result of instructions given by [HLS]." (*Id.* ¶ 7.)

In opposition, Mr. Ghawi offers only conclusory statements and unsupported allegations. Because, from the evidence in the record, no reasonable juror could find that the HLS Defendants were responsible for causing "telemarketer" to appear on Mr. Ghawi's caller ID, summary judgment is awarded to Defendants on Plaintiff's FDCPA §§ 1692d(6) and e(1) claims.

### 4.  Harassment; Unusual Time/Place (FDCPA §§ 1692c(a)(1), d(5); CUTPA § 42-110)

Mr. Ghawi's final claims are that the HLS Defendants violated § 1692c(a)(1) of the FDCPA by repeatedly and knowingly calling him on a number he used for business, and they violated § 1692(d)(5) by subjecting him to nearly daily phone calls.

Section 1692c(a)(1) prohibits a debt collector from "communicat[ing] with a consumer in connection with the collection of any debt . . . at any unusual time or place or at a time or place known or which should be known to be inconvenient to the consumer" without "the prior consent of the consumer or the express permission of a court of competent jurisdiction." 15 U.S.C. § 1692c(a)(1). Section 1692d(5) proscribes debt collectors from "engag[ing] in any conduct the natural consequence of which is to

harass, oppress, or abuse any person in connection with the collection of a debt," specifically, by "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

The HLS Defendants claim they are entitled to summary judgment on § 1692c(a)(1) because "[n]o calls were made to Mr. Ghawi before 8:00 a.m. or after 9:00 p.m.," and "[i]f calls were subjectively inconvenient for Mr. Ghawi, he failed to indicate the same and request that he not be called or be called later." (HLS's Mem. Supp. at 20.) Mr. Ghawi, however, never claimed that calls were made before 8 or after 9, and Defendants' assertion that Mr. Ghawi never communicated that the calls were inconvenient runs up against his own sworn statements to the contrary. (*See* Ghawi Aff. ¶ 6 ("On a number of occasions when I did speak to a representative from HLS I informed them that by calling my [5122] number they were calling my cell line and it was an inconvenience."); *id.* ¶ 17 ("I am a sole practitioner and act as a freelance or independent contractor in various private consulting and advisory services. My telephone is my lifeline as I depend on it for my business practice."); Pl.'s Responses to Discovery Requests, Ex. 5 to HLS's Mem. Supp. at 10 ("I recall informing Ms. Dumont on several occasions when I was traveling on business that it was not suitable for me to speak especially since I was on my cell phone and I was trying to make a living.").)

Courts in this District have held that contacting a consumer at work in spite of the consumer's requests not to do so violates § 1692c(a)(1). *See Austin v. Great Lakes Collection Bureau, Inc.*, 834 F. Supp. 557, 559 (D. Conn. 1993) (denying summary judgment on § 1692c(a)(1) claim because "the defendant's own records clearly

demonstrate that the plaintiff requested the defendant not to call her at work because such calls inconvenienced her"); *see also Chiverton v. Fed. Fin. Grp., Inc.*, 399 F. Supp. 2d 96, 100 (D. Conn. 2005) ("The defendant violated §§ 1692c(a)(1) and (3) by repeatedly calling Chiverton at work after he expressly requested the defendant not to do so."). Because there is a genuine issue of material fact regarding whether and when Mr. Ghawi informed the HLS Defendants that it was inconvenient for them to call him on his business line, summary judgment is not appropriate on this claim.

With respect to Mr. Ghawi's claim of harassment, HLS alleges that it cannot be found liable because "Mr. Ghawi did not request that calls cease until August 10, 2012" and "[p]rior to that time, he failed to make any request that calls cease." (HLS's Mem. Supp. at 20.) This claim, however, like HLS's assertion that Mr. Ghawi never told them the calls were inconvenient, is disputed by Mr. Ghawi who avers that prior to June 2012, he never gave HLS consent to call him (Ghawi Aff. ¶ 14), and that he repeatedly told HLS that "they were calling [his] cell line and it was an inconvenience" (*id.* ¶ 6). HLS's own records demonstrate that it called Mr. Ghawi 219 times, sometimes two or three times a day, between July 9, 2011 and June 17, 2012, including 106 calls in the three months from July 9 to October 9, 2011. (*See* HLS Call Log.)

Although "[c]ourt opinions differ . . . as to the amount or pattern of calls sufficient to raise a triable issue of fact regarding the intent to annoy, harass, or oppress," *Arteaga v. Asset Acceptance LLC*, 733 F. Supp. 2d 1218, 1227 (E.D. Cal. 2010), courts have found harassment in circumstances similar to those alleged here. "[A] debt collector may harass a debtor," for example, "by continuing to call the debtor after the debtor has requested that the debt collector cease and desist communication," *id.*; by "calling the debtor's

workplace," *id.* at 1228; by "[c]alling a debtor numerous times in the same day, or multiple times in a short period of time," *id.*; or by making "nearly 200 calls to [a consumer] over a nineteen-month period," *Joseph v. J.J. MacIntyre Cos. LLC*, 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002). Mr. Ghawi's evidence is sufficient to raise a genuine dispute of material fact regarding whether HLS's intent was to annoy, harass, or oppress him, and summary judgment is therefore not appropriate on this claim. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985) ("Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury."); *May v. Asset Acceptance LLC*, No. 11cv525S, 2013 WL 1337173, at *6 (W.D.N.Y. Mar. 29, 2013) ("[A] jury must determine the motivation behind this call and whether it violated the FDCPA." (internal quotation marks omitted)); *Chavious v. CBE Group, Inc.*, No. 10cv1293 (JS) (ARL), 2012 WL 113509, at *2 (E.D.N.Y. Jan. 13, 2012) ("The caller's intent is often a jury question. . . ."); *Kavalin v. Global Credit & Collection Corp.*, No. 10cv214 (JTC), 2011 WL 1260210, at *4 (W.D.N.Y. Mar. 31, 2011) ("The question [of] whether debt collection conduct harasses, oppresses, or abuses [is] ordinarily . . . left for the jury.").

The HLS Defendants assert, however, that they cannot be held liable on Plaintiff's FDCPA claims because if they did violate the FDCPA, it was unintentional. (*See* HLS's Mem. Supp. at 21.) Section 1692k(c) of the FDCPA provides that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." The HLS Defendants contend they are entitled to summary judgment on the basis of this subsection because "Plaintiff has failed to establish that any

conduct by the Schiff Law Office or its employees was intentional in any way." (*Id.*) In so arguing, however, Defendants misconstrue § 1692k(c). The plain language of the subsection puts the burden on the debt collector to show that the violation was not intentional, *see* 15 U.S.C. § 1692k(c) ("A debt collector may not be held liable . . . if *the debt collector shows* . . . that the violation was not intentional. . . . " (emphasis added)); it is not Plaintiff's burden to prove intentionality. Because Defendants have offered no evidence that their violations of the FDCPA (if any) arose out of a bone fide error, their motion cannot succeed on this ground.

## II.  Conclusion

For the foregoing reasons, Mr. Ghawi's Motion [Doc. # 89] for Summary Judgment is DENIED; Citibank's Motion [Doc. # 154] for Summary Judgment is GRANTED with respect to Mr. Ghawi's claims about calls made by Citibank itself and DENIED with respect to Mr. Ghawi's claims based on calls made by the HLS Defendants; and the HLS Defendants' Motion [Doc. # 102] for Summary Judgment is GRANTED as to Plaintiff's FDCPA §§ 1692d(6) and e(1) claims and otherwise DENIED.

The following claims remain for adjudication: (1) Mr. Ghawi's claims against the HLS Defendants for violations of FDCPA §§ 1692g(b), c(a)(1), and d(5) and CUTPA § 42-110; and (2) Mr. Ghawi's claims against all Defendants for the HLS Defendants' violations of the TCPA § 227(b)(A)(1)(iii).

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 10th day of November, 2015.

15